# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BOBBY SINGLETON, et al., | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 2:21-cv-01291-AMM |
| JOHN MERRILL, in his official capacity as Alabama Secretary of State, | ) |
| *Defendant*. | ) |

## SECRETARY MERRILL'S MOTION TO DISMISS

Before the Redistricting Committee finalized a map and before the Legislature considered any map whatsoever, Plaintiffs sued. Peculiarly, they challenge the 2011 Redistricting Plan that Alabama will never use again. The Legislature has already begun the statutorily required redistricting process, but Plaintiffs sued to beat the Legislature to the finish line—exactly what the Supreme Court counseled against in *Growe v. Emison*. *See* 507 U.S. 25, 37 (1993). As a host of jurisdictional defects reveals, this case should be dismissed because federal court intervention is not needed. Alabama has successfully passed congressional maps after the last two redistricting cycles. There's no reason to think it won't again. Accordingly, Secretary Merrill moves to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

1

## I. LEGAL STANDARD

The plaintiff bears the burden of proof to establish a court's jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998). Thus, "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

A defendant can move to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction based on the sufficiency of the pleading itself (a facial attack) or the factual existence of subject-matter jurisdiction (a factual attack). *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).[1] Like the test employed for 12(b)(6) review, the test for a facial attack on subject-matter jurisdiction takes the allegations in the complaint as true. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). When addressing a factual attack, the district court "is free to weigh [extrinsic] evidence and satisfy itself as to the existence of its power to hear the case." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citing *Lawrence*, 919 F.2d at 1529). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of

---

[1] In *Alabama Legislative Black Caucus v. Alabama*, a three-judge district court of the Middle District of Alabama "accept[ed] the settled view that a three judge district Court convened within the Eleventh Circuit is, like all other district courts within the circuit, bound by circuit precedent." 988 F. Supp. 2d 1285, 1306 (M.D. Ala. 2013).

disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1529.

## II. FACTUAL BACKGROUND

The redistricting process is well underway. Despite the late release of the 2020 Census data to the states on August 12, 2021, the Legislature's Redistricting Committee has adequately prepared and is diligently working to release the new maps. *See* Ex. A ¶ 12 (McClendon Declaration). The Redistricting Committee has upgraded its infrastructure and conducted twenty-eight public meetings while Randolf Hinaman, the State's cartographer, has drafted proposed maps and met with state and federal representatives seeking input on their new districts. *Id.* ¶¶ 6–11.

Plaintiffs filed this action—in the middle of the redistricting process—on September 27, 2021; they failed to wait until the Legislature could even consider (let alone adopt) any maps. Regardless, the Redistricting Committee fully expects to present the new maps to the Legislature at the special session that Governor Ivey has indicated will begin on October 28, 2021. *See* Ex. A ¶ 5.

## III. ARGUMENT

A federal court's judicial power only extends to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. This "case-or controversy requirement" consists of three jurisdictional strands: (1) mootness, (2) standing, and (3) ripeness. *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citation omitted). State sovereign

immunity also acts as a jurisdictional bar, preventing suits against state officials—especially where relief is premised on enforcing state (rather than federal) law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

Plaintiffs have not met their burden to show that this Court may exercise jurisdiction over their complaint. This Court lacks jurisdiction for four reasons: (1) Plaintiffs lack standing to challenge both the whole 2011 Plan and the ongoing redistricting process; (2) to the extent that Plaintiffs seek relief for the 2011 Plan, their claims are moot; (3) to the extent that Plaintiffs seek relief as to the ongoing redistricting process, their claims are not ripe; and (4) sovereign immunity under *Pennhurst* bars their attempt to force the Legislature to follow a supposed whole-county policy. Thus, this Court should dismiss the complaint.

**A. Plaintiffs lack standing to challenge both the whole 2011 Plan and the ongoing redistricting process.**

To invoke federal jurisdiction, a plaintiff must establish standing for each of his claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). A plaintiff must show three elements to establish standing: (1) injury in fact, (2) traceability, and (3) redressability. *Id.* at 560–61. Plaintiffs fail to allege an injury in fact in two respects. First, Plaintiffs cannot suffer an injury from districts in which they do not reside or from the plan as a whole. And second, Plaintiffs' alleged injury is hypothetical.

> *1. Plaintiffs cannot suffer injury from alleged racial gerrymandering and malapportionment in districts in which they do not reside.*

The geographic nature of malapportionment and racial gerrymandering claims impacts standing. *See Wright v. Dougherty County*, 358 F.3d 1352, 1355 (11th Cir. 2004); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015). In the malapportionment context, "injury results only to those persons domiciled in the under-represented voting districts." *Wright*, 358 F.3d 1352, 1355 (quoting *Fairley v. Patterson*, 493 F.2d 598, 603 (5th Cir. 1974)).[2] And for racial gerrymandering, absent special evidence, a plaintiff is only harmed when he resides in a racially gerrymandered district. *United States v. Hays*, 515 U.S. 737, 744–45 (1995); *Ala. Legis. Black Caucus*, 575 U.S. at 262 ("A racial gerrymandering claim, however, applies to the boundaries of individual districts. It applies district-by-district. It does not apply to a State considered as an undifferentiated 'whole.'").

