FILED

2021 Dec-07  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BOBBY SINGLETON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-01291-AMM |
| | ) | |
| JOHN MERRILL, in his official | ) | THREE-JUDGE COURT |
| capacity as Alabama Secretary of State, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATIONS OF FACT

The parties jointly stipulate to the following facts for purposes of preliminary injunction proceedings:

1.     From 1822 until 1965, Alabama drew its Congressional districts with whole counties.

2.     In 1961, the Alabama Legislature passed a bill that divided Jefferson County among four Congressional Districts.

3.     Governor John Patterson vetoed this bill, saying it would "divest the citizens of that county of direct representation in Congress, is ... unthinkable, unwise, above all wrong, and therefore unconstitutional."[1]

---

[1] ANNE PERMALOFF AND CARL GRAFTON, POLITICAL POWER IN ALABAMA 134-35 (1995).

4.      In February 1964, the U.S. Supreme Court ruled that Congressional districts must be equal in population.  *Wesberry v. Sanders*, 376 U.S. 1 (1964).

5.      In March 1964, a three-judge panel held that Alabama's nine-district scheme for primary elections violated Article I, § 2 of the U.S. Constitution and the Equal Protection Clause in the Fourteenth Amendment.  *Moore v. Moore*, 229 F. Supp. 435 (S.D. Ala. 1964) (three-judge court).

6.      The *Moore* court gave the Legislature two years to enact a constitutional redistricting plan.

7.      In August 1964, the Legislature considered a plan that kept all Alabama counties whole, including Jefferson County, even though at 634,864 in the 1960 census, the county's population exceeded the ideal population of the eight Congressional districts at that time, which was 409,250.

8.      Attorney General Richmond Flowers warned that such a large population deviation would not survive federal court scrutiny.[2]

9.      In the 1965 regular session, the Legislature enacted a plan that split Jefferson County among three Congressional Districts.

10.      The *Moore* court declared the plan constitutionally valid, even though it had a maximum population deviation of 13.3%. *Moore v. Moore*, 246 F. Supp. 578 (S.D. Ala. 1965) (three judge court). The Court found it "obvious that

---

[2] *Alabama Journal*, November 23, 1964, p. 13.

[Jefferson County] must be divided between at least two Congressional Districts."
*Id.* at 580–81.

11.    Jefferson County was the only county split in the 1965 plan and in the post 1970 census plan.

12.    The post 1970 census plan split Jefferson County among three Districts. The maximum deviation under this plan was 0.8%.

13.    Only Jefferson County and St. Clair County were split in the post 1980 census plan. The ideal size of a district was 556,270, smaller than Jefferson County's population, which was 671,371 in the 1980 census.  The maximum deviation among the seven districts was 2.59%.

14.    In 1992, seven counties were split for the predominant purpose of drawing one majority-black District. *Wesch v. Hunt*, 785 F. Supp. 1491 (S.D. Ala. 1992) (three-judge court), *aff'd sub nom. Camp v. Wesch*, 504 U.S. 902 (1992), *Figures v. Hunt*, 507 U.S. 901 (1993).

15.    Before 1992, the Legislature had never published any redistricting principles that included a specific maximum population deviation for Congressional districts.

16.    In the 2000 census, Jefferson County's population rose to 662,285, which was still larger than the size of an ideal Congressional district (635,299).

3

The post-2000 census plan split Jefferson County and seven other counties, maintaining zero population deviation.

17.     In the 2010 census, Jefferson County's population, 658,158, fell below the ideal size of Congressional districts (682,819), making splitting an Alabama county no longer mathematically necessary.

18.     In 2011, the Legislature passed a plan that continued to split Jefferson County. The 2011 plan had zero population deviation.

19.     District 7 in the Act 2021-555 plan retains all or part of the same fourteen counties contained in District 7 in the 2011 plan, including the majority-Black rural counties, Sumter, Greene, Hale, Perry, Marengo, Dallas, Wilcox, and Lowndes.

20.     303,168 or 74.0% of the 409,643 Black Population in District 7 comes from three counties that were split in the 1992 and 2011 plans: Jefferson, Tuscaloosa, and Montgomery.[3]

21.     Of the 294,027 people in the part of Jefferson County in District 7, 62.8% are Black.  Of the 380,694 people in the rest of Jefferson County, all of which is assigned to District 6, 27.6% are Black.

