# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BOBBY SINGLETON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-01291-AMM |
| ) | |
| JOHN MERRILL, in his official ) | THREE-JUDGE COURT |
| capacity as Alabama Secretary of State, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## REPLY IN SUPPORT OF *SINGLETON* PLAINTIFFS' EMERGENCY MOTION FOR A RULING ON THEIR RENEWED MOTION FOR A PRELIMINARY INJUNCTION

The *Singleton* Plaintiffs have done everything humanly possible to bring their claims to a speedy resolution. For various reasons, the Defendants and the *Caster* and *Milligan* Plaintiffs would like the *Singleton* Plaintiffs to cool their heels and just accept that the 2022 election will be conducted with districts that may be unconstitutional, without any input from this Court. That is not justice.

### I. The Defendants' Bid for Further Delay Should Be Rejected.

The Defendants have asked this Court to delay ruling on the *Singleton* Plaintiffs' constitutional racial gerrymandering claim because the Supreme Court has taken an appeal of the *Caster* and *Milligan* Plaintiffs' Voting Rights Act claim

and stayed this Court's injunction based on that claim. The Defendants rely on multiple flawed premises.

First, the standard for staying a district court's order on appeal differs from the standard governing a district court's decision to enter a preliminary injunction. As the Defendants argued to the Supreme Court, "A stay is appropriate when there is (1) 'a "reasonable probability" that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction;' (2) 'a fair prospect that a majority of the Court will conclude that the decision below was erroneous;' and (3) 'a demonstration that irreparable harm is likely to result from the denial of a stay.'" Ex. 1 (Defendants' Application for a Stay in *Merrill v. Milligan*) at 16 (quoting *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers), and citing *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam)). There is no balancing of the equities, just a preliminary examination of the merits and the effect of the denial of a stay on the applicant. For a preliminary injunction, the standard is different: "'A party seeking a preliminary injunction must establish that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.'" Doc. 88 (Preliminary Injunction Memorandum Opinion and Order)

(quoting *Vital Pharms., Inc. v. Alfieri*, No. 20-14217, 2022 WL 179337, at *5 (11th Cir. Jan. 20, 2022)). The Supreme Court does not consider irreparable injury to the party seeking the injunction, weigh that injury against the opposing party's, or consider the public interest; this Court must do so.

Therefore, the Supreme Court's decision, which does not explain its reasoning, does not control the outcome of the *Singleton* Plaintiffs' motion for a preliminary injunction. At most, it shows that a majority of the Supreme Court believed that there is fair prospect that this Court decided the Voting Rights Act claim incorrectly, and that the Defendants would suffer irreparable harm absent a stay. But the *Singleton* Plaintiffs are not asserting a Voting Rights Act claim, and this Court has twice concluded that whatever harm the Defendants might suffer from an injunction is outweighed by Alabamians' "irreparable harm if they must vote in the 2022 congressional elections based on a redistricting plan that violates federal law." Doc. 88 at 197–204; Doc. 93 (Order Denying Defendants' Emergency Motion for Stay Pending Appeal) at 27–33.

The Defendants lean heavily on the two-Justice concurrence in *Caster* and *Milligan*, which states that it is too late to enjoin the enacted 2021 plan under *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). Doc. 109 at 4–7 (citing *Merrill v. Milligan*, 2022 WL 354467, at *2 (U.S. Feb. 7, 2022) (Kavanaugh, J., concurring)). Needless to say, a two-Justice concurrence is not precedential. *Planned Parenthood*

*of Ind. & Ky., Inc. v. Box*, 991 F.3d 740, 746 (7th Cir. 2021) ("We simply do not survey non-majority opinions to count likely votes and boldly anticipate overruling of Supreme Court precedents. That is not our job."). If anything, it shows that three of the five Justices in the majority were unwilling to agree it is too late to provide judicial relief in time for the 2022 elections. Combined with the four Justices who would not have ordered a stay, there are seven Justices who did not show support for the concurrence's reasoning. And even under the non-precedential test that the concurrence created for exceptions to the *Purcell* principle, the *Singleton* Plaintiffs satisfy every prong. Doc. 104 at 2–3.

      Second, the remedy the *Singleton* Plaintiffs are seeking can be implemented more quickly and easily than the remedy ordered in *Caster* and *Milligan*, tipping the equities even further in the *Singleton* Plaintiffs' favor. In *Caster* and *Milligan*, this Court ordered a procedure in which the special master and cartographer would file a report and recommendations by February 22. Doc. 102 (Order Appointing Special Master and Appointing Expert Cartographer) at 8. Sometime after that, the Court intended to hold "a public hearing to receive comments and objections" on the recommended plans, *id.*, and the Court presumably would have ordered one of those plans following that hearing. Realistically, then, this Court was prepared to order a new plan, which would likely make large splits in several counties and precincts, late in the week of February 22 at the earliest. Here, the *Singleton* Plaintiffs are

4

asking the Court to order one of three plans that create minimal disruption for election officials because they split as few counties as possible, or none at all, and they place at most 0.4% of Alabamians in a district different from the one in which others in their county vote. Doc. 84 at 24–25.[1] Those plans were introduced in the Legislature in October 2021 and made part of the *Singleton* Plaintiffs' Amended Complaint on November 4, Doc. 15 ¶ 47, they have been vetted by the Legislature's mapping software, and the Defendants have never identified anything that would prevent the Court from ordering them. These plans satisfy the Legislature's redistricting criteria as well as or better than the districts the Legislature enacted in 2021. Doc. 57 (Renewed Motion for Preliminary Injunction) at 31–40. This Court could order them today, giving the Defendants, election officials, and candidates even more time to prepare than they had under the Court's previous remedy.

