# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY SINGLETON,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No.: 2:21-cv-1291-AMM** |
| ) | |
| **JOHN H. MERRILL,** *in his* ) | **THREE-JUDGE COURT** |
| *official capacity as Alabama* ) | |
| *Secretary of State*, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

| | |
|---|---|
| **EVAN MILLIGAN,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No.: 2:21-cv-1530-AMM** |
| ) | |
| **JOHN H. MERRILL,** *in his* ) | **THREE-JUDGE COURT** |
| *official capacity as Secretary of* ) | |
| *State of Alabama*, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

BY THE COURT:

## ORDER DENYING MOTIONS FOR A RULING

This case is before the court on a Motion For Expedited Ruling On Their Renewed Motion For Preliminary Injunction and an Emergency Motion For A

Ruling On Their Renewed Motion For A Preliminary Injunction filed by the *Singleton* plaintiffs, and responses filed by Alabama Secretary of State John H. Merrill, Alabama Senator Jim McClendon, and Alabama Representative Chris Pringle ("Defendants"), and plaintiffs in the related cases. *Singleton* Docs. 98, 104, 109, 111; *Milligan* Doc. 135; *Caster* Doc. 127.[1] For the reasons explained below, we **DENY** the motions.

Alabama's 2021 redistricting plan for its seven seats in the United States House of Representatives includes one majority-Black congressional district, District 7, which has been represented by a Black Democrat since its inception as a majority-Black district in 1992. District 7 became a majority-Black district when a three-judge federal court drew it that way in a ruling that was summarily affirmed by the Supreme Court of the United States. *Wesch v. Hunt*, 785 F. Supp. 1491, 1497–1500 (S.D. Ala. 1992), *aff'd sub nom. Camp v. Wesch*, 504 U.S. 902 (1992), and *aff'd sub nom. Figures v. Hunt*, 507 U.S. 901 (1993).

---

[1] This case is one of three cases currently pending in the Northern District of Alabama that challenge Alabama's congressional electoral map ("the Plan"). The other two cases are *Milligan v. Merrill*, Case No. 2:21-cv-1530-AMM (which challenges the Plan on statutory and constitutional grounds), and *Caster v. Merrill*, Case No. 2:21-cv-1536-AMM (which challenges the Plan on statutory grounds only). *Singleton* and *Milligan* were consolidated for the limited purpose of expedited preliminary injunction proceedings and heard by this three-judge court. The motion for preliminary injunctive relief in *Caster* (which is pending before Judge Manasco sitting alone) was heard during the consolidated preliminary injunction hearing in *Singleton* and *Milligan*. All parties agreed during the preliminary injunction proceedings that any evidence admitted in one case could be used in any of the three cases unless counsel raised a specific objection. *See Singleton* Doc. 72-1; *Caster* Doc. 74; Tr. Dec. 20, 2021 Hrg. at 14–17; *Milligan* Doc. 105 at 29. Accordingly, we considered evidence adduced in all three cases.

The *Singleton* plaintiffs allege that the Plan "intentionally perpetuated the unconstitutional racial gerrymandering" that occurred when the *Wesch* court created District 7 and again after the 2000 and 2010 censuses when the racial composition of that district was materially unchanged. *Singleton* Doc. 15 ¶¶ 1–2. The *Singleton* plaintiffs allege that the Voting Rights Act of 1965, 52 U.S.C. § 10301, "no longer requires maintenance of a majority-[B]lack Congressional District in Alabama," and that "the State cannot rely on [Section Two of that statute] to justify splitting county boundaries when Districts drawn without racial gerrymandering provide Black voters constituting less than a majority, combined with reliably supportive white voters, an opportunity to elect candidates of their choice." *Id.* ¶ 3.

