

2022 Apr-20  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BOBBY SINGLETON, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No.: 2:21-cv-1291-AMM |
| | ) | |
| JOHN H. MERRILL, | ) | **THREE-JUDGE COURT** |
| Secretary of State, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

---

| | | |
|---|---|---|
| EVAN MILLIGAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2:21-cv-01530-AMM |
| | ) | |
| JOHN H. MERRILL, in his | ) | **THREE-JUDGE COURT** |
| Secretary of State of Alabama, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

---

| | | |
|---|---|---|
| MARCUS CASTER, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No.: 2:21-cv-01536-AMM |
| | ) | |
| JOHN H. MERRILL, | ) | |
| Secretary of State of Alabama, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' RESPONSE TO THE COURT'S APRIL 15, 2022 ORDER REGARDING DATES RELATED TO THE 2024 CONGRESSIONAL ELECTION**

DEFENDANTS' RESPONSE TO THE COURT'S APRIL 15, 2022 ORDER REGARDING
DATES RELATED TO THE 2024 CONGRESSIONAL ELECTION

Plaintiffs have asked to press ahead in this Court even though two of their cases are pending before the Supreme Court and will soon resolve "whether a second majority-minority congressional district … is required by the Voting Rights Act and not prohibited by the Equal Protection Clause." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). This approach guarantees that Defendants will be prejudiced by engaging in discovery and briefing three times over—already as part of the preliminary injunction proceedings, now again while Plaintiffs' cases are before the Supreme Court, and then again after Plaintiffs' cases are decided by the Supreme Court. And there remains the prospect that the Supreme Court decides some or all of the key issues in these cases, such that discovery and briefing would be for naught or would need to be repeated depending on how the Supreme Court decides the question pending before it: what §2 requires of States in redistricting and what the Equal Protection Clause prohibits. *See id.*; *see also id.* (describing existing caselaw as "notoriously unclear and confusing"); *see also id.* at 882-83 (Roberts, C.J., dissenting) (stating "*Gingles* and its progeny have engendered considerable disagreement and uncertainty"); *id.* at 889 (Kagan, J., dissenting) (anticipating "changes in the law"). Consistent with the forthcoming clarification from the Supreme Court, the three-judge court considering challenges to Alabama's state house and senate districts recently held that litigation in abeyance "pending a ruling

2

by the Supreme Court of the United States in *Milligan v. Merrill*, No. 21–1086, and *Caster v. Merrill*, No. 21–1087." *See* Order, *Thomas v. Merrill*, No. 2:21-cv-1531 (N.D. Ala. Mar. 21, 2022), ECF No. 61. This Court should do the same.

Plaintiffs' only argument in response is that there might not be sufficient time for additional proceedings after the Supreme Court decides *Merrill*. *See Milligan* Doc. 142 at 3-4. Thus, at a status conference on April 14, 2022, and in its order the following day, this Court instructed Defendants "to identify the latest date by which the Secretary of State must have a map of congressional districts and a list of candidates in order to hold an election in 2024." Apr. 15, 2022 Order.

The Secretary of State must have a finalized congressional redistricting plan and a list of candidates by December 20, 2023, the date on which parties certify their candidates to election officials and after which ballot printing begins.[1] To meet that deadline, election officials need sufficient time to implement any changes to the enacted redistricting plan. In the Secretary's judgment, if there are changes to the enacted redistricting plan, the State can meet that December deadline if there is a remedial plan approved by this Court by early October, which would also be in

---

[1] At this time, Defendants are not waiving any arguments they might have later in this litigation or any pending or future litigation about whether some future time would be too late to order that district lines be changed for a future election. Any such arguments are based on "the particular circumstances" of any such order and its relation to election deadlines. *Moore v. Harper*, 142 S. Ct. 1089, 1089 (2022) (Kavanaugh, J., concurring in denial of stay)—particularities unknowable to Defendants now. For example, a hypothetical order that would require drawing electoral districts without any regard for existing district lines would require more time to implement than more tailored relief.

advance of the candidate qualifying deadline of November 10, 2023.[2] Of course, the exact amount of time it would take election officials to implement changes required by a new map would depend on the nature of the changes. If there are no changes, then there will be nothing further for election officials to do; whereas "[c]hanges that require complex or disruptive implementation" take more time "to implement." *Merrill*, 142 S. Ct. at 881 n.1 (Kavanaugh, J., concurring). But in any event, election officials will have significantly more time than they would have had to implement changes in the 2022 cycle. And this Court is practically certain to have more time to adjudicate any of Plaintiffs' remaining claims than the Court had to adjudicate Plaintiffs' preliminary injunction motions between November 16, 2021, when the *Milligan* complaint was filed, and January 24, 2022, when the Court issued its preliminary injunction order the week that candidate qualifying was set to close. Thus, any risk of prejudice to Plaintiffs of awaiting guidance from the Supreme Court is minimal while the risk of prejudice to Defendants of invasive, duplicative, and unnecessary discovery is guaranteed.

Even in the unlikely event that the Supreme Court does not rule until late June 2023, there is still likely ample time to adjudicate Plaintiffs' remaining (or

---

[2]*See* Alabama Secretary of State, Alabama Election Cycle Calendar, available at: https://www.sos.alabama.gov/sites/default/files/voter-pdfs/election-calendar/Alabama%20Election%20Chart%202016-2030.pdf (indicating March 5, 2024 primary date); Ala. Code. § 17-13-5(a) (providing that candidate qualifying "closes 116 days before the date of the primary election").

refocused) claims.[3] In addition to having more time than earlier in the case, adjudicating the claims would likely prove far easier for the parties and the Court a second time around for several reasons. First, the Supreme Court will have "resolve[d] the wide range of uncertainties arising under *Gingles*," *Merrill*, 142 S. Ct. at 883 (Roberts, C.J., dissenting). Its decision will simultaneously clarify the Equal Protection Clause's intertwined demands in redistricting. *Id.* at 881 (Kavanaugh, J., concurring) (describing "underlying question" as what §2 requires and what the Equal Protection Clause prohibits). At the very least, the parties will be left with a clearer rule of decision to resolve any remaining claims. And the Supreme Court could possibly resolve any Section 2 claims altogether, leaving fewer issues to litigate and adjudicate.

