FILED
2023 Jan-24  PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
 2                     SOUTHERN DIVISION

 3

 4     BOBBY SINGLETON, et al.,        *
                  Plaintiffs,          *   2:21-cv-1291-AMM
 5                                     *   November 16, 2022
       vs.                             *   Birmingham, Alabama
 6                                     *   10:00 a.m.
       JOHN MERRILL, in his official   *
 7     capacity as Alabama Secretary   *
       of State, et al.,               *
 8                  Defendants.        *
       ********************************
 9                                     *
       EVAN MILLIGAN, et al.,          *
10                  Plaintiffs,        *   2:21-cv-1530-AMM
                                       *
11     vs.                             *
                                       *
12     JOHN MERRILL, in his official   *
       capacity as Alabama Secretary   *
13     of State, et al.,               *
                    Defendants.        *
14     ********************************
                                       *
15     MARCUS CASTER, et al.,          *
                    Plaintiffs,        *   2:21-cv-1536-AMM
16                                     *
       vs.                             *
17                                     *
       JOHN MERRILL, in his official   *
18     capacity as Alabama Secretary   *
       of State, et al.,               *
19                  Defendants.        *
       ********************************

20

21

22                  TRANSCRIPT HEARING
                   VIA ZOOM CONFERENCE
23        BEFORE THE HONORABLE ANNA M. MANASCO,
            THE HONORABLE TERRY F. MOORER,
24          THE HONORABLE STANLEY MARCUS

25
```

*CHRISTINA K. DECKER, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, AL 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

1

2          Proceedings recorded by OFFICIAL COURT REPORTER, Qualified
3      pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies
          and Procedures Vol. VI, Chapter III, D.2.  Transcript
4                 produced by computerized stenotype.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              <u>APPEARANCES</u>

2

      <u>FOR THE SINGLETON PLAINTIFFS:</u>

3

      James Uriah Blacksher
4     JAMES U. BLACKSHER, ATTORNEY
      825 Linwood Road
5     Birmingham, AL 35222
      205-612-3752
6     Fax: 866-845-4395
      Email: Jublacksher@gmail.com
7

8     Henry C Quillen
      WHATLEY KALLAS LLP
9     159 Middle Street Suite 2D
      Portsmouth, NH 03801
10    603-294-1591
      Fax: 800-922-4851
11    Email: Hquillen@whatleykallas.com

12

13

      <u>FOR THE MILLIGAN PLAINTIFFS:</u>
14

      Deuel Ross
15    NAACP LEGAL DEFENSE &
      EDUCATIONAL FUND, INC.
16    700 14th Street N.W. Ste. 600
      Washington, DC 20005
17    (202) 682-1300
      Dross@naacpldf.org

18

19    Davin M. Rosborough
      AMERICAN CIVIL LIBERTIES
20    UNION FOUNDATION
      125 Broad St.
21    New York, NY 10004
      (212) 549-2500
22    Drosborough@aclu.org

23

24

25

1    FOR THE CASTER PLAINTIFFS:

2    Abha Khanna
     ELIAS LAW GROUP LLP
3    1700 Seventh Avenue, Suite 2100
     Seattle, WA 98101
4    206-656-0177
     Email: AKhanna@elias.law

5


6    FOR THE DEFENDANT:

7
     James W Davis
8    OFFICE OF THE ATTORNEY GENERAL
     501 Washington Avenue
9    P O Box 300152
     Montgomery, AL 36130-0152
10   334-242-7300
     Fax: 334-353-8400
11   Email: Jim.davis@alabamaag.gov

12
     J Dorman Walker
13   BALCH & BINGHAM LLP
     P O Box 78
14   Montgomery, AL 36101
     334-834-6500
15   Fax: 334-269-3115
     Email: Dwalker@balch.com
16

17

18

19

20   COURTROOM DEPUTY:  Frankie N. Sherbert

21

22   COURT REPORTER:  Christina K. Decker, RMR, CRR

23

24

25

<pre>
 1                    P R O C E E D I N G S

 2                 (In open court.)

 3            JUDGE MARCUS:  Thank you very much.

 4       Good morning to all of you.  And let me welcome you.

 5       I call the three cases Singleton v. Merrill, Milligan v.

 6  Merrill, and Caster v. Merrill.  And ask you if you would be

 7  kind enough to state your appearances on the record.

 8       Let's start first with the Singleton plaintiffs.

 9            MR. QUILLEN:  Henry Quillen with Whatley Callis, LLP,

10  for the Singleton plaintiffs.

11            JUDGE MARCUS:  And good morning to you, sir.

12       And for the Milligan plaintiffs?

13            MR. ROSS:  Deuel Ross for the Milligan plaintiffs.

14            THE COURT:  And good morning, sir, to you.

15       And for the Caster plaintiffs.

16            MS. KHANNA:  Good morning, Your Honor.  Abha Khanna

17  for the Caster plaintiffs.

18            JUDGE MARCUS:  And good morning.

19       And for the State of Alabama?

20            MR. DAVIS:  Good morning, Judge.  Jim Davis here for

21  Secretary Merrill.

22            JUDGE MARCUS:  And good morning to you.

23       And for the intervening defendants.

24            MR. WALKER:  Good morning, Your Honor.  This is Dorman

25  Walker for the legislative intervenors.
</pre>

1              JUDGE MARCUS:  And good morning, as well, to you.

2         When we were here last at a status conference on the 14th

3    of April last spring, we discussed the status and posture of

4    the case, issues of discovery, timing and so on.  And we put

5    the matter over until today awaiting argument and ultimately

6    resolution by the Supreme Court of the United States.  They had

7    oral argument, of course, as everyone knows, and many of you

8    participated in, the first week in October.

9         And so we'd like to really address the status and posture

10   of the case as each of you see it at this point.  And I thought

11   I would begin with counsel for the Singleton plaintiffs.

12             MR. QUILLEN:  Yes, Your Honor.

13        Obviously, we are awaiting a decision by the Supreme

14   Court.  I think the State has at various times represented that

15   it could come in February if the Supreme Court follows its

16   previous timing in cases like these.  It could come as late as

17   July if the Supreme Court waits as late as it has in some cases

18   over the past few terms.

19        But that said -- and I think some of the other plaintiffs'

20   counsel will cover this in more detail -- we do feel like what

21   we would like to accomplish at this conference is to start the

22   process of putting in place a schedule that will allow us to

23   get to a resolution of the claims before we run into problems

24   with Purcell and the 2024 election.

25        And I think the one way we have discussed doing that --

1   and I will let Mr. Ross and Ms. Khanna chime in here if they

2   would like -- is to have a schedule that would start on a date

3   certain if the Supreme Court has not ruled by then so that

4   things like discovery can get underway in time to be completed

5   for summary judgment motions and a trial that could produce a

6   resolution to this case in time for the Legislature to have an

7   opportunity to redistrict if they need to, and this Court to

8   impose a map if it needs to before the last date by which the

9   State has said that they can no longer make changes to the

10  districts before the 2024 election.

11          JUDGE MARCUS:  Can you be any more specific from your

12  perspective about scheduling?

13          MR. QUILLEN:  Yes.  I believe the State has said that

14  after October of 2023, it cannot make changes to the districts

15  in time for candidate filing and other things that happen ahead

16  of the 2024 primary elections.

17      On the plaintiffs' side, we've come up with a draft

18  schedule.  We have not shared it with the State yet, although

19  we're happy to discuss with the State what the schedule should

20  be.

21      And we think with an aggressive but realistic schedule we

22  could start -- we could start discovery and other items on the

23  schedule in March of 2023 if the Supreme Court has not ruled by

24  then, and get a -- and get to a resolution of this case in time

25  to avoid problems with Purcell.

