# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BOBBY SINGLETON, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WES ALLEN, in his official capacity as Alabama Secretary of State,<br><br>    Defendant. | Case No. 2:21-cv-01291-AMM |
| EVAN MILLIGAN, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WES ALLEN, in his official capacity as Alabama Secretary of State,<br><br>    Defendant. | Case No. 2:21-cv-01530-AMM |
| MARCUS CASTER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WES ALLEN, in his official capacity as Alabama Secretary of State,<br><br>    Defendant. | Case No.:  2:21-cv-1536-AMM |

1

## RESPONSE TO ORDER

This Court ordered Secretary Allen "to inform the court . . . of the latest date by which a Congressional map must be in place for it to be used in the 2024 election." Secretary of State Wes Allen states as follows:

The date by which a Congressional map must be in place depends on the nature of the relief, if any, Plaintiffs obtain. Large-scale changes to the existing Congressional map will take longer to implement than more modest changes, or no changes at all. Without knowing the scope of relief that the Court would order, and without knowing the metes and bounds of the Supreme Court's forthcoming decision on the Section 2 issues also at issue in these consolidated cases, it is not possible to provide a precise date at this time and say with confidence that if any remedial plan of any form is adopted by that date, Alabama will be able to use the remedial plan in the 2024 elections without disruption and confusion.

A new map must be in place in sufficient time to allow local officials to reassign voters to any newly drawn congressional districts before the primary elections, otherwise there will be serious disruption to the 2024 elections. It should also be in place in time for candidates and voters to have fair notice of where the districts will be so that candidates have a reasonable opportunity to qualify and those seeking ballot access can obtain the necessary signatures. Secretary Allen cannot represent to the Court when that will be without knowing how different a remedial

plan is from the existing plan, or whether there are other unforeseen circumstances that may impact the election. Predicting that date now is as difficult a task as a contractor trying to estimate how long it will take to construct a home when he does not know if it will be two bedrooms or ten, nor whether there will be unforeseen weather or supply-chain issues.

It may be helpful to discuss the reassignment process and certain guideposts that will affect the time needed for reassignment. If the Court orders changes to the existing Congressional map, boards of registrars[1] in each impacted county must reassign those voters to new congressional districts to ensure that voters receive the correct ballots and vote only in those elections for which they are qualified. If the process is rushed, it is more likely that voters will not be correctly assigned and some may be provided ballots for the wrong district, as happened in at least two separate State legislative races in 2022 following the condensed redistricting schedule caused by census delays.[2]

---

[1] The Secretary of State does not reassign voters and does not direct the activities of registrars. Secretary Allen notes that since April 2022, there have been 28 new registrars appointed with one current vacancy yet to be filled. Additional vacancies are also expected as the terms of current registrars expire.

[2] *See* Mike Cason, *Etowah County voters assigned to wrong Alabama House districts in GOP primary*, AL.COM (May 26, 2022), https://www.al.com/election/2022/05/etowah-county-voters-assigned-to-wrong-alabama-house-districts-in-gop-primary.html; Paul Gattis, *Wrong ballots given to voters in north Alabama legislature GOP primary*, AL.COM (June 29, 2022), https://www.al.com/news/2022/06/wrong-ballots-given-to-voters-in-north-alabama-legislature-gop-primary.html.

How long that reassignment process would take depends in part on which counties are impacted by a remedial plan, because counties vary in their resources and capabilities. Some counties[3] have access to GIS software (either in-house or through contracts with third-party vendors) that speeds up the voter reassignment process (although, as discussed below, those counties may still have quality checks they need to perform to ensure that the software assigned voters correctly). However, as of December 2021, forty-five counties lacked access to such a system and must reassign voters manually, which would require significantly more time. A new plan that imposes very minor changes (e.g., changing a few precincts), or that makes changes only in counties with access to GIS software can likely be accurately implemented more quickly than a plan that makes more significant changes and impacts counties that reassign manually.

