

FILED

2023 Aug-04  PM 05:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BOBBY SINGLETON, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 2:21-cv-01291-AMM |
| | ) | |
| WES ALLEN, in his official | ) | **THREE-JUDGE COURT** |
| capacity as Alabama Secretary of State, | ) | |
| et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' RESPONSE TO SINGLETON PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION (DOC. 147)**

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

ARGUMENT .......................................................................................................5

    I.  The Singleton Plaintiffs' Fourteenth Amendment Claim Is Not Likely
       To Succeed on the Merits .................................................................5

       A.  Plaintiffs bringing Equal Protection challenges to districting
           legislation must bear a "demanding" burden of proof .............................5

       B.  Plaintiffs have failed to show racial predominance in the 2023
           Plan ...................................................................................7

       C.  Plaintiffs Cannot Allege Predominance in the 2023 Plan Based on
           the Consideration of Race in Previous Redistricting Cycles ..................10

CONCLUSION ..................................................................................................15

CERTIFICATE OF SERVICE ..........................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018) .................................................................... 1, 10, 12

*Abrams v. Johnson*,
    521 U.S. 74 (1997) ................................................................................. 8

*Ala. Legis. Black Caucus v. Alabama*,
    575 U.S. 254 (2015) ............................................................................... 7

*Allen v. Milligan*,
    143 S. Ct. 1487 (2023) ........................................................................ 2, 9

*American Legion v. American Humanist Ass'n*,
    139 S. Ct. 2067 (2019) ......................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 6

*Bartlett v. Strickland*,
    556 U.S. 1 (2009) ............................................................................... 9, 10

*Beer v. United States*,
    425 U.S. 130 (1976) ............................................................................. 13

*Bethune-Hill v. Va. St. Bd. of Elections*,
    580 U.S. 178 (2017) ............................................................................... 6

*Brnovich v. Democratic Nat'l Comm.*,
    141 S. Ct. 2321 (2021) ........................................................................... 5

*Chestnut v. Merrill*,
    No. 2:18-CV-00907-KOB (N.D. Ala. Oct. 28, 2019) ......................... 13

*Cooper v. Harris*,
    581 U.S. 285 (2017) ............................................................ 7, 8, 9, 10, 13

*Easley v. Cromartie*, (*Cromartie II*)
    532 U.S. 234 (2001)...................................................................... 2, 7, 8, 9

*Greater Birmingham Ministries v. Sec'y of State for Ala.*,
    992 F.3d 1299 (11th Cir. 2021) ...................................................5, 6

*Hunter v. Underwood*,
    471 U.S. 222 (1985)...........................................................................5

*Johnson v. Governor of State of Fla.*,
    405 F.3d 1214 (11th Cir. 2005) (en banc) .......................................12

*Karcher v. Daggett*,
    462 U.S. 725 (1983)...........................................................................9

*McCleskey v. Kemp*,
    481 U.S. 279 (1987)...........................................................................6

*Miller v. Johnson*,
    515 U.S. 900 (1995)............................................................ 1, 6, 7, 11

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) ........................................................... 1, 5, 11

*School Dist. of Abington Twp., Pa. v. Schempp*,
    374 U.S. 203 (1963)........................................................................12

*Stenger v. Kellett*,
    No. 4:11-cv-2230, 2012 WL 601017 (E.D. Mo. Feb. 23, 2012).........8

*Vieth v. Jubelirer*,
    541 U.S. 267 (2004)...........................................................................8

**Statutes**

Ala. Code § 17-14-70.1 .........................................................................2, 3

**Acts**

Ala. Act No. 2023-563 ........................................................................... *passim*

**Other Authorities**

Nathaniel Persily, *In Defense of Foxes Guarding Henhouses: The Case for Judicial Acquiescence to Incumbent-Protecting Gerrymanders*, 116 Harv. L. Rev. 649 (2002) ................................................................ 8

## INTRODUCTION

The *Singleton* Plaintiffs' racial gerrymandering claim is likely to fail because it is based on a fundamental misunderstanding of Equal Protection Clause precedent. Any Equal Protection Clause claim requires a showing of racial intent, not merely racial effect. The plaintiff must prove the Legislature acted "'because of,' not merely 'in spite of,'" some racial effect. *Miller v. Johnson*, 515 U.S. 900, 916 (1995) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). That is no mean feat considering that "the good faith of a state legislature must be presumed," *id.* at 915, especially in the redistricting context. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018). And the intent relevant in this case "is the intent of the 20[23] Legislature," which had no obligation to "'cure' [any] earlier Legislature's" past purposes. *Id.* at 2325.

