FILED
 2023 Aug-09 PM 03:53
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# Exhibit 12

July 11, 2023

Sent via Email

Dorman Walker
*Counsel for the Committee Chairs*
445 Dexter Avenue, Suite 8000
Montgomery, AL 36104-3864
dwalker@balch.com

      Re:  VRA Plaintiffs' Remedial Plan

Dear Counsel:

  On behalf of the plaintiffs in *Milligan et al. v. Allen et al.*, No. 2:21-cv-01530, (the "*Milligan* Plaintiffs") and *Caster et al. v. Allen*, No. 2:21-cv-01536 (the "*Caster* Plaintiffs"), we write to provide additional information related to the VRA Plaintiffs' Remedial Plan (or VRA Plan) that was submitted to you on June 22, 2023 and discussed at the June 27, 2023 Legislative Committee on Reapportionment hearing.

  *First*, as noted in our clients' letter issued June 26, 2023 to the Legislative Committee, the *Milligan* and *Caster* Plaintiffs (collectively, the "VRA Plaintiffs") are the only litigants who have been successful in challenging HB1. No court has ruled in favor of the separate racial gerrymandering claim brought by plaintiffs in the separate case, *Singleton v. Allen*, No. 2:21-cv-1291 (the "*Singleton* Plaintiffs"). Accordingly, maps proposed by the *Singleton* Plaintiffs or their attorneys have no relationship to the VRA claim resolved in U.S. Supreme Court. The VRA Plaintiffs' Remedial Plan, by contrast, is put forward by the VRA Plaintiffs who won on their claim in the Supreme Court and who secured the injunction requiring a remedial map-drawing process.

  *Second*, at the June 27th hearing, counsel for the *Singleton* plaintiffs spoke out against the VRA Plaintiffs' Remedial Plan and offered a plan found in an amicus brief that the Campaign Legal Center filed in support of the VRA Plaintiffs in the Supreme Court (the "CLC Plan"). According to him, the CLC Plan is a viable remedy for the VRA violation because it has two "crossover" districts in which Black voters do not form the majority but can elect preferred candidates.

  This is incorrect.

  As an initial matter, the CLC Plan has not been proposed or endorsed as a remedy by the group that originally created it. The CLC Plan was created by Campaign Legal Center, a nonprofit voting rights organization, in support of the VRA Plaintiffs' position at the Supreme Court "in response to arguments advanced by the State that the Supreme Court has now flatly rejected."[1] In fact, the Campaign Legal Center has issued a letter explaining this context and explicitly rejecting

---

[1] Letter from Campaign Legal Center to the Legislative Committee on Reapportionment (June 30, 2023), *available at* https://campaignlegal.org/sites/default/files/2023-06/CLC Letter to AL Apportionment Committee 6.30.23.pdf.

1

"any suggestion that it would be an unconstitutional racial gerrymander if the Legislature were to adopt two majority BVAP districts—such as the districts proposed by the VRA Plaintiffs."[2]

More importantly, the CLC Plan is not a viable remedy for the VRA violation because it does not provide Black voters with a sufficient opportunity to elect their preferred candidates. The CLC Plan's district 6 ("CLCD6") contains all of Jefferson County along with eight precincts in Shelby County.[3] It replaces existing congressional district 6 by taking portions of the existing majority-Black congressional district 7 and drawing the Black-preferred incumbent out of her district. The Black voting-age population is less than 40 percent in CLCD6. Notably, no Black candidate since Reconstruction has ever been elected to Congress in Alabama from a district with less than a 50 percent Black voting-age population.

Since its creation in 1992, existing majority-Black district 7 has consistently elected a Black and Black-preferred candidate in contested biracial elections. In CLCD6, however, the Black and Black-preferred candidates would have <u>lost</u> nearly 60% of biracial statewide elections between 2014 and 2022.[4] Further, consistent with this analysis, a federal court recently relied on expert testimony to conclude that racially polarized voting had caused Black and Black-preferred candidates to lose Jefferson County in both the 2008 U.S. Senate and 2010 county district attorney general elections.[5] Thus, given the "practical reality" of "intensely racially polarized voting,"[6] the CLC Plan is not a viable remedy because it would fail to "completely remed[y]" the identified violation of the Voting Rights Act.[7]

*Third*, counsel for the *Singleton* Plaintiffs implied that the VRA Plaintiffs' Remedial Plan split counties for predominantly racial reasons in a manner that is constitutionally suspect. This is wrong. The U.S. Supreme Court already considered and rejected the argument, which had been advanced by Alabama, that nearly identical splits of Mobile and Jefferson Counties in the VRA Plaintiffs' illustrative plans were indicative of an unconstitutional racial gerrymander.[8] The Supreme Court found that these county splits in the illustrative maps did not breach "the line between racial predominance and racial consciousness,"[9] and thus the similar splits in the VRA