Plaintiffs cannot satisfy the injury-in-fact requirement for districts in which they do not reside. Plaintiffs Darryl Andrews and Andrew Walker reside in District 2; Plaintiff Leonette W. Slay resides in District 6; and Plaintiffs Rodger Smitherman, Eddie Billingsley, and Bobby Singleton reside in District 7. Doc. 1 ¶¶ 8–11. At most, then, they can only establish standing for Districts 2, 6, and 7. Thus, Plaintiffs lack

---

[2] Decisions that the United States Court of Appeals for the Fifth Circuit rendered prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

standing to challenge any alleged malapportionment and racial gerrymandering in the 2011 Plan (or any other plan) either as a whole or specifically as to Districts 1, 3, 4, and 5.

   2. *Plaintiffs' alleged injury is hypothetical.*

An injury in fact must be both "concrete and particularized" and "actual or imminent." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (citation omitted). A plaintiff shows a "concrete" injury by alleging specific facts "demonstrating that the challenged practices harm him." *Warth*, 422 U.S. at 508. And a "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. An injury that is hypothetical or conjectural does not satisfy the injury-in-fact requirement. *See id.* at 560.

There is no live case or controversy here; Plaintiffs' injury is hypothetical. No future elections will occur under the 2011 Plan, so the Plaintiffs cannot suffer any injury from it being allegedly malapportioned or racially gerrymandered.[3] Plaintiffs acknowledge the reality that the Redistricting Committee will pass a map. *See* Doc.

---

[3] Alternatively, if Plaintiffs could plausibly allege an injury, this Court could not redress such an injury by declaring the 2011 Plan unconstitutional or enjoining its use in future elections because—again—the State will never use the 2011 Plan in future elections. *See Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1253 (11th Cir. 1998) (To establish redressability, Plaintiffs must prove that it is "likely, as opposed to merely speculative" that their injuries would "be redressed by a favorable decision" against the defendant) (internal quotations marks omitted).

1 ¶ 43. Nor could an ongoing redistricting process that has yet to produce a map injure Plaintiffs in a concrete and particularized way. There is no way to know whether the districts in which Plaintiffs reside would be malapportioned or racially gerrymandered. Thus, it is impossible at this stage for the Plaintiffs to allege specific facts demonstrating their harm or how the ongoing redistricting process affects them in a personal and individual way. Because Plaintiffs' injury is conjectural, this Court should dismiss Plaintiffs' complaint.

**B. Plaintiffs' challenge to the 2011 Plan is moot.**

Plaintiffs' claims about the 2011 Plan are moot for reasons similar to why they lack standing to challenge it. *See Friends of the Earth, Inc. v. Laidlaw Env't Srvs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (describing mootness as "the doctrine of standing set in a time frame") (citations omitted). "[M]ootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an actual case or controversy." *Al Najjar v. Ashcroft*, 273 F.3d 1330,1335 (11th Cir. 2001) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). A case becomes moot where the requested relief would not have any "practical effect on the rights or obligations of the litigants." *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1264 (11th Cir. 2017). And when a case is moot, a court renders an "impermissible advisory opinion" by issuing judgment. *Al Najjar*, 273 F.3d at 1336.

Plaintiffs' challenge to the 2011 Plan is moot because their requested relief would have no practical effect. They request that this Court enter a declaratory judgment that the 2011 Plan is malapportioned and racially gerrymandered and enjoin the Plan's use in future elections. *See* Doc. 1 at 35–36. But this relief accomplishes nothing. As described above, the State never plans to use the 2011 Plan again. Plaintiffs may have had standing to seek relief regarding the 2011 Plan while there were still future elections conducted under it, but that time has expired and so have their claims. *See Chestnut v. Merrill*, 446 F. Supp. 3d 908, 920 (N.D. Ala. 2020) (dismissing a challenge to the 2011 Plan as moot because "a new districting cycle looms on the horizon" and thus "effective relief" was not available for maps that would never be used again). This Court should thus dismiss Plaintiffs' claims as to the 2011 Plan as moot.

**C. Plaintiffs' challenge to the ongoing redistricting process is unripe.**

Plaintiffs' claims about the ongoing redistricting process are not ripe for reasons similar to why they lack standing to challenge it. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1202 n.2 (2021) (explaining that the doctrines of standing and ripeness often merge together because they arise from the same Article III limitation). "The ripeness doctrine is one of the several 'strands of justiciability doctrine . . . that go to the heart of the Article III case or controversy requirement.'" *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir.