---

[3] For purposes of this stipulation, "Black" is defined by Dave's Redistricting App as "Black alone or in combination with other races, including Hispanic."  See https://davesredistricting.org/maps#aboutdata. By agreeing to this stipulation, Defendants stipulate only that Plaintiffs have accurately set forth the numbers of "Black" voters in certain areas by this definition of "Black," according to the cited website. Defendants do not agree that this definition of "Black" is appropriate or the one that the Court should consider.

4

22.     Of the 184,266 people in the part of Tuscaloosa County in District 7, 37.0% are Black.  Of the 42,770 people in the rest of Tuscaloosa County, all of which is assigned to District 4, 8.3% are Black.

23.     Of the 65,519 people in the part of Montgomery County in District 7, 80.7% are Black. Of the 166,435 people in the rest of Montgomery County, all of which is assigned to District 2, 50.2% are Black.

24.     Plaintiffs Rodger Smitherman and Eddie Billingsley are Black registered voters who reside in Jefferson County and within the boundaries of Congressional District 7 in both the 2011 and 2021 enacted plans.

25.     Plaintiff Leonette W. Slay is a White registered voter who resides in Jefferson County and within the boundaries of Congressional District 6 in both the 2011 and 2021 enacted plans.

26.     Plaintiff Bobby Singleton is a Black registered voter who resides in Hale County and within the boundaries of Congressional District 7 in both the 2011 and 2021 enacted plans.

27.     Plaintiffs Darryl Andrews and Andrew Walker are Black registered voters who reside in Montgomery County and within the boundaries of Congressional District 2 in both the 2011 and 2021 enacted plans.

28.     In the Plaintiffs' Whole County Plan, the following candidates

received more votes than their opponent in the general election in the counties in

Districts 6 and 7:

| Year | Office | Candidate |
|------|--------|-----------|
| 2012 | President | Barack Obama |
| 2014 | Governor | Parker Griffith |
| 2014 | Lieutenant Governor | James Fields |
| 2014 | Auditor | Miranda Joseph |
| 2016 | President | Hillary Clinton |
| 2016 | U.S. Senate | Ron Crumpton |
| 2017 | U.S. Senate | Doug Jones |
| 2018 | Governor | Walt Maddox |
| 2018 | Lieutenant Governor | Will Boyd |
| 2018 | Auditor | Miranda Joseph |
| 2020 | President | Joe Biden |
| 2020 | U.S. Senate | Doug Jones |

29.     In the 2010 election for District 7 Representative, Democratic

candidate Terri Sewell received 136,696 votes (72.4%), Republican candidate Don

Chamberlain received 51,890 votes (27.5%), and write-in candidates received 138

votes (<0.1%). According to Alabama's preclearance submission to the

Department of Justice in 2011, the Black population of District 7, using 2010

census figures, was 62.83% of the total population of the district, and the Black

Voting Age Population was 59.75% of the Voting Age Population.

30.     In the 2012 election for District 7 Representative, Democratic

candidate Terri Sewell received 232,520 votes (75.8%), Republican candidate Don

Chamberlain received 73,835 votes (24.1%), and write-in candidates received 203

votes (<0.1%). According to Alabama's preclearance submission to the Department of Justice in 2011, the Black population of District 7, using 2010 census figures, was 63.57% of the total population of the district, and the Black Voting Age Population was 60.55% of the Voting Age Population.

31.    The United States Bureau of the Census releases data to the states after each census for use in redistricting. This data includes population and demographic information for each census block.

32.    Following the 2020 Census, the Census Bureau was statutorily required to release this redistricting data no later than April 1, 2021. 13 U.S.C. § 141. However, in February 2021, the Census Bureau issued a press release stating that it would not release the redistricting data until September 30, 2021. On March 10, 2021, the State of Alabama sued the Census Bureau to require it to comply with the statutory deadline. *See Alabama v. United States Dep't of Com.*, No. 3:21-CV-211-RAH-ECM-KCN, (M.D. Ala.) (three-judge court). On March 15, 2021, the Census Bureau issued a further press release stating it could provide redistricting data in a legacy format by mid-to-late August 2021. The Census Bureau provided initial redistricting data to Alabama on August 12, 2021.