Third, leaving *Singleton* out of the appeal of *Caster* and *Milligan* would disserve judicial economy because it would cause the Supreme Court to decide those cases with blinders on, and create *seriatim* proceedings when one would suffice. The Defendants themselves admit that "the questions the Supreme Court is set to resolve in *Milligan* and *Caster* are intertwined with the Equal Protection Clause arguments

---

[1] The Defendants obliquely imply that this figure may not be accurate, Doc. 103 at 6 ("even if Plaintiffs' assertion about voter reassignment under their maps is true …"), but it is based on the Defendants' own exhibits, which were entered into the record without objection. Doc. 84 at 25 (citing Exhibits D124 and D134). The Defendants have not identified any basis to question this figure.

5

raised in *Singleton*." Doc. 109 at 3. Therefore, they propose to have the Supreme Court enter a decision that would affect the *Singleton* Plaintiffs' rights without their participation. *Singleton* raises issues that are important to the resolution of *Caster* and *Milligan* and should not be left behind. For example, on appeal the Defendants have failed to acknowledge that the enacted 2021 plan—the baseline for the Voting Rights Act claims in *Caster* and *Milligan*—is an unconstitutional racial gerrymander. Also, under *Cooper v. Harris*, before a district can be designed to be majority-minority under the Voting Rights Act, there must be "a strong basis in evidence" that "a plaintiff could establish the *Gingles* preconditions—including effective white bloc-voting—in a new district created without [race-based] measures." 137 S. Ct. 1455, 1471 (2017). The *Singleton* Plaintiffs' Whole County Plan and its alternatives, which no one contends were drawn on the basis of race, show that it is possible to draw effective crossover districts in which Black voters do not comprise a majority but consistently have an equal opportunity to elect the candidate of their choice. Doc. 84 at 16–20. Neither the Defendants nor the *Caster* and *Milligan* Plaintiffs, however, have called the Supreme Court's attention to these opportunity districts drawn without a focus on race. Because "the questions the Supreme Court is set to resolve in *Milligan* and *Caster* are intertwined with the Equal Protection Clause arguments raised in *Singleton*," Doc. 109 at 3, judicial economy favors having the Supreme Court decide those questions together, not getting an

opinion in *Caster* and *Milligan* without the benefit of the *Singleton* Plaintiffs' participation, then trying to apply the *Caster* and *Milligan* holdings to *Singleton* in this Court (which may be difficult because the Supreme Court will not be asked to answer the questions at issue in *Singleton*), followed by an inevitable appeal to the Supreme Court in *Singleton*. Doctrinally and procedurally, taking one bite at the apple makes far more sense.

Fourth, in light of everything that has transpired in this case, the Defendants' argument that the Legislature should be given an opportunity to draw new districts comes close to bad faith. When this Court strongly encouraged the Legislature to draw a remedial map itself, Senators Singleton and Smitherman acted diligently, introducing a bill that would remedy the unconstitutional racial gerrymander in District 7 while keeping other districts as close to the enacted 2021 plan as possible. Exs. 2 (Senate Bill 161), 3 (map of districts under Senate Bill 161). Their bill is languishing in committee, and no other Senators have introduced plans of their own. Senator Singleton has declared under penalty of perjury that members of the leadership in the Legislature have told him that no attempt will be made to enact a new plan while an appeal is pending. Doc. 98-1. The House and Senate Chairs of the Reapportionment Committee, who intervened in this case, have not denied this. There is no reasonable prospect that the Legislature will attempt to comply with an injunction based on the Equal Protection Clause any more than an injunction based

on the Voting Rights Act. While this Court's responsibility to order a remedy itself is unwelcome, it is necessary.

Fifth, the Defendants argue that the *Singleton* Plaintiffs are unlikely to succeed on the merits. But the current motion is not about the merits; it is about whether the preliminary injunction motions should be decided now. If the *Singleton* Plaintiffs' racial gerrymandering claim lacks merit, that would be a reason to deny a preliminary injunction, not to refuse to rule on it at all. In any event, the merits of the racial gerrymandering claim are plain. Despite numerous opportunities to do so, the Defendants have yet to find a coherent response to the simple facts that (1) the shape and demographics of a district alone can justify finding a racial gerrymander (satisfying the motive element of the claim), (2) the Defendants have stipulated that the 1992 plan was based predominantly on race, (3) the Defendants have argued repeatedly that the changes to the Legislature's plans through 2021 were insubstantial, and (4) the Defendants have disclaimed any attempt to satisfy strict scrutiny. Doc 57 at 12–22; Doc. 76 (Reply in Support of Renewed Motion for Preliminary Injunction) at 2–14; Doc. 84 at 4–12, 26–36. That alone is enough to compel a finding in the *Singleton* Plaintiffs' favor. Moreover, the Defendants offer no response at all to the direct evidence that the Legislature adopted the 2021 plan with a racial target without any legitimate basis to conclude that doing so was required by the Voting Rights Act. Doc. 84 at 20–22, 32, 35, 36. The *Singleton*

Plaintiffs' claim is overwhelmingly likely to succeed on the merits, making further delay inappropriate.