The *Singleton* plaintiffs assert that new congressional districts must be drawn without splitting counties, which was the "race-neutral" way that Alabama drew Congressional maps from 1822 until 1964. *Id.* ¶¶ 6, 20, 35. The *Singleton* plaintiffs propose a congressional districting plan for the 2022 election that they allege "eliminates these racial gerrymanders" by drawing district lines solely on county lines without diminishing Black voters' "opportunity to elect the candidates of their choice." *Id.* ¶¶ 42–43, 53. The *Singleton* plaintiffs call their proposed map the "Whole County Plan." *Id.* ¶ 43. Senator Singleton sponsored the Whole County Plan in the Legislature, which rejected it. *Id.* ¶¶ 47–48.

The *Singleton* plaintiffs assert claims in two counts. In Count I, they allege

that the Plan "is racially gerrymandered, in violation of the Equal Protection Clause of the Fourteenth Amendment and Article I, § 2 of the Constitution of the United States." *Id.* ¶ 56. In Count II, they assert that the state violated the Fourteenth and Fifteenth Amendments because the districts in the Plan were drawn (and the Whole County Plan was rejected) to intentionally discriminate against Black voters. *Id.* ¶¶ 75–79. The *Singleton* plaintiffs' motion for preliminary injunctive relief pertained only to Count I. *Singleton* Doc. 57 at 8.[2] We were not asked to address the claim asserted in Count II at the preliminary-injunction stage of these proceedings.

The *Singleton* plaintiffs' motion for a preliminary injunction asserts that those plaintiffs are substantially likely to succeed on their gerrymandering claim because recent Supreme Court precedents "hold that Section 2 of the Voting Rights Act cannot justify the perpetuation of a racially gerrymandered, majority-Black Congressional district when a legislature had no reason to believe that such a district was necessary to give Black voters the opportunity to elect the candidate of their choice." *Singleton* Doc. 57 at 9. The *Singleton* plaintiffs assert that because District 7 was and is a racial gerrymander (and relatedly, District 2 is a racial gerrymander), it is subject to strict scrutiny and is not narrowly tailored to further a compelling government interest. This is so, they claim, because the Legislature "not only failed

---

[2] Page number pincites are to the CM/ECF page number that appears in the top right-hand corner of each page, if such a page number is available.

to perform any analysis that would have indicated that a single majority-Black district was necessary, but also absolved itself of any substantial involvement in the drawing of the plan, which it left to [the state cartographer] and Alabama's Congressional delegation." *Id.* at 9, 25–29.

The *Singleton* plaintiffs also assert that Secretary Merrill stipulated that race was the predominant factor when District 7 was drawn in 1992 and conceded in an earlier lawsuit that because District 7 is racially gerrymandered, it would not be constitutional if drawn for the first time today. *Id.* at 13, 22.

After an extensive evidentiary hearing, on January 24, 2022, this three-judge court issued a preliminary injunction barring Secretary Merrill from conducting congressional elections according to the Plan. We concluded that the *Milligan* plaintiffs are substantially likely to establish that the Plan violates Section Two. *Milligan* Doc. 107 at 4.[3]

In that order, we observed that "[a]lthough the parties in *Singleton* . . . filed extensive stipulations of fact for purposes of the preliminary injunction proceedings, *Singleton* Docs. 47, 70, numerous facts remain in dispute, . . . and the constitutional issues are 'complicated.'" *Id.* at 216 (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2314 (2018)). We recited the "'fundamental and longstanding principle of judicial

---

[3] A simultaneous order was issued in *Caster* by Judge Manasco alone which made the same finding in that case.

restraint [that] requires that [we] avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Id.* at 7 (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988), and citing *League of United Latin Am. Citizens v. Perry* ("*LULAC*"), 548 U.S. 399, 442 (2006), and *Thornburg v. Gingles*, 478 U.S. 30, 38 (1986)). We explained that the "canon of constitutional avoidance has particular salience when a court considers (as we do here) a request for equitable relief and . . . is commonly applied by three-judge courts in redistricting cases that involve both constitutional and statutory claims." *Id*. at 216–217 (citations omitted). We held that "[f]or th[o]se reasons, in the light of our decision to issue a preliminary injunction on statutory grounds, and because Alabama's upcoming congressional elections will not occur on the basis of the map that is allegedly unconstitutional, we decline to decide the constitutional claims asserted by the *Singleton* . . . plaintiffs at this time." *Id*. at 216. Accordingly, we reserved ruling on those claims.