Second, the parties and this Court have already covered much ground. A dozen experts have produced reports and provided live testimony, numerous fact witness have also testified or sat for depositions, and Defendants have produced many documents. There are 2,000 pages of transcript testimony. And the parties have submitted "more than 1,000 pages of briefing." *Merrill*, 142 S. Ct. at 883 (Kagan, J., dissenting). Thus, when the Court asked Plaintiffs last week what

---

[3] Assuming a June decision is contrary to the Supreme Court's recent practice of deciding redistricting cases in roughly four months. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254 (2015) (argued Nov. 12, 2014, decided March 25, 2015); *Bethune-Hill v. Va. St. Bd. of Elections*, 137 S. Ct. 788 (2017) (argued Dec. 5, 2016, decided March 1, 2017); *Cooper v. Harris*, 137 S. Ct. 1455 (2017) (argued Dec. 5, 2016, decided May 22, 2017); *Abbott v. Perez*, 138 S. Ct. 2305 (2018) (argued April 24, 2018, decided June 25, 2018).

additional discovery they would propose conducting during the pendency of the Supreme Court appeal, neither the *Caster* nor *Singleton* Plaintiffs suggested a need for much additional discovery, and the *Milligan* Plaintiffs gave only a few concrete examples, which can be accomplished after the Supreme Court's decision. All this suggests that, while there may be more to do once the Supreme Court rules, there will be ample time, as neither the parties nor the Court will be starting from square one.

Third, as Defendants noted in their response last week, *see Milligan* Doc. 144 at 11, the Supreme Court has recently decided several high-profile redistricting cases promptly after oral argument, taking anywhere from two months to six-and-one-half months to issue opinions in the following cases: *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254 (2015); *Bethune-Hill v. Va. St. Bd. of Elections*, 137 S. Ct. 788 (2017); *Cooper v. Harris*, 137 S. Ct. 1455 (2017); *Abbott v. Perez*, 138 S. Ct. 2305 (2018).[4] Thus, if the Court decides *Milligan* and *Caster* on a normal schedule,

---

[4] During last week's hearing, this Court suggested that the Supreme Court might not release its decision until August. That is highly unlikely. That would be contrary to the Court's recent practice in redistricting cases, *supra*. It would also be contrary to the Court's practice generally. The Court has abided by its traditional practice of deciding all October term cases ordinarily by the last day in June before the summer recess. In only a few rare instances has the Court released October term decisions after June, and even then those decisions came in the early days of July. *See Brnovich v. Democratic National Committee*, No. 19-1257 (Decided July 1, 2021); *Sharp v. Murphy*, No. 17-1107 (Decided July 9, 2020); *Mitchell v. Wisconsin*, No. 18-6210 (Decided June 27, 2019); *Janus v. State, County, and Municipal Employees*, No. 16-1466 (Decided June 26, 2018); *Hernandez v. Mesa*, No. 15-118 (Decided June 26, 2017); *Voisine v. United States*, No. 14-10154 (Decided June 27, 2016); *Glossip v. Gross*, No. 14-7955 (Decided June 29, 2015).

6

the cases could be back before this Court by February 2023, leaving even more time to resolve remaining issues with necessary guidance "about the rules that govern majority-minority districts." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring).

Thus, there is presently no basis for forcing Defendants to bear the considerable costs of litigating issues this Court may not need to resolve, or that it may need to revisit based on forthcoming binding precedent from the Supreme Court. All that would be accomplished by pressing ahead would be allowing Plaintiffs another round of discovery from overlapping fact witnesses and experts— many of whom have already been the subject of discovery, depositions, or cross-examination. Then, if the Supreme Court remands for further proceedings on the Section 2 issues, Plaintiffs will surely seek a *third* round of discovery from the same fact witnesses and experts. It is prejudicial to Defendants and a guaranteed waste of resources. It is difficult to imagine a better reason to pause litigation than awaiting a decision from the Supreme Court in Plaintiffs' own cases, which will necessarily affect the course of the remaining proceedings. *Cf. Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).

Should this Court decide not to hold these cases in abeyance pending the Supreme Court's decision, this Court should at least await some further proceedings in the Supreme Court before considering again whether to move forward with additional discovery. The Court could decide to hold these cases in abeyance until a

date certain in March or April of 2023. If no decision has issued by then, the Court can hold a status conference to consider whether the parties ought to proceed, with the benefit of completed merits briefing and oral argument at the Supreme Court. At the very least, the parties should not be engaged in discovery while the parties are actively litigating before the Supreme Court.

*Respectfully Submitted,*

Steve Marshall
 *Attorney General*

*Edmund G. LaCour Jr.*
Edmund G. LaCour Jr. (ASB-9182-U81L)
 *Solicitor General*
Thomas A. Wilson (ASB-1494-D25C)
 *Deputy Solicitor General*
James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov

**Counsel for Secretary Merrill**

s/ *Dorman Walker* (with permission)

Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)

105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

**_Counsel for Sen. McClendon and Rep. Pringle_**

**CERTIFICATE OF SERVICE**

I certify that on April 20, 2022, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Edmund G. LaCour Jr.
*Counsel for Secretary Merrill*