```
 1                JUDGE MARCUS:  Let me ask you this question.

 2                MR. QUILLEN:  Yes.

 3                JUDGE MARCUS:  And it may be your colleagues will

 4   speak to it more fully than you on the plaintiffs' side.

 5        But if the Supreme Court hasn't ruled by March 1, 2023,

 6   what kind of discovery would you be able to conduct that would

 7   not otherwise appear to be premature, particularly with regard

 8   to the Section 2 claim?

 9                MR. QUILLEN:  Yes.  I will let the plaintiffs who have

10   the Section 2 claim talk about that.

11                JUDGE MARCUS:  Right.

12                MR. QUILLEN:  But those of us who have a claim other

13   than the Section 2 claim feel like the discovery does not

14   depend very much on what the Supreme Court says.

15        In fact, in an Eleventh Circuit case, the City of

16   Jacksonville case that has just come up to the Eleventh Circuit

17   about redistricting in the city of Jacksonville, the Eleventh

18   Circuit noted that a claim of racial gerrymandering in that

19   case would likely have -- be unaffected by the decision in the

20   Milligan case in the Supreme Court.

21                JUDGE MARCUS:  Let me sharpen my question.

22        What kind of discovery would you see going forward in

23   March of '23 with regard to Singleton on the constitutional

24   claims?  Who would you seek to depose?  What documents or

25   materials would you seek to obtain?
```

```
1              MR. QUILLEN:  Your Honor -- do you want -- Deuel, did
2    you want to say something?
3              MR. ROSS:  If I may, Your Honor.
4              JUDGE MARCUS:  Would it be better to do it through
5    you, Mr. Ross?  I am happy to proceed that way, as well, if the
6    parties prefer from the plaintiffs' side.
7              MR. QUILLEN:  That's fine for us.
8              JUDGE MARCUS:  All right.  Mr. Ross, why don't we turn
9    to you, then, on behalf of the Milligan plaintiffs, then we
10   will turn to Ms. Khanna, and then we will go back to you,
11   Mr. Quillen, before we turn to the State, if you have anything
12   to add.
13        Thank you.
14        Mr. Ross.
15             MR. ROSS:  Thank you, Your Honor.
16        So for the Milligan plaintiffs, I think one of the issues
17   with respect to identifying specifically who we may want to
18   depose is that there have not been Rule 26 disclosures in this
19   case yet.
20        And so we don't -- while we may know some of the folks who
21   we would use to support our claims, we don't know who the
22   defendants would use to, you know, rebut our claims, either the
23   intentional discrimination claims or the Section 2 claim.  And
24   so I think one thing that we imagine that might be helpful both
25   to the Court and to the parties would be to require some
```

1  disclosures in the next month or so, so that we can

2  specifically identify some witnesses that we would like to

3  depose on the intentional discrimination claims.

4      Beyond that, Your Honor, I do know that the State in its

5  briefing was arguing the cores of these districts that they

6  have been defending go back to the 1970s.  We don't have

7  discovery that goes back that far on the redistricting process

8  and sort of the intent behind, you know, the 1970 or the 1980

9  redistricting, or even the 1990 redistricting process.  That

10  may be helpful deposing prior members of the redistricting

11  commission again, based on the State's defense that they are

12  using the cores of the prior districts.

13      That's some of the discovery that we think goes to our

14  intentional discrimination and racial gerrymandering claims

15  that the State -- that we did not get discovery on in the

16  preliminary injunction stage.

17          JUDGE MARCUS:  Let me just press the point for a

18  moment, Mr. Ross.

19          MR. ROSS:  Sure.

20          JUDGE MARCUS:  If I can.  Let's hold aside for a

21  moment the '70s and the '80s and '90s and talk about the 2020

22  maps, the 2021 map.

23      We talked about this last spring and talked about who you

24  would propose to discover by way of deposition that you hadn't

25  already conducted.  We talked about the cartographer Hinaman.

1   He had already been deposed.  Perhaps you would have to depose

2   him again based on what the Supreme Court says.  But before

3   that, I'm not sure that there would be much purpose.  And you

4   can sort of enlighten us on that.

5        With regard to the legislators, you have the two

6   intervenors, and they have already been deposed.  We went

7   forward with them because we rejected the privilege claim on

8   the grounds of waiver.  But presumably we'd be facing that

9   issue to the extent you wanted to depose the other members of

10  the reapportionment committee.

11       And other than that, it wasn't clear who else you might

12  want to depose.  Is there anything you can add to that prior

13  discussion?

14            MR. ROSS:  Your Honor, I believe that there are --

15  again, other members of the redistricting commission, with

16  respect to the 2020 redistricting process.

17       As I said, I think the issue for us in identifying

18  specific people who we would like to depose who we can't

19  already freely speak to, or we don't know who the defendants

20  are going to rely on for their intentional discrimination --

21  defending against the intentional discrimination or the racial

22  gerrymandering claim, beyond those people who they have already

23  put forward as experts or witnesses at trial.  And there may be

24  more people who we're simply unaware of.

25       So that's why we think it would be helpful for the