In addition, if all voters in a county are moved to a new district, the reassignment within that county can be done with a mass reassignment. If only a portion of the voters in a county must be reassigned because of an amended or new county split, registrars will have to reassign voters one-by-one. Thus, a plan with

---

[3] Clay Helms, who at the time served as Director of Elections for the Secretary of State's Office, provided a declaration at the preliminary injunction stage in this matter. The declaration was filed into the record as doc. 76-7 in the *Caster* case. Paragraphs 7-9 of the declaration list the 22 counties which at that time had access to automated systems.

new or amended county splits will likely require more time than a plan that does not add or amend county splits.

The population of the counties impacted by a new plan matters as well. Registrars have explained to Secretary Allen's staff that after the reassignment of voters, even if GIS software is used, they review voter records to check for any assignment errors—that voters whose district changed are in fact reassigned, and that the software did not reassign any voters whose district did not change. Most of the registrars contacted suggest that the reassignment and quality check can be done in 2 to 3 months. Jefferson County, Alabama's most populous county, reported that it would need up to 5 ½ months to complete all quality checks.

As Mr. Helms testified in his earlier declaration, it took officials in some counties 3 to 4 months to complete the process after the Alabama Legislature passed amended House and Senate maps in 2016 that made changes to only some districts. And even with approximately four months between the adoption of the 2021 plan and the start of absentee voting in the 2022 election cycle, mistaken reassignments still occurred. *See supra* n.2. Moreover, given registrar turnover since just last year, *see supra* n.1, many registrars responsible for implementing changes may also be learning the reassignment process for the first time (and thus may take longer). Providing less time could worsen these impacts, increasing the likelihood of mistaken reassignments.

Accordingly, the Secretary is able to provide these guideposts but cannot at this time provide a definitive date. Based on current information and assuming that some changes would be required, to implement those changes before the 2024 elections, the State would need at least 3 months for local election officials to reassign voters to their new districts. That reassignment process must be completed before ballot printing begins (on December 22, 2023[4]), so that absentee voting may begin on time (which starts January 10, 2024) and so that local officials will know how many ballots and styles of ballots will be needed at various polling places. Of course, reassigning will likely already make it more difficult for potential candidates running as independents or with parties that do not have ballot access to petition for the signatures they need to get on the ballot (since only the signatures of voters in the new district will count).

Another guidepost is that any new plan must be in place in advance of the qualifying deadline for candidates (November 10, 2023), so that potential candidates, political parties, and voters will have fair notice of the districts in which they are eligible to run and vote. How much notice should be allowed is again a function of the extent of the changes made in a remedial map. A remedial plan that respects the traditional districting criteria of preserving the cores of districts and

---

[4] The Secretary of State's Administrative Calendar for the 2024 election cycle is attached hereto as Exhibit 1 and can be found at https://www.sos.alabama.gov/sites/default/files/election-2024/Admin%20Calendar%202024.pdf.

avoiding incumbent conflicts would not require as much notice as a plan that significantly changes the districts and pits incumbents against one another, or has one or more districts without an incumbent. There must be sufficient time for potential candidates to see the new district, assess its effect on his or her decision to run for office, and to collect signatures and qualify as a candidate for such office.

Based on these guideposts, Secretary Allen considers it likely that a new plan by around October 1, 2023, would provide enough time to reassign voters, print and distribute ballots, and otherwise conduct the forthcoming 2024 primary elections based on the new map. However, Secretary Allen cannot predict whether implementing a plan at that point would lead to disruption for State officials, local officials, candidates, and voters. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006); *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring).

By providing these guideposts, Secretary Allen is not waiving any future *Purcell* argument, particularly if there are substantial or difficult changes required of the existing Congressional plan or other unforeseen circumstances.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr.
  (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*

/s/ James W. Davis
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Misty S. Fairbanks Messick
  (ASB-1813-T71F)
A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Secretary Allen***

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2023, I served the foregoing on all counsel of record via electronic mail.

/s/ James W. Davis
*Counsel for Secretary Allen*