Yet the *Singleton* Plaintiffs' claim hinges on the idea that District 7 in the 2023 Plan is a racial gerrymander because it looks too much like past plans that were purportedly racial gerrymanders. In their view, it matters not why the 2023 Legislature drew District 7 the way it did. The purportedly too-familiar shape alone establishes a constitutional violation. This argument was rejected decades ago.

"[T]he Constitution does not place an *affirmative* obligation upon the legislature to avoid creating districts that turn out to be heavily, even majority, minority. It simply imposes an obligation not to create such districts for

1

predominantly racial, as opposed to political or traditional, districting motivations."
*Easley v. Cromartie*, 532 U.S. 234, 249 (2001) (*Cromartie II*). Thus, the Equal
Protection Clause does not impose on the Legislature the paradoxical obligation to
use just the right amount of race to *avoid* a racial gerrymandering claim. Particularly
here where there are obvious neutral explanations for the shape of District 7, like
retaining much of its core and not pairing incumbents, the *Singleton* Plaintiffs are
unlikely to prevail on the merits of their claim. Their motion should be denied.

## BACKGROUND

In 2021, Alabama enacted a congressional map that largely retained existing
district lines. *See Allen v. Milligan*, 143 S. Ct. 1487, 1501 (2023). This Court
determined that the 2021 Plan likely violated § 2 of the Voting Rights Act, and the
Supreme Court affirmed. *Id.* at 1498.

On July 21, 2023, the Legislature passed and the Governor signed into law
new redistricting legislation with Ala. Act No. 2023-563. *See Milligan* doc. 200-4;
*Singleton* doc. 139-1. The 2023 Act repeals the 2021 Plan and replaces it with the
2023 Plan. The Act's legislative findings outline the traditional principles given
effect in the 2023 Plan, which prioritizes equal population, contiguity, reasonably
compact geography, minimizing splits of county lines, maintaining communities of
interest, and avoiding the pairing of incumbents. Ala. Code § 17-14-70.1(3)(a)-(f).
The redistricting statute then states that the following secondary principles shall be

given effect to the extent it can be done consistent with the primary principles above: "1. Preserve the cores of existing districts. 2. Minimize the number of counties in each district. 3. Minimize splits of neighborhoods and other political subdivisions in addition to minimizing the splits of counties and communities of interest." *Id.* § 17-14-70.1(3)(g).

The 2023 Plan flows from these traditional principles of compactness, county lines, and communities of interest. Because uniting the Black Belt took precedence over core retention, Districts 1, 2, and 7 saw substantial changes. And in rebalancing population elsewhere in the Plan, the remaining districts were generally made more compact. The Legislature, however, did not completely reshuffle the deck, so the cores of each district were not entirely abandoned, and incumbents were not paired against each other. The changes from 2021 to 2023 are shown below. The map shows the 2021 districts (in different colors and outlined in yellow) with the new 2023 district lines superimposed in red.

3



**2021 Congressional Plan**

## ARGUMENT

### I. The Singleton Plaintiffs' Fourteenth Amendment Claim Is Not Likely To Succeed on the Merits.

#### A. Plaintiffs bringing Equal Protection challenges to districting legislation must bear a "demanding" burden of proof.

Any "successful equal protection claim under the Fourteenth Amendment requires proof of *both* an intent to discriminate and actual discriminatory effect." *Greater Birmingham Ministries v. Sec'y of State for Ala.,* 992 F.3d 1299, 1321 (11th Cir. 2021). Thus, plaintiffs must show that "the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Feeney*, 442 U.S. at 279. This is an exceedingly difficult showing to make for several reasons.

*First*, even when dealing with a small number of decisionmakers, "[p]roving the motivation behind official action is often a problematic undertaking." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985).

*Second*, in trying to prove the intent of a body the size of the Alabama Legislature, "the difficulties in determining the actual motivations of the various legislators that produced a given decision increase." *Id.* It is not enough to prove the motives of only a handful of the bill's backers, for "the legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021). Instead, a plaintiff must show "that the

5

legislature as a whole was imbued with racial motives." *Id.* Making that showing is not merely difficult, it "is a problematic and near-impossible challenge." *GBM*, 992 F.3d at 1324. Accordingly, when there are "legitimate reasons" for a legislature to enact a particular law, courts should "not infer a discriminatory purpose on the part of the State." *McCleskey v. Kemp*, 481 U.S. 279, 298-99 (1987) (rejecting Equal Protection challenge to Georgia "capital punishment statute" despite its alleged "racially disproportionate impact"); *see also GBM*, 992 F.3d at 1326 (affirming grant of summary judgment to defendants where "legislative body passed a nondiscriminatory voter ID law, supported by valid neutral justifications"); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (dismissing claim at pleadings stage based on "obvious alternative explanation" for defendants' conduct).