---

[2] *Id.*
[3] CLCD6 combines all of Jefferson County with the following eight precincts in Shelby County: 1st Christian Church, Asbury United Methodist Church, Christ United Methodist, Meadowbrook Baptist, The Church at Brook Hills, Riverchase Baptist, Riverchase Church of Christ and Valleydale Baptist Church.
[4] According to our preliminary performance analysis, there have been seven biracial statewide elections between 2014 and 2022. The Black and Black-preferred candidates would have lost CLCD6 in four of these races: State Auditor (2014), Secretary of State (2014), Lieutenant Governor (2014), and Governor (2022). The Black and Black-preferred candidate would have won the 2022 U.S. Senate election in CLCD6, but only by about 1,400 votes.
[5] *Jones v. Jefferson Cnty. Bd. of Educ.*, No. 2:19-CV-01821, 2019 WL 7500528, at *2-3 (N.D. Ala. Dec. 16, 2019).
[6] *Milligan v. Merrill*, 582 F. Supp. 3d 924, 936 (N.D. Ala.), *aff'd sub nom. Allen v. Milligan*, 143 S. Ct. 1487 (2023).
[7] *Dillard v. Crenshaw Cnty.*, 831 F.2d 246, 249 (11th Cir.1987) ("This Court cannot authorize an element of an election proposal that will not with certitude completely remedy the Section 2 violation."); *cf. also Abrams v. Johnson*, 521 U.S. 74, 94 (1997) (concluding that, given the persistence of racial bloc voting, § 2 of the Voting Rights Act required the maintenance of a majority-Black district in a remedial plan).
[8] *See Allen v. Milligan*, 143 S. Ct. 1487, 1510-13, 1516-17 (2023) (rejecting the contention that the *Milligan* and *Caster* illustrative plans are unconstitutional racial gerrymanders and reaffirming the constitutionality of "race-based redistricting as a remedy for state districting maps that violate § 2").
[9] *Id.* at 1510–11.

Plan also do not even implicate the concerns raised by the *Singleton* Plaintiffs' counsel.[10]

*Finally*, under the VRA Plaintiffs' Remedial Plan, the Black registered voter population in congressional district 2 is 52% and in district 7 is 58%. This should negate any concerns that the Plan will not perform for Black voters due to the disproportionate number of Black Alabamians who are incarcerated and/or ineligible to vote. Both remedial districts would consistently provide an opportunity to elect Black-preferred candidates in congressional elections.[11] For that reason, there is, in our view, no basis for the concern that the presence of people in jails or prisons in these districts or low Black voter turnout requires increases to their Black voting-age populations.

Accordingly, the VRA Plaintiffs again strongly and respectfully urge the Legislature to adopt the VRA Plaintiffs' Remedial Plan, which will effectively put an end to the VRA litigation. The VRA Plaintiffs object to any remedial plan like the CLC Plan that fails to completely remedy the Section 2 violation.

Sincerely,

Deuel Ross
Stuart Naifeh
Brittany Carter
NAACP LEGAL DEFENSE FUND
dross@naacpldf.org

Davin M. Rosborough
Julie Ebenstein
ACLU FOUNDATION
drosborough@aclu.org

LaTisha Gotell Faulks (ASB-1279-I63J)
ACLU OF ALABAMA
tgfaulks@aclualabama.org

Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS
sjackson@wigginschilds.com

David Dunn
Shelita M. Stewart
Jessica L. Ellsworth
Michael Turrill

Abha Khanna
Lalitha D. Madduri
Joseph N. Posimato
ELIAS LAW GROUP LLP
AKhanna@elias.law

Richard P. Rouco
(AL Bar. No. 6182-R76R)
QUINN, CONNOR, WEAVER,
   DAVIES & ROUCO LLP
rrouco@qcwdr.com

***Attorneys for the Caster Plaintiffs***

---

[10] Even if the *Singleton* attorney had raised valid concerns, race can be a predominant motive in drawing districts so long as it is narrowly tailored to remedy an identified VRA violation. *See Bethune-Hill v. State Bd. of Elections*, 137 S. Ct. 788, 802 (2017) (holding that a majority-Black district was narrowly tailored to prevent a VRA violation).

[11] *See Milligan*, 582 F. Supp. 3d at 969, 982 (N.D. Ala. 2022) (noting that experts for the VRA Plaintiffs conducted "effectiveness" and "performance" analyses that confirmed that their illustrative plans, which the VRA Plaintiffs' Remedial Plan is based on, would elect Black-preferred candidates).

3

HOGAN LOVELLS US LLP
david.dunn@hoganlovells.com

*Attorneys for the Milligan Plaintiffs*