2010) (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1246 (11th Cir. 2010)). Ripeness "counsel[s] judicial restraint" and against "rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1338–39 (11th Cir. 2005).

In assessing ripeness, courts evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* at 1339. The fitness prong looks at "finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *Harrell*, 608 F.3d at 1258 (internal quotation marks omitted) (citing *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995)); *see also Trump v. New York*, 141 S. Ct. 530, 535 (2020) (explaining that a ripe dispute is "not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all") (citation and quotation marks omitted). And the hardship prong "asks about the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal." *Id.* (citation omitted). In other words, "[p]otential litigants suffer substantial hardship if they are forced to choose between foregoing lawful activity and risking substantial legal sanctions." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) (citing *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)).

Plaintiffs' claims about the ongoing redistricting process do not satisfy either prong. Addressing the second prong first, Secretary Merrill cannot envision any hardship that Plaintiffs will face waiting a few weeks until the Legislature adopts a map during the October 28 Special Session. *See* ALA. CONST. art. IV, § 76 ("Special sessions of the legislature . . . shall be limited to 12 legislative days and 30 calendar days."). Plaintiffs are not forgoing any lawful activity and do not risk legal sanction if this Court were to wait.

As to fitness, Plaintiffs' allegations about the alleged constitutionality of any future maps necessarily depend on the result of those yet-to-be-adopted maps. Plaintiffs imply that any map that the Legislature adopts will be racially gerrymandered because it would split counties. *See* Doc. 1 ¶ 54 ("Remedying the racial gerrymanders. . . requires . . . preserving whole counties"). That isn't so. Racial gerrymandering occurs when a legislature "intentionally assign[s] citizens to a district on the basis of race without sufficient justification." *Abbott v. Perez*, 138 S. Ct. 2305, 2314 (2018). But a legislature can gerrymander without splitting counties and can split counties without gerrymandering. Plaintiffs cite no authority—and there is none—for their novel theory that splitting counties creates, by definition, a racial gerrymander. Without the Legislature's final map in front of it, it is impossible for this Court to determine its constitutionality. Because these

claims are dependent on future events and facts that have not sufficiently developed, Plaintiffs' claims are not fit for review.

The Supreme Court's decision in *Growe v. Evison* further confirms that this case is not fit for review. *See* 507 U.S. at 34. Although *Growe* spoke in terms of abstention rather than ripeness, its analysis implicates many of the same concerns that a court considers when assessing fitness. *See id. Growe* reaffirmed the longstanding principle that "reapportionment is primarily the duty and responsibility of the [state] legislature or other body, rather than of a federal court." 507 U.S. at 34 (1993) (internal quotation marks omitted) (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). Thus, courts should "defer consideration of disputes involving redistricting where the State, through its legislative . . . branch, has begun to address that highly political task itself." *Growe*, 507 U.S. at 33; *see also Branch v. Smith*, 538 U.S. 254, 278 (2003) (holding that federal courts should "'embark on [the] delicate task' of redistricting" only when the State "cannot produce the needed decision" (quoting *Abrams v. Johnson*, 521 U.S. 74, 101 (1997))).

This Court should stay its hand because the Legislature has begun to redistrict. It formally began the process on August 12, 2021 when the U.S. Census Bureau sent the redistricting data to the State. Ex. A ¶ 6.[4] Since then, the Redistricting Committee

---

[4] This Court may consider this evidence as part of a factual attack on the complaint without converting this motion to one for summary judgment. *See supra* Part III.

has conducted twenty-eight public hearings; met with and considered the interests of state legislators, members of Congress, and State Board of Education members; and consolidated this information into draft maps. *Id.* ¶¶ 10–11. Plaintiffs have not alleged whatsoever that the Legislature or the state courts will fail to timely redistrict, so this Court should not intervene. *See Growe*, 507 U.S. at 34 ("Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it.").

*Growe* counsels against a "race to beat" the Legislature to the finish line. *Id.* at 37. Plaintiffs seek to do just that by asking this Court to consider their proposed map and to require the State to follow what they claim is its own "historic policy of preserving whole counties." Doc. 1 ¶ 40. But Alabama has timely passed redistricting plans over the last twenty years. *See* Ala. Act Nos. 2002-57; 2011-518. And there's no reason to think that Alabama will not produce that needed plan again. Because Plaintiffs would suffer no hardship in waiting and their claims are unfit for review, this Court should dismiss Plaintiffs' complaint as unripe.