33.    On May 5, 2021, the Reapportionment Committee of the Alabama Legislature passed the Redistricting Guidelines to be used by the Committee during the redistricting process. Those Guidelines passed on a 16-1 vote, with both

Republicans and Democrats as well as Black and White legislators supporting the Guidelines.

34.     The Reapportionment Committee held 28 public hearings at locations around the state between September 1 and September 16. The public could attend these hearings in person or via videoconference.

35.     On October 25, 2021, Alabama Governor Kay Ivey officially called for the Legislature to convene in a special session to address redistricting.

36.     On October 26, 2021, the Reapportionment Committee met and considered a draft congressional plan.

37.     On October 28, 2021, the special session began and the Congressional Plan (then H.B. 1) was assigned to the House Committee on State Government. On October 29, the Congressional Plan (in addition to three other redistricting plans) was voted out of committee. All Black Representatives on the Committee voted against the map.

38.     On November 1, the House of Representatives considered the Congressional Plan. The same day, the House passed the Congressional Plan 65-38; in addition to every Democratic Representative, several Republicans voted against the plan. One Black Representative, Rep. Keith Paschal who is the sole Black Republican legislator, voted in favor of the Congressional Plan.

39.     On November 2, the Senate General Fund and Appropriations Committee considered the Congressional Plan. The Plan was voted out of Committee that same day. All Black Senators on the Committee voted against the map.

40.     On November 3, the full Senate approved the Congressional Plan 22-7 and forwarded the Plan to Alabama Governor Kay Ivey. All six Black Senators present and Billy Beasley, the sole White Democratic Senator, voted against the map. On November 4, Governor Ivey signed the Congressional Plan into law.

41.     Alabama's primary elections—including elections for U.S. Congress—are scheduled for May 24, 2022. Candidates seeking their party's nomination must file a declaration of candidacy with the state party chairman by January 28, 2022. *See* Ala. Code § 17-13-5(a).

42.     On Tuesday, July 23, a special election was held to fill a vacancy in District 73 of the Alabama House of Representatives. The winner was Kenneth Paschal, the Republican candidate, who received 2,743 votes. Representative Paschal is African American. His white Democratic opponent received 920 votes. District 73 is located in Shelby County, Alabama. Based on 2010 census data, the voting-age population of District 73 was 84.12% white and 9.75% black. (See ALBC doc. 338-1). Representative Paschal defeated a white Republican candidate

in the primary election by 64 votes. Representative Paschal received 1,476 votes, while his white opponent received 1,412 votes.

Dated: December 7, 2021                    Respectfully submitted,

/s/ Joe R. Whatley, Jr.
Joe R. Whatley, Jr.
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com

/s/ Henry C. Quillen
Henry C. Quillen
(admitted pro hac vice)
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH  03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

/s/ James Uriah Blacksher
James Uriah Blacksher
825 Linwood Road
Birmingham, AL 35222
Tel: (205) 612-3752
Fax: (866) 845-4395
Email: jublacksher@gmail.com

/s/ Myron Cordell Penn
Myron Cordell Penn
PENN & SEABORN, LLC
1971 Berry Chase Place
Montgomery, AL 36117
Tel: (334) 219-9771

Email: myronpenn28@hotmail.com

*/s/ Diandra "Fu" Debrosse Zimmmermann*
Diandra "Fu" Debrosse Zimmermann
Eli Hare
DICELLO LEVITT GUTZLER
420 20th Street North, Suite 2525
Birmingham, AL 35203
Tel.: (205) 855.5700
Email: fu@dicellolevitt.com
 ehare@dicellolevitt.com

*Counsel for Plaintiffs*

Steve Marshall
*Attorney General*

*/s/ James W. Davis*
Edmund G. LaCour Jr. (ASB-9182-U81L)
*Solicitor General*
James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*
A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

**Counsel for Secretary Merrill**

*/s/ Dorman Walker*
Dorman Walker (ASB-9154-R81J)
Email: dwalker@balch.com
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 834-6500

**Counsel for Senator Jim McClendon and Representative Chris Pringle**