### II. Because *Singleton* Is Not Consolidated with *Caster* or *Milligan* and Was Not Appealed, It Can Be Decided Now.

The *Milligan* and *Caster* responses mistake the posture of *Singleton*, assuming that it is still consolidated with *Milligan*. Doc. 135, *Milligan v. Merrill*, No. 21-cv-1530 (*Milligan* Br.) at 2–3; Doc. 127, *Caster v. Merrill*, No. 21-cv-1536 (*Caster* Br.) at 1. *Singleton* and *Milligan*, however, were consolidated "for the limited purposes of discovery and a hearing relevant to the applications for preliminary injunctive relief in those cases." Doc. 45 at 6. Thus, the limited consolidation of *Singleton* and *Milligan* ended when the preliminary injunction hearing adjourned on January 12.[2]

Because *Singleton* and *Milligan* are not consolidated, the *Caster* response is incorrect when it states that "Defendants' appeal of the three-judge court's January 24 order in *Milligan* was, therefore, also an appeal of the same order in *Singleton*." *Caster* Br. at 1. The Court entered the same order in both cases, but the Defendants clearly did not appeal the order in *Singleton*. No notice of appeal was filed on the *Singleton* docket. The *Singleton* Plaintiffs were not respondents in any of the Voting Rights Act appeals. The Defendants' appeal of *Milligan* was captioned *Merrill v. Milligan* only, and the Defendants did not purport to appeal *Singleton*, did not apply

---

[2] If *Singleton* and *Milligan* were still consolidated, the *Singleton* Plaintiffs would not oppose the *Milligan* Plaintiffs' request that the cases be severed.

9

to the Supreme Court for a stay in *Singleton*, and did not ask the Supreme Court to consider the claims in *Singleton*. Even if *Singleton* had been appealed in some hypertechnical sense (and it was not), an appeal does not divest a district court of the entire case; it "divests the district court of its control *over those aspects of the case involved in the appeal*." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (emphasis added). The constitutional racial gerrymandering claim in *Singleton* has not been decided and is not on appeal to the Supreme Court, and this Court retains jurisdiction over that claim. Notably, the Defendants, who understand the scope of their appeal as well as anyone, do not join the *Caster* Plaintiffs in claiming that this Court lacks jurisdiction to enter a preliminary injunction in favor of the *Singleton* Plaintiffs. Nor do the *Milligan* Plaintiffs. There is no jurisdictional obstacle to a preliminary injunction.

The *Milligan* response makes one other argument, that consideration of the racial gerrymandering claim "will be aided by a fuller evidentiary record." *Milligan* Br. at 2. The *Singleton* Plaintiffs have explained why the evidentiary record as it stands now is more than enough to grant a preliminary injunction; in fact, the Defendants' stipulations and admissions alone are enough. *See generally* Doc. 84. The *Singleton* Plaintiffs are comfortable with the evidence they have, and the Defendants have never argued that they lacked evidence necessary to respond to the racial gerrymandering claim. But, again, if the *Singleton* Plaintiffs' evidence is too

weak to establish a likelihood of success on the merits, that would be a reason to deny a preliminary injunction, not to refuse to address it at all.

## CONCLUSION

A diligent plaintiff should not have to wait for years for relief on a plainly meritorious claim of racial gerrymandering. This Court should enjoin the use of the Legislature's gerrymandered plan and order that one of the *Singleton* Plaintiffs' plans be used in its place.

Dated: February 16, 2022    Respectfully submitted,

/s/ *James Uriah Blacksher*
James Uriah Blacksher
825 Linwood Road
Birmingham, AL 35222
Tel: (205) 612-3752
Fax: (866) 845-4395
Email: jublacksher@gmail.com

Joe R. Whatley, Jr.
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com
        tbrown@whatleykallas.com

/s/ *Henry C. Quillen*
Henry C. Quillen
(admitted *pro hac vice*)
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C

11

Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

Myron Cordell Penn
PENN & SEABORN, LLC
1971 Berry Chase Place
Montgomery, AL 36117
Tel: (334) 219-9771
Email: myronpenn28@hotmail.com

Diandra "Fu" Debrosse Zimmermann
Eli Hare
DICELLO LEVITT GUTZLER
420 20th Street North, Suite 2525
Birmingham, AL 35203
Tel.: (205) 855.5700
Email: fu@dicellolevitt.com
         ehare@dicellolevitt.com

*Counsel for Plaintiffs*