Defendants appealed our order issuing a preliminary injunction. On February 7, 2022, the Supreme Court noted probable jurisdiction in *Milligan*, granted certiorari before judgment in *Caster*, and in a split decision stayed our preliminary injunction "pending further order of the Court." *Singleton* Doc. 104-1 at 2.

Two of the justices concurring in the stay order wrote specially to observe that "[t]he stay order does not make or signal any change to voting rights law, . . . but instead simply stays the District Court's injunction *pending a ruling on the merits*."

Doc. 104-1 at 3 (emphasis in original). According to those justices, the question on the merits "is whether a second majority-minority congressional district . . . is required by the Voting Rights Act and not prohibited by the Equal Protection Clause." *Id*. at 6-7. Those justices wrote that "the imminence of the election and the inadequate time to resolve the factual disputes . . . necessit[ates] allow[ing] the election to proceed without an injunction." *Id*. at 8 (internal quotation marks omitted).

Four justices dissented. In their view, we correctly applied existing governing standards for vote dilution claims under Section 2. *See* Doc. 104-1 at 9, 11-12. Three of those justices believed that the stay order signaled that "the way Section 2 plaintiffs have for decades—and in line with [Supreme Court] caselaw—proved vote-dilution claims" was likely about to change. *Id*. at 21.

The following day, on February 8, 2022, the *Singleton* plaintiffs filed the motion before the court, observed that absent the preliminary injunction they seek, Alabama's 2022 Congressional election will occur according to the Plan, and asserted that "there is no reason for this Court to continue to defer ruling on the Singleton Plaintiffs' gerrymandering claim." Doc. 104 at 1.

Defendants oppose the motion on the ground that the election is imminent and that if the question whether the Plan complied with the Equal Protection Clause (while simultaneously complying with the Voting Rights Act) was complicated

before the Supreme Court stayed our preliminary injunction, the stay order did not simplify it; rather, the stay order counsels that we "await further guidance from the Supreme Court" before reaching the constitutional question. *Singleton* Doc. 109 at 2–3. The Defendants added that the questions now before the Supreme Court in *Milligan* and *Caster* are "intertwined" with what the Equal Protection Clause requires and what it forbids.

The *Milligan* plaintiffs—who also challenge the Plan on constitutional grounds—oppose the *Singleton* plaintiffs' motion because "consideration of the racial gerrymandering and other constitutional claims . . . will be aided by a fuller evidentiary record" and likely will be impacted by the Supreme Court's upcoming decision on the Section 2 claims. *Milligan* Doc. 135 at 1–2 & n.1. The *Caster* plaintiffs oppose the *Singleton* plaintiffs' motion because "Defendants' notice of appeal divested [this] . . . court of jurisdiction with respect to the preliminary injunction proceedings in both *Milligan* and *Singleton*." *Caster* Doc. 127 at 2 (emphasis omitted).

On February 16, 2022, the *Singleton* plaintiffs filed a reply in which they made several arguments in support of their motion. *Singleton* Doc. 111. *First*, the *Singleton* plaintiffs assert that "the Supreme Court's decision, which does not explain its reasoning, does not control the outcome of the *Singleton* Plaintiffs' motion for a preliminary injunction." *Id.* at 3. *Second*, the *Singleton* plaintiffs assert that we