```
 1  Court --
 2          JUDGE MARCUS:  Yes.  I appreciate that.
 3      Let me ask you, though.  With regards to other members of
 4  the commission, you're talking about members of the legislative
 5  body who served on the commission.  Do I have that right?
 6          MR. ROSS:  Yes, Your Honor.
 7          JUDGE MARCUS:  And, again, presumably, we will face
 8  the issue of privilege unless there is a waiver from some or
 9  all of them.
10      Do you anticipate calling some folks without a waiver who
11  will waive?
12          MR. ROSS:  I do anticipate that the plaintiffs will be
13  able to call people who have not waived the privilege, and they
14  may be people that the defendants may want to depose.
15      And I imagine also wanted to call members who are -- who
16  would be resistant to waiving the privilege who may be
17  witnesses for the State.
18      And so that's sort of the issue, as I said, Your Honor,
19  that we don't know who the State wants to call or who they want
20  to rely on.  And so it's hard to say who we would want to
21  depose, who -- we're simply unaware of what their arguments are
22  going to be.
23          JUDGE MARCUS:  Help me with regard to the Section 2
24  claim.  I take it you agree that there's not much reason to do
25  discovery on Section 2 until you hear what the Supreme Court
```

1  has to say about Section 2, game rules, et cetera.

2       MR. ROSS:  I think that's correct, Your Honor.

3     And as Mr. Quillen said, the plaintiffs' counsel have

4  discussed perhaps holding discovery on that case in abeyance

5  until late March.  And then putting forward a schedule that

6  would essentially allow discovery to begin at that point or

7  earlier, if the Court comes out with a decision earlier, and

8  build then a process for it.

9     In the event the Court does come out with a decision in

10 the middle of discovery, discovery would stop, we would hold a

11 status conference, and we would discuss with the Court how to

12 move forward, depending on what the opinion says.

13       JUDGE MARCUS:  Help me understand this.

14    Assume for the purposes of my question that you do not

15 have an opinion from the Supreme Court of the United States by

16 March 1.  I take it from what you've said and Mr. Quillen has

17 said, you would seek to conduct Section 2 discovery on or about

18 March 1.  Do I have that right?

19       MR. ROSS:  I think plaintiffs were thinking of late

20 March rather than March 1.

21       JUDGE MARCUS:  So let's --

22       MR. ROSS:  It may not make much of a difference.

23 Sorry, Your Honor.

24       JUDGE MARCUS:  Let me change it then.  Let's just

25 assume by March 31 you don't have an answer from the Supreme

1  Court.

2          MR. ROSS:  Yes, Your Honor.

3          JUDGE MARCUS:  As I understand what you are saying,

4  you would propose to do Section 2 discovery without any

5  guidance from the Supreme Court.  Help me understand what you

6  could do that might make practical sense, given the reality

7  that the Section 2 case is largely, although not entirely, an

8  expert case.

9      What could you hope to adduce from the experts that hasn't

10  already been presented in this record before knowing what the

11  Supreme Court has to say about Section 2?

12          MR. ROSS:  Your Honor, again, I think what, from our

13  point of view, there's more evidence that could be taken with

14  respect to communities of interest, which ones exist, which

15  ones the State took into consideration, the evidence that we

16  developed about the connection between Mobile and the Black

17  Belt, the evidence about the lack of a community of interest

18  from our perspective in Baldwin and Mobile.

19      Those are things that go both to expert and fact witnesses

20  that we think we could take discovery on related to the Section

21  2 claims.

22      And also, you know, our intent claim, the Arlington

23  Heights factors have elements that are similar to the Senate

24  factors.  And so there could be evidence there that we would

25  like to develop that overlaps both with intent and the Section

1  2 claim.

2       That is not dependent -- you know, sort of the history of

3  what happened both in the 2020 process and earlier is not

4  dependent on what the Supreme Court says.  We would have to

5  develop those facts regardless of what happens.

6       JUDGE MARCUS:  What do you have in mind with regard to

7  the Arlington Heights factors?

8       I'm just trying to have you all help me more specifically.

9  These comments have been made at a higher order of generality,

10  and I appreciate why.  But it would be helpful for us to hear,

11  to the extent you're in a position to do this, to tell us what

12  specifically.

13       I understand the issue of communities of interest.  You

14  can explore further and the State could explore that further,

15  as well.

16       But with regard to the issue of intent on the

17  constitutional claim and the Arlington Heights factors, just

18  flesh it out a little bit more for me if you could.

19       MR. ROSS:  Yes, Your Honor.

20       I think what we have in mind is sort of, you know, again

21  the process of what happened, you know, the fact that the State

22  was taking -- having redistricting hearings, and that certain

23  maps like the Singleton map, like the two majority-minority

24  district maps were put forward, that legislators rejected those

25  maps.  We think obviously for racially discriminatory reasons,

1    exploring that.

2        All of that goes to both the history of discrimination

3    within the Arlington Heights on the Section 2 context.  And as

4    I said, even going further back as the State has said --

5            JUDGE MARCUS:  Let me stop you.

6            MR. ROSS:  Yes, Your Honor.

7            JUDGE MARCUS:  Just stop you with that.

8        With regards to legislative intent, you are talking about

9    with respect to the 2020 map.  Again, you are talking about

10   deposing members of the reapportionment committee and maybe

11   others in the legislative body.  Is that what you are referring

12   to?

13           MR. ROSS:  I think it's depositions of both

14   individuals, Your Honor.  And it may also include, you know,

15   document discovery, as I said.  You know, simply requesting

16   documents that the State developed in the 2020 process, or that

17   other third parties may have developed as a part of the

18   redistricting process in 2020 and going further back, as I

19   said, even to the '70s, if that continues to be the State's

20   defense.

21           JUDGE MARCUS:  Okay.  Anything else you can tell me

22   about the discovery you would anticipate?

23           MR. ROSS:  I think that's broadly what we're

24   anticipating, Your Honor.  And I think I would just emphasize

25   once more that the State has taken the position that we need to

1  have a decision in this case by early October in order for

2  there to be any potential relief for the 2024 elections.

3       The State also took a position that beginning discovery in

4  March and April was, at least a few months ago, what they were

5  anticipating, as well.  So we're hopeful that we can begin the

6  process as soon as possible.

7            JUDGE MARCUS:  Thanks very much.

8       Let me turn to Ms. Khanna, if you could on behalf of the

9  Caster plaintiffs.

10           MS. KHANNA:  Thank you, Your Honor.

11      As you know, the Caster plaintiffs only have the Section 2

12 claim.  And we see no reason to presuppose the outcome of the

13 Supreme Court's decision there that will largely tell us what,

14 if any, further proceedings there are on the merits and/or

15 remedial hearing.  Certainly, our main concern is making sure

16 that any relief is -- any remedy in place in time for the 2024

17 elections.

18      I don't want -- I don't think we agree to the October drop

19 date, but certainly it makes sense to work in those parameters

20 to make sure we avoid as many kind of scheduling conflicts as

21 possible.

22      We have no objection to the intent based and

23 constitutional claims going forward in discovery at whatever

24 timeline they think makes sense.  I agree that to try to crunch

25 that all in next summer, particularly when it comes to

 1   documents, that could be tricky.

 2       But I think when it comes to Section 2 claims, we will

 3   certainly want to have, you know, frequent check-ins with the

 4   State and with all counsel to make sure that as soon as the

 5   Supreme Court opinion drops we are in a position to jump into

 6   action and make sure we can get a resolution, or proceed to

 7   whatever the next steps would be, which would include further

 8   expert discovery, perhaps a trial, perhaps a remedial hearing

 9   as soon as possible.

10       So I think if the Milligan and the Singleton plaintiffs,

11   you know, agree with the State to proceed to discovery sometime

12   in March, I think we would just want to continue to be a part

13   of those discussions without setting firm dates for the expert

14   analyses or further Section 2 deadlines until we hear from the

15   Supreme Court.

16           JUDGE MARCUS:  Let me ask you the same question I put

17   to Mr. Ross and Mr. Quillen.

18       Assume with me for a moment that you don't hear from the

19   Supreme Court by the end of March.  Is there Section 2

20   discovery that makes any sense before you hear what they have

21   to say, particularly given the fact that the case is top heavy

22   with experts on the Section 2 matter?

23           MS. KHANNA:  I don't think there's anything uniquely

24   specific to the Section 2 case that we'd need to jump into

25   action at that time.  I think a lot of the discovery that

1   Mr. Ross mentioned with regard to the constitutional claims

2   will overlap with some of the Senate factors evidence that we

3   might put forward if there proceeds to be another trial on the

4   merits.  But I don't think we anticipate a host of discovery

5   outside of the experts before we hear from the Supreme Court,

6   so that -- it's just that we know what we're aiming at.

7           JUDGE MARCUS:  Right.  Okay.  Thanks very much.

8       Let me turn to counsel for the State of Alabama.

9   Mr. Davis.

10          MR. DAVIS:  Thank you, Judge.

11      Well, this is the first we have heard about any schedule

12   starting in March.  So we are a little -- we haven't had a

13   chance to think through what the plaintiffs with the equal

14   protection claims are proposing.

15      I don't think it makes sense to split discovery between

16   the equal protection claims and the Section 2 claims because of

17   the amount of overlap there will be.

18      I do think that some of the opinions in the Supreme

19   Court's stay order suggested that the justices recognized that

20   there is a connection between the Equal Protection Clause and

21   the Section 2 claim.  It's difficult to discuss and litigate

22   one without the other.

23      So, for example, if we were required to put up a witness

24   just for purposes of the equal protection claim, there's a

25   decent chance that same witness would be a relevant witness for

1    the Section 2 claim, and we would have to put them up again

2    later.  So we continue to think that it makes more sense to

3    wait for the Supreme Court to rule.

4        If plaintiffs wish to discuss -- plaintiffs with the equal

5    protection claims wish to discuss beginning some paper

6    discovery in the spring, we would be happy to have a

7    conversation with them about that.  And anything they have to

8    say to suggest that that would not be duplicative, I would be

9    happy to discuss that with them, but we have not had any such

10   conversations to this point.

11       Another point I would raise, Judge, is that I do think

12   that if the plaintiffs with the equal protection claim seek to

13   depose members of the legislative committee, that the Court

14   would likely have to deal with some privilege issues.  I don't

15   represent them.  I don't know that for certain.  But I would

16   expect that some of the legislators would assert privilege and

17   would do so vigorously, and they would also do so in response

18   to written discovery.

19            JUDGE MARCUS:  Let me just stop you at that point,

20   Mr. Davis.

21       You might find yourself in the position -- and you folks

22   know this a whole lot better than we do.  But you might find

23   yourself in the position where they will depose some Democratic

24   members of the reapportionment committee who may waive any

25   privilege, and you may have other members of the committee who

1  may invoke a privilege.

2      Does it make any sense to accelerate that process from

3  your perspective?

4          MR. DAVIS:  I don't think so.  Even if the plaintiffs

5  are going to rely on a senator who is happy to waive the

6  privilege who wishes to testify and they offer us the

7  opportunity to depose that senator, I don't know what to ask

8  them, not with any certainty yet, not until we get more

9  guidance from the Supreme Court, at least not on both the

10 Section 2 and the equal protection claims.  And I don't think

11 it makes sense to take two depositions of that senator.

12     I continue to think it would make more sense to wait until

13 we get the guidance from the Supreme Court.

14         JUDGE MARCUS:  Let me ask you the question this way.

15 And we talked about this originally.  And it's sort of been the

16 abiding question in terms of timing throughout.  What's the

17 drop date for you?

18         MR. DAVIS:  I don't think anything's changed since we

19 let the Court know in April that we think that if this Court

20 rules, if ultimately it rules against us, that a ruling would

21 need to come by at least early October.  Although we still have

22 to hedge a bit because we don't know what the relief would look

23 like.

24     If the relief -- if the order is your plans are unlawful,

25 you have to give new plans, but all you have to do is unpack

 1  District 7 a little bit, that might be something that the

 2  Legislature could do quickly.

 3      If the Court were to order an overhaul of the map, that's

 4  something that if the Legislature is going to district based on

 5  communities of interest and not race, it may take a little

 6  longer for the legislators to talk among themselves and to come

 7  up with what they think Alabama policy should be, in terms of

 8  the best way to implement the Court's decision.  So --

 9          JUDGE MARCUS:  I'm sorry.  No.  You please.  Go right

10  ahead.

11          MR. DAVIS:  I would say it's not possible to say that

12  there is a specific date and that so long as the Court rules by

13  that date the Legislature will have a fair opportunity to

14  implement a new plan.  It depends, as I think Justice Cavanaugh

15  recognized in the stay order, it depends on the scope of the

16  relief, in part on the scope of the relief.

17          JUDGE MARCUS:  Let me sharpen my question this way.

18  If the Supreme Court rules by early April, I take it, then, we

19  have enough time to get this done.

20          MR. DAVIS:  Yes.  I think so.

21          JUDGE MARCUS:  And how would you see us proceeding if

22  we get an opinion from the Supreme Court April 1st?  We do

23  discovery over what period of time, from your perspective?

24          MR. DAVIS:  I would want to see what the Supreme Court

25  rules and how significantly it changes.

1              JUDGE MARCUS:  Of course.

2              MR. DAVIS:  But, you know, keeping in mind what we've

3    already accomplished at the preliminary injunction stage, at

4    least some groundwork has been done.

5         So whether -- let's see -- April, May, June, you know,

6    whether we have a three-month or four-month discovery period, I

7    would think we would want to see that order and spend some time

8    with it --

9              JUDGE MARCUS:  Of course.

10             MR. DAVIS:  -- before we could say for certain how

11   much time we thought we needed.

12             JUDGE MARCUS:  Let me ask you two final questions

13   based on what plaintiffs' counsel have raised.

14        One issue that Mr. Ross raised and said could go forward

15   in March if you didn't have a Supreme Court opinion by then, is

16   an exploration to the extent you want to explore further

17   communities of interest.  We have had at least two identified

18   with clarity in this case.  The interest surrounding the port

19   in the Mobile area, and the interest surrounding communities of

20   interest surrounding the Black Belt.  There may be others.

21   They may cut in opposite directions.

22        But if I heard him right, he was suggesting the wisdom of

23   doing -- you may want to do some discovery on that, which could

24   predate any opinion from the Supreme Court, because whatever

25   else they will say, communities of interest will be an

 1   important consideration in any map in any analysis.

 2        So does it make sense to conduct an inquiry, some

 3   discovery about communities of interest sooner rather than

 4   later?

 5             MR. DAVIS:  No.  I don't think so, Judge, because even

 6   if we know the communities of interest will be relevant, we

 7   don't know the extent the Supreme Court will rule -- that the

 8   Equal Protection Clause will tolerate basing that community of

 9   interest on race and race alone.  And we don't know that -- if

10   we were to depose a couple of witnesses on whether there really

11   is a community of witnesses in Mobile and Baldwin County, what

12   will the Supreme Court say when it ultimately rules, that may

13   trigger a need to re-depose the witnesses?

14        I think we have a substantial risk of duplicative

15   discovery.

16             JUDGE MARCUS:  Gotcha.  Of course, the difficult

17   problem is the case is not ripe for discovery now.  I think we

18   all pretty much agree.  And when it becomes ripe, it may be too

19   close to the drop dates that you have, whether it's October, or

20   you have got a November 10th date for sure, in terms of the

21   filing --

22             MR. DAVIS:  Correct.

23             JUDGE MARCUS:  -- kind of deadline.  And so you

24   theoretically could be in a position where if the opinion comes

25   in the late spring and nothing is done before that period of

1  time, it will be extraordinarily difficult, if not impossible,

2  to resolve the matter in time to provide relief if they are

3  otherwise entitled to relief.  We've already found on the

4  record heretofore that they were.

5      So that's the dilemma.  The dilemma is it's not ripe, and

6  then when it becomes ripe, it's too close.  That's the Purcell

7  dilemma.  How do we deal with it as you see it?

8          MR. DAVIS:  I think we continue to wait.  I do

9  think -- I would not agree that it would be impossible to

10  litigate these issues in time for a ruling.

11          JUDGE MARCUS:  Right.

12          MR. DAVIS:  When you look at what we did at the

13  preliminary injunction stage, how much we were able to do

14  quickly, I think we accomplished quite a bit, the Court and the

15  parties alike.

16      I do think there's a cost to litigating something in such

17  a rapid schedule.  But there's also a significant cost to

18  duplicative discovery and putting these witnesses up for

19  deposition on multiple occasions.  So the position of the State

20  is it continues to make sense to wait.

21      And if the plaintiffs -- they have not consulted with us

22  to date.  If the plaintiffs think there's some, maybe some

23  paper discovery that would be non-duplicative, we would be

24  happy to discuss that with them.  We have not yet done so, but

25  we will hear them out.

 1        I heard document request.  Now, if they request documents
 2   from legislators, that would be a privilege fight, I think.
 3   But if there is some other document request they have in mind,
 4   I would be willing to discuss that with them.
 5             JUDGE MARCUS:  Gotcha.
 6        Let me turn to your colleague representing the
 7   intervenors.  Did you have anything that you wanted to add to
 8   what Mr. Davis has said?
 9             MR. WALKER:  Yes, sir, Judge Marcus.  I generally
10   agree with what Mr. Davis said.
11        I think that in terms of discovery with regard to the 2010
12   redistricting -- the 2020 -- excuse me -- redistricting
13   process, the committee has probably given everything that it
14   has to the plaintiffs at this point.  They were fairly thorough
15   on that.
16        I did discover after the case was stayed that I need to
17   make two supplementary disclosures.  They're fairly minor.
18   Once the case is reactivated, I will do that.  They are not
19   going to change anything.
20        I also think that discovery into communities of interest
21   is not really the issue.  The issue is this is a lot in some
22   ways like a Title VII case, where it's not what the plaintiff
23   believes the facts are, it's what the decision maker truly
24   believes the facts to be.
25        The guidelines are clear that there are many different

1    communities of interest but they can overlap.  And it's up to

2    the Legislature to determine which communities of interest to

3    respect and honor.

4        So the issue is not is there a community of interest here

5    or there, but what the members of the Legislature truly believe

6    to be communities of interest and are important.

7        I do think it's probable -- I haven't canvassed members of

8    the Legislature or even all the members of the committee.

9    Mr. Ross and I at one time had a conversation about deposing

10   four members of the committee, and all of those told me that

11   they would assert the privilege.

12       I think, as Your Honor has intimated, that may fall down

13   along party lines to some extent.  And that Democratic

14   representatives may -- or members of the Legislature may be

15   more likely to want to be deposed than not.  But I don't know

16   that for a fact.  But I do think that most of the Republican

17   members will want to assert the privilege, but I haven't spoken

18   to them.

19       JUDGE MARCUS:  Last question for counsel for the

20   defendants from me, and we'll hear from my colleagues in a

21   moment.  But this is to you, Mr. Walker and Mr. Davis.

22       Is there any reason why we ought not to direct the parties

23   to sit down within 10 days and explore this issue of whether

24   there's some paper discovery that they want that you can see

25   your way clear to producing for them?

1          MR. DAVIS:  I would be happy to talk.  Although I

2    would ask maybe if the Court consider giving us 30 days in

3    light of holidays, and other things.

4          JUDGE MARCUS:  Sure.  Sure.  You are right.  We are

5    running into Thanksgiving.  I appreciate that.

6        But whether it's 10 days or 30 days, is there any reason

7    why we ought not to direct you to sit down and discuss at least

8    documentary discovery to the extent there may be some stuff out

9    there that they want that you have and that you can otherwise

10   see your way clear to produce, or if you don't, and if there's

11   a privilege with regard to something there, that's something

12   that we may be able to take up, as well, on the front end.

13         MR. DAVIS:  I think that makes a lot of sense, Judge.

14   And I would be happy to hear what plaintiffs' counsel thinks,

15   but I would envision that within 30 days the Court order us to

16   submit a joint report, say what we have discussed about the

17   categories, the paper discovery plaintiffs want to do,

18   defendants' position on whether it makes sense to go forward

19   with that, might even highlight preliminarily any privilege

20   issues that we see.

21         JUDGE MARCUS:  Yes.

22         MR. DAVIS:  But to just talk and make a report to the

23   Court about the product of that conversation.

24         MR. WALKER:  I agree, Your Honor.

25         JUDGE MARCUS:  All right.  Thank you much.

1          Let me just, before I turn to my colleagues, ask if the

2     plaintiffs have anything further they wanted to add, whether

3     Singleton, Miller, or Caster?

4          For Singleton?

5               MR. QUILLEN:  I think I would just point out that the

6     Singleton plaintiffs filed their case within hours of the

7     issuance of the current plan.  And what we need to avoid at all

8     costs is a situation in which we cannot get a ruling in time

9     for 2024 because we are just too close to the deadline.

10         I think the potential inconvenience of a handful of

11    witnesses having to do a limited follow-up deposition pales in

12    comparison to the possibility that we will have two

13    unconstitutional elections this redistricting cycle.

14              JUDGE MARCUS:  Suppose, just to follow up on your

15    comment, the Supreme Court were not to rule until the end of

16    the term late in June.  Is there enough time?

17              MR. QUILLEN:  We -- I will let -- I will let the

18    Milligan plaintiffs address their constitutional claims.

19         Honestly, we have always felt that just stipulated and

20    uncontroversial facts that came out in the preliminary

21    injunction discovery entitle us to a ruling in our favor on the

22    merits of our constitutional claim.

23         I do think that we would want to participate in any

24    additional discovery that happens on the constitutional claim.

25    But I think that if -- I think we could file a motion for

1   summary judgment or just go to trial on very limited additional
2   discovery and we would be okay with that.

3      I don't think it would be fair, though, for the State in
4   that situation to say that they had had an insufficient
5   opportunity to discuss discovery of us.

6      JUDGE MARCUS:  Thanks very much.

7     Mr. Ross?

8      MR. ROSS:  Yes, Your Honor.

9      I think a couple of things.  To the extent the Court -- I
10 just emphasize what the Singleton plaintiffs just said, which
11 is that, you know, we believe our clients are entitled to
12 relief and that the State cannot set the deadline to delay the
13 Court and the parties from getting the relief that we're
14 entitled to.

15      If the Court, it sounds like it's leaning towards --

16      JUDGE MARCUS:  But the problem is not the State
17 setting the deadline.  The issue is when the Supreme Court
18 rules.  And they may change the template of Title 2 -- Section
19 2 somewhat, alter *Gingles* somewhat.  They may not.  I don't
20 think there's any way for us to know.

21      And so I think it would be accurate to say that for
22 reasons beyond the power of any of the parties to the case you
23 don't really know what your template will be until the high
24 court rules.

25      MR. ROSS:  That's fair, Your Honor.

 1      I hear, based on your questions to the defendants, that

 2 the Court may be interested in a joint status report.  If that

 3 were something that the Court were open to --

 4           JUDGE MARCUS:  Yes.

 5           MR. ROSS:  -- I believe that a part of it needs to be

 6 some sort of initial disclosures again to identify at least

 7 preliminarily witnesses, fact witnesses that the defendants and

 8 plaintiffs think may be relevant to the case beyond those who

 9 have already testified.

10      And, Your Honor, I think we're open to having discussions

11 about potential paper discovery, but, again, I don't want the

12 case, to the extent possible, to be forever put on hold.

13           JUDGE MARCUS:  Oh, no, no, no.  That I understand, and

14 you are entitled to a prompt ruling.  And this Court has done

15 everything in its power to move this case along promptly.

16      I thank you.

17      Ms. Khanna, anything further?

18           MS. KHANNA:  Yes, Your Honor.

19      Just briefly a few points.  I just want to echo what

20 Mr. Quillen and Mr. Ross had said.

21      There are, just the nature of the calendar, we all

22 recognize there are certain efficiency costs that are going to

23 have to happen in order to resolve these multiple cases.  I

24 think some costs are untenable and some costs are tolerable.

25      And I think the cost of having someone sit for two

1   depositions is far outweighed by the untenable cost of having

2   another election go by without relief the plaintiffs would be

3   entitled.  So I guess I just don't -- it may end up being that

4   there's some inefficiencies in order to meet the ultimate

5   deadline.

6       And I think that -- again, we don't -- we have no

7   objection to discovery proceeding on the intent based claims in

8   the interim, particularly if there's going to be briefing on

9   legislative privilege, or other kinds of disputes like that,

10  that are going -- that might take time.  Our main interest is

11  making sure that none of that weighs down the speed at which we

12  can proceed once we have a ruling on the Section 2 claims,

13  again so that we can get relief in time.

14      And then the last thing I'd say is another point of

15  discovery I think that could actually be valuable as early as

16  right now is discovery into that deadline.  Discovery into the

17  State's purported drop date, where they say that it cannot --

18  we can't do anything more after that.

19      I think the plaintiffs are entitled to question that and

20  press on that and make sure we have a firm basis for that

21  certainly before the Court or any court -- this Court or any

22  court of appeals -- kind of takes that as a given.

23          JUDGE MARCUS:  Thanks very much.

24      Let me turn to my colleagues.  Judge Manasco, questions?

25  Comments?

1          JUDGE MANASCO:  All of this has been very helpful.  I
2     really have one just question.

3      We have talked a lot about the efficiencies and the
4     possible inefficiencies of having to depose some people twice,
5     and, you know, the possible privilege issues that will come up.
6     But one of the points that Mr. Davis made that I have a
7     question for everybody about is the issue of knowing what
8     questions to ask and how to advise witnesses to answer.

9      You know, the constitutional claims and the Section 2
10     claims are distinct, but they are not entirely separate.  There
11     are questions and answers, you know, that would be asked and
12     offered by witnesses that would bear on both claims.

13          And so, you know, I would like to hear what sort of
14     everybody's position is on whether if, you know, the
15     duplicative multiple depositions were tolerable, whether you
16     believe that you're able to determine what questions to ask and
17     how to counsel witnesses to answer before the Supreme Court
18     rules.

19      I think this may be more -- the issue here may be about
20     more than mere duplicative discovery is what I'm getting at.
21     And, you know, I would be interested to know what your
22     positions on that issue is.

23          MR. QUILLEN:  For the Singleton plaintiffs, we think
24     that the overlap is limited, as the Eleventh Circuit indicated
25     just a week ago in the Jacksonville case.  And there are

1  well-established standards for proving racial gerrymanders.

2       So I think in an initial deposition that comes before the

3  Supreme Court has said anything, the parameters will be fairly

4  clear.  And we don't expect the Supreme Court to say anything

5  that's going to significantly change how you prove a racial

6  gerrymander case since they don't have a racial gerrymandering

7  case.

8       But if they do, that's where a supplemental deposition

9  could come in.  And it may be a supplemental deposition that

10 would be taken anyway because the Milligan and the Caster

11 plaintiffs need to ask their Section 2 questions.  Or if we are

12 talking about experts, their experts, the State needs to ask

13 their experts questions that are relevant to Section 2.

14      But I don't think that there is going to be a lot of

15 deposition time that turns out to have been wasted.

16           MR. ROSS:  I agree, Your Honor -- Deuel Ross for the

17 Milligan plaintiffs -- that to the extent there will be

18 depositions before a Supreme Court decision is issued, that any

19 follow-up on the Section 2 claims or any of the other claims

20 would probably be limited because the claims, although related

21 in some ways, we're going to be asking about facts as they

22 happened rather than, you know, that goes to legal questions

23 about sort of -- that could be affected by what the Supreme

24 Court says.

25      And any sort of follow-up depositions we would imagine

 1    would be fairly limited.  We are not talking about taking two

 2    eight-hour depositions.  We are talking about taking one

 3    four-hour deposition, and perhaps a more limited follow-up, if

 4    that's even necessary.

 5            MS. KHANNA:  And this is Ms. Khanna for the Caster

 6    plaintiffs.

 7        I agree.  I think that these -- again, for the Section 2

 8    case that we have, we don't anticipate any discovery until we

 9    know for sure -- any discovery into the merits -- sorry --

10    until we know for sure what the Supreme Court is going to say.

11    I do still believe we could have discovery into the Purcell

12    issues.

13        But, you know, since these are fact witnesses, they will

14    just be testifying to the facts of what they considered and how

15    they -- whatever they evaluated or what they did at the time.

16    I don't think that would be -- I don't think that would largely

17    hinge on what the legal standard turns out to be.

18            MR. DAVIS:  Judge Manasco, I think you are exactly

19    right.  It's not just it's inconvenient to have to take two

20    depositions.  It's difficult to know how to advise your client

21    and how to represent your client's interest in a deposition

22    without knowing, you know, what objections to raise or to let

23    go, how to advise them to respond to a question.

24        Even I could foresee a legislator, when he or she is

25    deciding whether to assert the legislative privilege, they

```
 1   might assert it under one set of circumstances and not under
 2   another.  I don't know that to be the case, but I could see
 3   that making a difference for some legislators.
 4       So all of those unknowns, it's not simply the
 5   inconvenience of taking a deposition in two parts.  It's
 6   difficult before the Supreme Court rules to know how best to
 7   represent your client.
 8       I would disagree that we need discovery into what the
 9   deadline is.
10       Although I think that's getting beyond the scope of your
11   question, Judge Manasco.  I veered off into another comment.
12       I think Ms. Khanna said that she thought it might be
13   appropriate to take discovery into the State's representations
14   about when you needed a decision.  I think we know that we
15   would know from looking at the calendar when the candidate
16   qualifying deadline is.  We know that there will need to be
17   some time for the Legislature to act.
18       I think it's just common sense that the broader the scope
19   of relief, the more time it's likely to take the Legislature to
20   act.  So I would push back on there being any need for
21   discovery on that issue.
22       But I veered from your question, Judge Manasco.  I agree
23   that part of the problem is before the Supreme Court rules,
24   it's difficult to know how to advise your client on either the
25   equal protection or the Section 2 claim.
```

1          MR. WALKER:  I would just say that no lawyer on this

2   conference call would put up a client without knowing what the

3   law is.  And I don't want to be in that position, either.

4          JUDGE MANASCO:  All right.  Well, Mr. Davis, you did

5   veer from my question, but now I have another one based on what

6   you said.

7       So to talk about what Ms. Khanna said about discovery into

8   the Purcell issues, I guess I will just sort of leave you with

9   a comment so that you can think about it in further

10  collaborations and conversations among all counsel, which is,

11  you know, we had an affidavit on issues that related directly

12  to Purcell in the preliminary injunction proceedings, and that

13  affidavit offered a lot of factual information that I could not

14  divine just from a calendar, and don't have the expertise to,

15  you know, understand of my own accord.

16      And so to the extent that the State is going to offer

17  evidence that bears on the potential application of Purcell,

18  depending on how events unfold, and what next steps of these

19  proceedings are, it would seem to me that some discovery into

20  the basis for that potential evidence might be, you know, not

21  only appropriate, but quite helpful as we try to chart the way

22  forward for the case.

23      So I am not asking for a response to that.  But just, you

24  know, as you I think were, you know -- it's likely that y'all

25  will be meeting and conferring about various issues.  And I

1  just leave that with you as food for thought, that it may be
2  helpful for the Court to know more rather than less about what
3  the ins and outs of election administration are as they pertain
4  to the calendar.
5      MR. DAVIS:  I understand.
6      And that is food for thought.  It's something that we can
7  discuss internally.  I would say my initial thought is that
8  until we know what the Supreme Court says, and how broad the
9  potential scope of the district court's relief could be should
10 plaintiffs prevail after trial, it's hard to know even what
11 discovery will be relevant, and even in terms of which election
12 procedures would matter.
13     I don't -- I think it would be more helpful to know what
14 the Supreme Court says before we engaged in discovery on the
15 Purcell issues, if, in fact, that discovery turns out to be
16 relevant.
17     JUDGE MANASCO:  I take your point that sort of the
18 more, you know, if the Supreme Court tweaks a small thing,
19 that's different than a total overhaul.  I take your point
20 there.
21     But I am mindful that we got that affidavit in the
22 preliminary injunction proceeding before you knew what we would
23 say.  So there may be some use of information -- some universe
24 of useful information that could be shared that would
25 illuminate the potential Purcell issues before they are

 1  immediately upon us.

 2       And that is all I'm urging the group to consider is, you

 3  know, I understand that what the Supreme Court says impacts how

 4  everybody moves forward -- the parties and Court.  Small

 5  changes are different than big changes.

 6       And, you know, everyone is going to want to sit with that

 7  order when it comes out, and figure out exactly what it means

 8  for what our next steps are.  But it doesn't immediately

 9  follow, at least for me -- and I can't speak for Judge Marcus

10  or Judge Moorer -- but it doesn't immediately follow for me

11  that there is nothing about the Purcell issues that might be

12  helpful to know sooner rather than later.

13            JUDGE MARCUS:  Before we go on to Judge Moorer, and

14  just to make sure we have explored this as fully as we can

15  wisely now, let me just ask you, Ms. Khanna:  Did you have any

16  further thoughts on what Purcell discovery you actually had in

17  mind?  What is it that you would propose to do, and who is it

18  that you would be proposed to doing it from?

19            MS. KHANNA:  I think it could be a series of

20  interrogatories to get a firm answer on what is the drop-dead

21  date, what is the input, and the bases for that date.  How

22  quickly -- including the information about election

23  administration.

24       I think to the extent of -- to the extent the scope of the

25  discovery -- sorry -- the scope of the potential remedy is

1  going to affect that date, I think we should understand that.

2  I don't think it's sufficient for us to say, well, you know,

3  for the State to just tell you, well, we just don't know until

4  we know, and then all of a sudden it's too late, right?  We

5  need to basically have some parameters, you know.

6      We have a merits opinion from this Court and a remedial --

7  or order from this Court about what needs to be done.  I think

8  that's fair to assume, as like at least as one baseline of what

9  a potential remedial scope could be.

10      And I assume that probably something -- the State would

11  then want to presume something narrower than that.  I don't

12  know if they would -- I don't know how the Supreme Court would

13  go something broader than what this Court has done, when it

14  comes to what's required as a result of the merits on the

15  remedy.

16      So I think there are certain assumptions we can propose to

17  the State to then get a firm answer about what -- what all

18  needs to get done by the filing deadline.

19      I think we could also ask about the filing.  The filing

20  deadlines are not sacrosanct.

21      I think the Section 2 Voting Rights Act and constitutional

22  rights are sacrosanct, and election dates are largely

23  sacrosanct.

24      But filing deadlines, particularly ones that take place so

25  far in advance of an election, courts have moved those -- this

1 cycle and every cycle every election for whatever reasons that

2 are happening in litigation.  So I guess I would also want to

3 ask questions, and maybe that looks back into further, into

4 previous election cycles, as well, to make sure we all

5 understand what isn't, in fact, a movable date, and what is an

6 immovable date.

7          MR. QUILLEN:  I'd like to follow up on that.

8          JUDGE MARCUS:  Sure.

9          MR. QUILLEN:  Alabama has an exceptionally long period

10 between the opening of candidate filing and the primary

11 compared to other states.  And although I really do not want to

12 be in a position where we, at some point next year, ask the

13 Court to put off candidate filing, I think knowing ahead of

14 time what would be feasible in that regard and what wouldn't,

15 would be important to know.

16          JUDGE MARCUS:  Judge Manasco, anything further on this

17 point?  Or any other questions you wanted to put?

18          JUDGE MANASCO:  None from me.  Thank you.

19          JUDGE MARCUS:  Thank you.

20     Judge Moorer, questions?

21          JUDGE MOORER:  Okay.  Primarily, this is my question

22 for the State.  And I'm really interested in the Purcell issue.

23 Because I think there is some merit to Ms. Khanna's point that

24 we can't keep stacking and stacking periods.

25     So that said, as I see it, we're either going to move

 1   forward with the current map or a new map.  A new map will

 2   either be a product of whatever the Court may decide, or the

 3   Legislature has decided.  But at the conclusion of this matter,

 4   there will be an election, whether it's a court map or the

 5   Legislature having drawn a new map.

 6        As I see it, the Secretary of State has a very ministerial

 7   function, because at some point a decision will be made as to

 8   what the districts look like and who the candidates are.  That

 9   should be a finite discernible date.  And as I take it from

10   what we have right now, October is that date.  Am I correct in

11   that?

12             MR. DAVIS:  Based on our judgment, Your Honor, but we

13   cannot know what we do not know.  And --

14             JUDGE MOORER:  Listen, what we do know is that there

15   will be a district established.  It will either be done by this

16   Court or by the Legislature.

17        And once that's done, the Secretary of State knows how

18   long it takes for them to print ballots and do all of the

19   things that they have to do ministerially, just to carry out an

20   election.

21        And as I understand it, October is when that has to

22   happen.

23             MR. DAVIS:  Yes.  That is what we believe.

24        If the new plan is in place by early October, the

25   Secretary of State, when we spoke with them and consulted with

```
 1  them last March, believes that will give sufficient time.

 2          JUDGE MOORER:  So then I take it, the State would not

 3  then be pursuing any kind of Purcell claim if there is a plan

 4  in place by then.

 5          MR. DAVIS:  I cannot, as we sit here today, waive

 6  that, Your Honor, without knowing what I can't possibly know,

 7  the scope of relief and other things, or what the circumstances

 8  will be a year from now.  There may be something unforeseen.

 9      But as we sit here today, after consulting with our

10  client, the Secretary believes that if a new plan is in place

11  by early October, that will give sufficient time.

12          JUDGE MOORER:  Okay.  Now, as far as the discovery,

13  why should we not, perhaps to give both sides some relief --

14  because I can understand the concerns that both sides

15  legitimately have about not knowing what the Supreme Court is

16  going to decide -- why should we not simply say within a

17  certain period after the Supreme Court issues its opinion that

18  the discovery then proceed with that as the start point, and so

19  that we have October as the endgame, and just plan from that.

20      In other words, we can say within X number of days after

21  the opinion drops, the parties have a joint status conference

22  for whatever discovery has not been done up until that point,

23  figure out what the discovery period would be, when we would

24  have hearings and that type of thing, to try to give the

25  Legislature an understanding of what the target may be, and to
```

1  give us an understanding of what the target may be.

2          MR. DAVIS:  That type of understanding and schedule

3  may have a lot of merit, Your Honor.  I would like the

4  opportunity to discuss that with some of the colleagues on the

5  defense side before I state a position.

6      My suggestion might be, subject to any disagreement from

7  Mr. Walker, is that if the Court were to order the parties to

8  discuss certain issues and file a joint status report in, say,

9  30 days, perhaps that could be something that we address that

10  the parties can include their position on the Court entering a

11  schedule that is triggered from the date of the United States

12  Supreme Court's opinion in this case, that unless the Court

13  rules otherwise in the interim, that, say, 14, 28, however many

14  days after the Supreme Court's decision, that the parties

15  submit a -- some kind of report or some the kind of discovery

16  plan that would be based on the information that we don't

17  currently have, which is what the Supreme Court rules.

18      But before I state a position on that, I would like

19  Mr. Walker to have the opportunity to talk.  But I think it

20  would make sense to give each side the opportunity to discuss

21  that among themselves and to perhaps include that in some

22  report that we submit in 30 days.

23          MR. WALKER:  I agree with Mr. Davis, Your Honor.

24          JUDGE MOORER:  Thank you.  That was all that I needed.

25          JUDGE MARCUS:  Thank you very much, Judge Moorer.

 1          Any final comments from any of the attorneys who have been
 2   before us today?
 3          MR. ROSS:  Your Honor, if I may, a few comments.
 4          Recently, the Supreme Court in a case called Rose vs.
 5   Raffensperger -- if I'm not mispronouncing that -- held the
 6   State to a drop-dead deadline.  So the State had said that
 7   they, you know, if the Court had imposed an order by X date, it
 8   was a Section 2 case, they could have a plan in place for the
 9   November 2022 elections.  And when the State tried to go back
10   and go to the Supreme Court and argue that even though the
11   Court had to comply with that deadline, that the State argued
12   that, you know, that Purcell precluded a remedy for 2022.  The
13   Supreme Court actually held the State to the specific deadline
14   that they had proposed.
15          And so I would just emphasize how important it is that we
16   do either get some specific drop-dead date from the State, or
17   at least get discovery on the validity of any, you know, their
18   sort of nebulous early October date that they're giving.
19          I would also highlight for the Court that the State is
20   saying that they need a plan in place by early October, which
21   means, you know, we would need a trial probably in July in
22   order for the Court to write an opinion sometime in September
23   to give the State an opportunity first to draw a proposed map,
24   and then perhaps for the Court to draw a map.
25          And so working back from that, I just wanted to be clear

1  from what, at least my understanding what the State is saying,

2  is that they're not saying that the Court should issue an

3  opinion by October, they're saying that the final remedial plan

4  needs to be in place by early October.

5          JUDGE MARCUS:  Anything else from any of the other

6  counsel?  Ms. Khanna?  Mr. Davis?  Mr. Walker?

7          MS. KHANNA:  Nothing further for Caster.  Thank you,

8  Your Honor.

9          MR. DAVIS:  Nothing for the State or intervenors.

10         JUDGE MOORER:  Judge Marcus?

11         JUDGE MARCUS:  Yes.

12         JUDGE MOORER:  Judge Marcus, I think what Mr. Ross

13  said just now needs to be answered by the State.

14         JUDGE MARCUS:  Did you want to comment, Mr. Davis, on

15  what we just heard from Mr. Ross?

16         MR. DAVIS:  I would say, Judge, it depends.  If the

17  Court were to order a new plan that only required moving a few

18  precincts in and out of a district to raise or lower the

19  minority voters in that district, that could be done really

20  quickly.

21      The opinion could come much later, and the State could

22  still have the fair opportunity to do it.  If the Court orders

23  a complete overhaul of the map in some unforeseen way, it would

24  need to come earlier.

25      But I do think if the new plan was in place by early

1   October, based on what we know now, that would be -- that would
2   give us sufficient time.
3           JUDGE MOORER:  So are you saying the full appellate
4   process?  Or you're saying our decision needs to be in place by
5   October 1?
6           MR. DAVIS:  I would say if a new plan is in place by
7   early October, that gives the State time to assign voters to
8   districts before the candidate qualifying deadline in time to
9   get the ballots printed in time.
10      What time this Court's decision has to come in advance of
11  that depends on the scope of the relief, which we cannot
12  possibly know at this stage.
13          JUDGE MARCUS:  All right.  With that, Judge Manasco,
14  anything further you wanted to inquire about?
15          JUDGE MANASCO:  Not from me.  Thank you.
16          JUDGE MARCUS:  All right.  I thank you all.
17      We will be putting out an order shortly laying out our
18  view as to how we will proceed.  We will almost surely direct
19  you to meet and come back with a joint report.  And we will
20  almost surely set another date for another status conference
21  sometime within the next 90 to 120 days to see where we are.
22      But with that, we thank you much for your participation.
23  And, of course, if you do have any other issues you want to
24  bring to the Court, you surely know how to do that.
25          With that, we are adjourned.

48

1         (Whereupon, the above proceedings were concluded at

2    11:02 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2

 3

 4        I certify that the foregoing is a correct

 5   transcript from the record of proceedings in the

 6   above-entitled matter.

 7

 8

 9

10

11                                        12-01-2022

12   Christina K. Decker, RMR, CRR           Date

13   Federal Official Court Reporter

14   ACCR#:   255

15

16

17

18

19

20

21

22

23

24

25
```