*Third*, attacks on redistricting legislation face additional hurdles. "Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). Redistricting "is a most difficult subject for legislatures, requiring a delicate balancing of competing considerations." *Bethune-Hill v. Va. St. Bd. of Elections*, 580 U.S. 178, 187 (2017) (internal quotation marks omitted). Moreover, "redistricting differs from other kinds of state decisionmaking in that the legislature always is *aware* of race when it draws district lines…." *Id.* So while in most other contexts, "any mention of race by the decisionmakers may be cause for suspicion[,] … that is not so in the redistricting

6

context." *Cooper v. Harris*, 581 U.S. 285, 347 (2017) (Alito, J., concurring in the judgment in part and dissenting in part).

Plaintiffs thus face a "demanding … burden of proof." *Easley v. Cromartie*, 532 U.S. 234, 257 (2001) (*Cromartie II*) (internal quotation marks omitted). They "must show that 'race was the *predominant* factor motivating the legislature's decision to place a significant number of voters within or without a particular district.'" *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 272 (2015) (emphasis added) (quoting *Miller*, 515 U.S. at 916). That requires proving "that the legislature subordinated traditional race-neutral districting principles ... to racial considerations." *Id*. (emphasis deleted). If plaintiffs cannot show "that racial considerations [we]re 'dominant and controlling,'" they have failed to carry their heavy burden. *Cromartie II*, 532 U.S. at 257 (quoting *Miller*, 515 U.S. at 913). Throughout this inquiry, "the good faith of a state legislature must be presumed." *Miller*, 515 U.S. at 915.

**B.      Plaintiffs have failed to show racial predominance in the 2023 Plan.**

**1.** Plaintiffs are not entitled to a preliminary injunction because they have not shown that race was likely "the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Cooper*, 581 U.S. at 291. Even a cursory glance at the 2023 Map compared to its 2021 predecessor shows how traditional principles drove the 2023 Plan's lines.

Changes in the 2023 Plan promote communities of interest and improve compactness while avoiding pairing incumbents and, as a secondary consideration, preserving cores of districts.

The *Singleton* Plaintiffs complain about core retention, *see, e.g.*, *Singleton* Doc. 147 at 5, but it is a common, valid, and race-neutral principle for a new redistricting map. *See, e.g.*, *Abrams v. Johnson*, 521 U.S. 74, 99-100 (1997) (affirming state interest in "maintaining core districts"); *see also Cooper*, 581 U.S. at 338 (Alito, J., concurring in part) ("[I]t is a common practice to start with the plan used in the prior map and to change the boundaries of the prior districts only as needed to comply with the one-person, one-vote mandate and to achieve other desired ends.").[1] And "the Constitution does not place an *affirmative* obligation upon the legislature to avoid creating districts that turn out to be heavily, even majority, minority. It simply imposes an obligation not to create such districts for predominantly racial, as opposed to political or traditional, districting motivations." *Cromartie II*, 532 U.S. at 249. Thus, the Legislature was not required to cast aside

---

[1] *See also* Nathaniel Persily, *In Defense of Foxes Guarding Henhouses: The Case for Judicial Acquiescence to Incumbent-Protecting Gerrymanders*, 116 Harv. L. Rev. 649, 671 (2002); *Vieth v. Jubelirer*, 541 U.S. 267, 357-358 (2004) (Breyer, J., dissenting) (collecting sources); *Stenger v. Kellett*, No. 4:11-cv-2230, 2012 WL 601017, at *3 (E.D. Mo. Feb. 23, 2012) ("A frequently used model in reapportioning districts is to begin with the current boundaries and change them as little as possible while making equal the population of the districts.").

traditional redistricting criteria simply because District 7's core contained more black voters than the *Singelton* Plaintiffs deem optimal.[2]

**2.** The *Singleton* Plaintiffs contend that the Legislature was required to do more than employ traditional redistricting criteria. They rely heavily on *Cooper v. Harris*, but that case does not support their claim of racial gerrymandering. In *Cooper*, there was no serious question that race was the predominant factor in drawing District 1 because North Carolina sought to achieve an *express racial target*. *See Cooper*, 581 U.S. at 299-300. The key question was whether that specific use of race could be justified by the VRA on the facts of the case, and the Supreme Court answered in the negative. *Id.* at 301-06. One searches *Cooper* in vain for even a hint of support for Plaintiffs' theory that the Fourteenth Amendment requires Alabama to use race to redraw its congressional map to achieve Plaintiffs' desired racial makeup of various districts.

At bottom, the *Singleton* Plaintiffs appear to believe that *Cooper* requires the opposite of what *Cooper* actually says. In *Bartlett v. Strickland*, the Supreme Court clarified that States have no obligation to create crossover districts to "maximiz[e] minority voting strength." 556 U.S. 1, 23 (2009) (citation omitted). And in *Cooper*,

---

[2] Though the *Allen* Court held that "core retention" is not a defense to a § 2 claim, which does not require a showing of discriminatory intent, 143 S. Ct. at 1505, the Court did not upend its past recognition "that preserving the cores of prior districts" is a "legitimate objective[]" that can be given effect in a plan, *Karcher v. Daggett*, 462 U.S. 725, 740 (1983). Thus, even if that "traditional … districting motivation[]" leads to "districts that turn out to be heavily, even majority, minority," that is no constitutional problem. *Cromartie II*, 532 U.S. at 249.

the Supreme Court found that a "target" for BVAP could not withstand strict scrutiny. 581 U.S. at 301-06. Here, Plaintiffs effectively ask this Court to do what the Supreme Court rejected in *Strickland* and restricted in *Cooper.* They invite the Court to set a *ceiling* on BVAP in District 7 and draw a second race-based district to boot. *See Singleton* Doc.147 at 19 (asking the Court to adopt one of Plaintiffs' two-crossover-district plans). It is passing strange for Plaintiffs to invoke a Supreme Court decision that broadly *prohibits* the use of race in redistricting as a basis for *mandating* the use of race to achieve their desired racial outcomes.

### C. Plaintiffs Cannot Allege Predominance in the 2023 Plan Based on the Consideration of Race in Previous Redistricting Cycles.

Unable to show that race predominated in this redistricting cycle, the *Singleton* Plaintiffs turn to the alleged intent embodied in past redistricting cycles and attempt to impute that decades-old intent to the current Legislature. For several interrelated reasons, those arguments are overwhelmingly likely to fail on the merits.

**1.** Plaintiffs cannot salvage their Fourteenth Amendment claim by imputing the alleged purpose of *past* redistricting plans to the 2023 Plan, for "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Abbott*, 138 S. Ct. at 2324. Thus "[t]he 'ultimate question remains whether a discriminatory intent has been proved in a given case,'" meaning that "what matters" in this case is the intent of the Legislature that enacted the 2023 Plan. *Id.* at 2324-25.

10

Plaintiffs thus must show that the 2023 Legislature acted "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). That is especially so here, where courts "must be sensitive to the complex interplay of forces that enter a legislature's redistricting calculus." *Miller*, 515 U.S. at 915-16. "Redistricting legislatures will, for example, almost always be aware of racial demographics; but it does not follow that race predominates in the redistricting process." *Id.* at 916.

Thus, arguments that the 2023 Legislature made minimal changes do not move the ball. At most, Plaintiffs allege that Alabama somehow acted improperly by failing to affirmatively create districts with Plaintiffs' preferred racial compositions. *See Singleton* Doc. 147 at 18 (touting two plans with different racial demographics). But that theory runs headlong into *Feeney*. Even if the Legislature *could* have drawn a whole new map instead of retaining the core of District 7, Plaintiffs do not come close to surmounting the Legislature's presumption of good faith and showing that the Legislature retained district cores "because of" and not merely "in spite of" racial concerns. *Feeney*, 442 U.S. at 279.

**2.** Plaintiffs also unsuccessfully assert that racial considerations predominated in the 2023 redistricting plan because the plan allegedly "[c]arried [f]orward" racial considerations that affected districting plans adopted decades earlier. *See Singleton* Doc. 147 at 12. As noted above, this is not how constitutional analysis of legislative

11

purpose works—particularly in the redistricting context. *Abbott*, 138 S. Ct. at 2324-25. Even if the "original purpose" motivating a law is problematic, "the passage of time may obscure that sentiment." *American Legion v. American Humanist Ass'n*, 139 S. Ct. 2067, 2083 (2019); *see also School Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 264 (1963) (Brennan, J., concurring) ("[The] government may originally have decreed a Sunday day of rest for the impermissible purpose of supporting religion but abandoned that purpose and retained the laws for the permissible purpose of furthering overwhelmingly secular ends"). It necessarily follows here that the "original purpose" motivating a past law cannot be imputed to the passage of an entirely new bill for this redistricting cycle.

More fundamentally, actions by a 1992 federal court, 2001 Legislature, 2011 Legislature, or 2021 Legislature do not taint the actions of the 2023 Legislature. The Supreme Court's explicit admonition in *Abbott* reiterated what the Eleventh Circuit—and many others—already knew: "it is not reasonable to assign any impermissible motives held by" one legislature to another. *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1226 (11th Cir. 2005) (en banc). "The result would be to reverse the presumption that a State's laws are constitutional, and plunge federal courts into far-reaching expeditions regarding the sins of the past in order to question the laws of today"—precisely what Plaintiffs demand of this Court. *Id.*

**3.** Even if racial considerations predominated in 1992, and even if any of that intent could be imputed to the 2023 Map (despite binding Supreme Court and Eleventh Circuit precedents holding otherwise), Plaintiffs have not actually argued that the 1992 Map violated the Equal Protection Clause. And indeed, it would be a tough argument to make considering that the 1992 Map was imposed by a federal court. Plaintiffs do not allege that the parties or the *Wesch* court in 1992 lacked "good reasons" to believe that the VRA required that consideration of race. *Cooper*, 581 U.S. at 301.

Nor have Plaintiffs shown that the 2001 or 2011 maps ran afoul of the Equal Protection Clause. During those redistricting cycles, Alabama was covered by Section 5 of the VRA, which blocked any changes to voting laws that would result in "retrogression." *See Beer v. United States*, 425 U.S. 130, 141 (1976) ("the purpose of §5 has always been to insure that no voting-procedure changes would be made that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise").[3]

---

[3] The *Singleton* Plaintiffs assert that "Secretary Merrill conceded that the 1992 court-approved plan would violate the prohibition of racial gerrymandering …." *Singleton* Doc. 147 at 10. That's not right. All the Secretary "conceded" is that VRA Section 5's anti-retrogression requirement applied to those plans and limited the State's options with regard to District 7, and that in post-Section 5, Alabama may not have been able to draw the same lines for the first time, *if done for a racial purpose*. *See Chestnut v. Merrill*, No. 2:18-CV-00907-KOB (N.D. Ala. Oct. 28, 2019), ECF No. 101 at 11-12. That is not a concession that the Legislature adopted the 2001 or 2011 plans for a predominantly racial purpose.

In sum, Plaintiffs are unable to impute any *unconstitutional* intent to the 2023 Map. The past maps were the product of a court order and the VRA's then-existing requirements, along with normal changes in population that occur over the course of a decade. No court invalidated those maps, and the 2001 and 2011 Maps both satisfied Section 5's then-extant preclearance requirements. Alabama's retention of the cores of its districts was a constitutionally legitimate policy choice, and Plaintiffs' attempt to upend those plans cannot overcome the presumption of the current Legislature's good faith.

**4.** Finally, Plaintiffs note (and Alabama's Secretary of State has acknowledged) that the VRA might not have justified creating District 7 in 2011 form if the issue arose for the first time *today*. That is irrelevant. The question here is not whether Alabama, drawing on a blank slate in 2023, could have considered race in drawing District 7 in its current configuration. The question is instead whether, after more than 30 years of history with the current districts, Alabama may adopt a 2023 map that largely maintains existing districts consistent with the State's legitimate policies of promoting communities of interest, compactness, core retention, and continuity of representation.

Plaintiffs' theory of racial predominance also proves far too much. By their lights, any time the conditions justifying creation of a VRA district in the past dissipate, the State may find itself with a springing Fourteenth Amendment violation

14

based on the *original* creation of that district. Plaintiffs cite no court that has embraced their radical theory, and this Court should reject it.

## CONCLUSION

The Court should deny the *Singleton* Plaintiffs' motion for a preliminary injunction.

Respectfully Submitted,

Steve Marshall
 *Attorney General*

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
 *Solicitor General*

James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*

A. Barrett Bowdre (ASB-2087-K29V)
 *Deputy Solicitor General*

Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
 *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Secretary Allen***

16

s/ *Dorman Walker* (with permission)
Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

***Counsel for Sen. Livingston and Rep. Pringle***

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, I filed the foregoing using the

Court's CM/ECF system, which will serve all counsel of record.

/s/ Edmund G. LaCour Jr.
*Counsel for Secretary Allen*

17