---

Because the factual attack here does not implicate the merits of Plaintiffs' cause of action, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself to the existence of its power to hear the case." *Lawrence*, 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

**D. Sovereign immunity bars Plaintiffs' attempts to force the Legislature to use a supposed whole-county standard arising from State policy.**

The States enjoy immunity from private suits as a "fundamental aspect" of their sovereignty. *Alden v. Maine*, 527 U.S. 706, 713 (1999). As a threshold issue of federal jurisdiction, sovereign immunity must be decided "before requiring a state department and its officers to answer a complaint against them." *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014) (quoting *Bouchard Transp. Co. v. Fla. Dep't of Envt'l Prot.*, 91 F.3d 1445, 1448–49 (11th Cir. 1996)). This immunity from both suit and liability extends to state officials sued in their official capacities. *See Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219–20 (11th Cir. 2000). "In *Ex parte Young*, the Supreme Court carved out a narrow exception to the States' sovereign immunity when it held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011).

But sovereign immunity bars claims for injunctive relief against state officials premised on alleged violations of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). *Young*'s rationale of vindicating *federal* rights "disappears" when "a plaintiff alleges that a state official has violated *state* law." *Id.* at 106. A claim that state officials violated state law in their official capacity is a

13

claim against the State that sovereign immunity bars "regardless of whether it seeks damages or injunctive relief." *Id.* at 102, 121. Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106.

Although a plaintiff may purport to bring a federal claim, courts look to the "gravamen" of the complaint to determine whether the claim is in reality one that state officials are violating state law. *DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 688 (11th Cir. 1997); *cf. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("The real interests served by the Eleventh Amendment are not to be sacrificed to the elementary mechanics of captions and pleading."). "And conclusory allegations that the same conduct that violates state law also violates the U.S. Constitution will not boost the claim over the sovereign-immunity bar." *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1204 (11th Cir. 2019) (citing *Schrenko*, 109 F.3d at 690).

The Eleventh Circuit has thus repeatedly put substance over form to hold that sovereign immunity bars claims that are federal in name only. *See, e.g.*, *Schrenko*, 109 F.3d at 688 ("Looking at the substance of the district court's judgment, it appears to be one for violation of state law, a holding barred by the Eleventh Amendment"); *S&M Brands, Inc.*, 925 F.3d at 1204 (holding that *Pennhurst* barred purported constitutional challenges to Georgia's refusal to release escrow funds because "the

obligation to release (or reimburse) funds comes from state law"); *Waldman v. Conway*, 871 F.3d 1283, 1290 (11th Cir. 2017) (holding that a purported federal challenge based on state prison officials' failure to follow classification manual "is not a procedural due process challenge—it is a claim that state officials violated state law in carrying out their official responsibilities," which *Pennhurst* bars).

Here, Plaintiffs' federal claims are a transparent attempt to enforce what they call "Alabama's historic policy of preserving whole counties." Doc. 1 ¶ 40. They explain as much in the first paragraph of their complaint: "This action is brought to require the Alabama Legislature to enact a new plan with 2020 census data that remedies the existing unconstitutional gerrymander *by restoring Alabama's traditional redistricting principle of drawing its Congressional districts with whole counties.*" *Id.* ¶ 1 (emphasis added). But even accepting for the sake of argument that such a policy exists, even Plaintiffs acknowledge that it does not arise from federal law. Plaintiffs instead describe their whole-county theory as arising from Alabama's own tradition or history. *See, e.g.*, *id.* ¶¶ 1, 3, 15, 28, 31, 40, 54.

Sovereign immunity thus bars Plaintiffs' claims despite their nominally federal label. Plaintiffs' claims boil down to an argument that the State will violate federal law unless it follows a supposed State policy—not used for over half a century, *see* Doc. 1 ¶ 18—of drawing whole-county congressional districts. Because their "claim[s] necessarily rel[y] on a determination that state officials ha[ve] not

15

complied with state law," *S&M Brands*, 925 F.3d at 1204, sovereign immunity under *Pennhurst* bars them. Accordingly, this Court should dismiss Plaintiffs' claims for lack of subject-matter jurisdiction.

## IV. CONCLUSION

Even ignoring the plethora of jurisdictional concerns, Plaintiffs' complaint is fundamentally flawed. They presuppose that keeping counties whole *necessarily* prevents racial gerrymandering. It doesn't. Sure, adding any restriction to how the Legislature draws congressional districts makes it harder to accomplish any particular redistricting objective. But it is possible to racially gerrymander while keeping counties whole—just as it is possible to split every county for non-racial reasons. Plaintiffs fail to establish that this Court has jurisdiction to consider their case. Lack of an injury, mootness, and ripeness plague their complaint; *Growe* counsels against judicial intervention; and *Pennhurst* bars their claims. Thus, this Court should grant Secretary Merrill's motion to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.

Respectfully submitted,

Steve Marshall
  *Attorney General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

/s/ Brenton M. Smith
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Secretary Merrill***

17

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Brenton M. Smith
*Counsel for Secretary Merrill*