should rule on their motion now because the remedy they seek "can be implemented more quickly and easily than the remedy" ordered in the preliminary injunction, so the calculus that determines whether it is too close to election time to issue an injunction is different here than it was in *Milligan*. *Id.* at 4. *Third*, the *Singleton* plaintiffs assert that if we do not rule on their motion for preliminary injunction before the Supreme Court considers the appeal of our preliminary injunction, the Supreme Court will decide the case "with blinders on" because the *Singleton* plaintiffs are not participating in the appeal. *Id.* at 5–6. *Fourth*, the Singleton plaintiffs assert that we should rule on their motion now because the law and the facts are "simple." *Id.* at 8. And *fifth*, the Singleton plaintiffs assert that there is no jurisdictional bar because "[n]o notice of appeal was filed on the Singleton docket" and the appeal "'divest[ed] the district court [only] of its control *over those aspects of the case involved in the appeal*.'" *Id.* at 10 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)) (emphasis in brief).

We deny the *Singleton* plaintiffs' emergency motion for a ruling for several reasons. *First*, as we explained in our preliminary injunction, "federal law impose[s] complex and delicately balanced requirements regarding the consideration of race" in congressional redistricting—the Equal Protection Clause "restrict[s] the use of race in making districting decisions," but the Voting Rights Act "often insists that districts be created precisely because of race." *Abbott*, 138 S. Ct. at 2314. Indeed,

the *Singleton* plaintiffs acknowledged that the proper interpretation of Section 2 can be determinative of the merits of their constitutional claim. They asserted that they are substantially likely to succeed on their claim because recent Supreme Court precedents "hold that Section 2 of the Voting Rights Act cannot justify the perpetuation of a racially gerrymandered, majority-Black Congressional district when a legislature had no reason to believe that such a district was necessary to give Black voters the opportunity to elect the candidate of their choice." *Singleton* Doc. 57 at 9. We do not share the *Singleton* plaintiffs' view that their constitutional claim is simple and their motion for preliminary injunction must be decided now, before the Supreme Court can weigh in on the "complex and delicately balanced requirements" that are relevant to the merits of the claim and the relief the *Singleton* plaintiffs seek. Indeed, as we explained when we first reserved ruling on the *Singleton* plaintiffs' constitutional claims, the constitutional issues are complicated, and that reality has not changed.

*Second*, as we also explained when we first reserved ruling, numerous facts relevant to the constitutional issues are disputed and not yet fully developed, *Milligan* Doc. 107 at 216, and that reality has not changed either. Indeed, the *Milligan* plaintiffs, who also challenge the Plan on constitutional grounds, oppose the *Singleton* plaintiffs' emergency motion for a ruling on precisely this ground. *Milligan* Doc. 135 at 1–2 & n.1.

*Third*, the constitutional issues turn in large part on what the Alabama Legislature intended when it enacted the Plan, and the evidentiary record on those issues (in both *Singleton* and *Milligan*) is disputed and not yet fully developed. Accordingly, even if we were inclined to rule preliminarily on the constitutional issues the *Singleton* plaintiffs raise (and we are not), our consideration would benefit from further evidentiary development.

*Fourth*, at least two members of the Supreme Court expressed concern that the preliminary injunction entered more than a month ago was then too late (because the primary election is coming too soon) to bar the Defendants from conducting the upcoming congressional election according to the Plan. We cannot help but observe that with the passage of time, that concern has become more substantial, not less.

And finally, we adhere to our view that we should not decide any constitutional claims before we must. Accordingly, we continue to reserve ruling on the *Singleton* plaintiffs' motion for a preliminary injunction, and the Emergency Motion For A Ruling On Their Renewed Motion For A Preliminary Injunction filed by the *Singleton* plaintiffs is **DENIED**. *Singleton* Doc. 104. For the same reasons, the Singleton Plaintiffs' Motion For Expedited Ruling On Their Renewed Motion For Preliminary Injunction also is **DENIED**. *Singleton* Doc. 98.

**DONE** and **ORDERED** this 25th day of February, 2022.

_____
**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

_____
**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE