FILED
2023 Aug-09 PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 15

July 17, 2023

Sent via Email

Dorman Walker
*Counsel for the Defendant Committee Chairs*
445 Dexter Avenue, Suite 8000
Montgomery, AL 36104-3864
dwalker@balch.com

Re:   VRA Plaintiffs' Remedial Plan

Dear Mr. Walker:

On behalf of the plaintiffs in *Milligan et al. v. Allen et al.*, No. 2:21-cv-01530, we write to correct the misleading and inaccurate assertions in the letter from Alabama Attorney General Steve Marshall, dated July 13, 2023 ("AG Letter"), which selectively quotes the record in the litigation and omits the context in which the statements it cites were made.

As you know, the Supreme Court affirmed the three-judge court's instructions that "any remedial plan will need to include two districts in which Black voters either comprise a voting-age majority or something quite close to it."[1] Thus, the Attorney General is wrong to suggest that a remedial plan adopted by the legislature need not satisfy the district court's order. The Attorney General concedes, as he must, that Plaintiffs "have secured an affirmance from the Supreme Court."[2] But his letter is wholly premised on a legal position resoundingly rejected by the Supreme Court. The Attorney General's assertion that adopting the VRA Plaintiffs' Remedial Plan "would likely open the State up to claims that it has violated the Equal Protection Clause" flies in the face of the Supreme Court's decision. The five-justice majority concluded that "the plaintiffs adduced eleven illustrative maps—that is, *example districting maps that Alabama could enact*—each of which contained two majority-black districts that comported with traditional districting criteria."[3] And the VRA Plaintiffs' Remedial Plan comports even more closely with the State's own redistricting principles than the 11 plans that the Supreme Court noted "Alabama could enact."[4]

The Attorney General suggests that in the VRA Plaintiffs' Remedial Plan, "voters in Mobile County are divided from voters in Mobile City because of their race and because of stereotypes about how voters of certain races will vote." On the contrary, the VRA Plan divides Mobile County in a manner similar to the State Board of Education based on geographic and

---

[1] Preliminary Injunction Memorandum Opinion and Order, *Milligan v. Allen*, No. 2:21-cv-1530, Doc. 107, at 6.
[2] AG Letter at 2.
[3] *Allen v. Milligan*, 143 S. Ct. 1487, 1504 (2023) (emphasis added). Contrary to the suggestion of the Attorney General that the Supreme Court somehow found the *Milligan* plaintiffs' plans constitutionally suspect, the eleven plans referenced by the five-justice majority as constitutional include both the *Milligan* and *Caster* Plaintiffs' plans.
[4] Like the majority, Justice Kavanaugh's concurrence (1) rejected Alabama's race blindness test; (2) agreed with the majority that Plaintiffs' illustrative plans were "reasonably compact" and thereby implicitly did not implicate racial gerrymandering concerns because Plaintiffs' plans respected traditional redistricting criteria at least as well as Alabama; and (3) agreed that race-based redistricting plans that are drawn to remedy VRA violations are constitutional. *Id*. at 1517-19.

1

precinct boundaries. Further, as the Attorney General is well aware, the district court concluded that Black voters in Mobile City and the Black Belt overwhelmingly share the same preferred candidates based on undisputed data, not stereotypes, and that, regardless of race, voters in these areas share historical and socioeconomic ties. The district court examined and found racial bloc voting in general elections and both Democratic and Republican primary elections.[5] It also found that "compared to the record about the Black Belt, the record about the Gulf Coast community of interest is less compelling."[6] The Supreme Court agreed, holding that the district court "understandably found [Defendants'] testimony insufficient to sustain Alabama's 'overdrawn argument that there can be no legitimate reason to split' the Gulf Coast region," and that "[e]ven if the Gulf Coast did constitute a community of interest, . . . plaintiffs' maps would still be reasonably configured because they joined together a different community of interest called the Black Belt."[7] The VRA Plaintiffs' Plan remedies Alabama's decision to divide Black voters from one another in a way that weakens their influence in violation of Section 2.

Instead of accepting the legislature's legal obligation to work within the bounds set by the Supreme Court in this case, the Attorney General seeks refuge in a different Supreme Court case addressing the wholly different issue of whether racial diversity is a compelling interest that justifies the use of race in the admissions policies at certain elite universities.[8] These university admissions programs have nothing to do with the principles applicable to a legislature considering a remedial plan in response to a VRA violation. Indeed, the Supreme Court was explicit in both the *Milligan* and the university admissions decisions, that States still have a compelling interest in considering race to cure identified violations of the Constitution and statutes, including the Voting Rights Act.[9] The five-justice majority in *Milligan* clearly ruled that under certain circumstances race-based redistricting is permissible "as a remedy for state districting maps that violate § 2."[10]

In his attempt to find support for a plan that would not fully remedy the Section 2 violation, the Attorney General distorts the record in the district court and Supreme Court to suggest that the *Milligan* Plaintiffs themselves have endorsed such a plan. First, the Attorney General cherry picks testimony by Evan Milligan in which Mr. Milligan simply confirms that, several months prior to initiating litigation in 2021, he had sent an email to the Reapportionment Committee supporting the whole county plan offered by Senator Bobby Singleton (the "Singleton Plan"). But Mr. Milligan testified at the January 2022 preliminary injunction hearing that he supports two majority-Black districts.[11] As Mr. Milligan explained, he dropped his support for the Singleton Plan in 2021 after he learned about other plans that included two majority-Black districts.[12] Since this

---

[5] *Milligan v. Merrill*, 582 F. Supp. 3d 924, 968, 1019 (N.D. Ala. 2022).
[6] *Milligan*, 582 F. Supp. 3d at 1015.
[7] *Milligan*, 143 S. Ct. at 1505.
[8] AG Letter, at 4.
[9] *See Milligan*, 143 S. Ct. at 1516 (concluding that race-based remedial redistricting is permissible "under certain circumstances"); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2162 (2023) (explaining that "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" remains a compelling interest that permits "resort[ing] to race-based government action").
[10] *See Milligan*, 143 S. Ct. at 1516–17; *see also id.* at 1519 (Kavanaugh, J.) (joining the majority in finding that race-based redistricting a permissible and constitutional § 2 remedy).
[11] See *Milligan v. Allen*, No. 2:21-cv-1530, Doc. 105, at 158 ("Q And now you're advocating instead for the creation of two majority black districts; is that correct? A Yes, sir. Yes, sir.").
[12] *Id.* at 133 (Q And did you know at the time of submitting that testimony that it was possible to draw two majority black districts? A No.").

litigation was filed, Mr. Milligan has been consistent in his support for a Congressional plan with two majority-Black districts or something quite close to it that fully cures the VRA violation.

Second, the Attorney General offers out-of-context statements by counsel for the *Milligan* Plaintiffs concerning the Singleton Plan and other race-blind plans as a possible remedies.[13] What the Attorney General omits is that those statements were made in response to the State's argument that any consideration of race under Section 2 would render the VRA unconstitutional[14]—an argument the Supreme Court has now resoundingly rejected. That is, the statements in Plaintiffs' brief and at oral argument were meant to explain that *if* the Supreme Court had adopted State's race-blindness argument, there were still alternative plans that might improve electoral opportunities for Black voters. Because the Supreme Court rejected Alabama's race-blindness test, the *Milligan* Plaintiffs' alternative arguments are irrelevant.

Moreover, the legislature now has before it analyses of how the Singleton and CLC plans would have performed in 2022. These analyses, which were provided by *Singleton* counsel, make clear that these plans are insufficient to remedy the VRA violation. Neither of the "CLC 1" or "Singleton 3" plans would have consistently performed for Black voters in 2022. In both plans, Black and Black-preferred candidates would have lost races in proposed CD 6 or CD 7 for Governor. Under Singleton 3, the Black candidates would also have lost four more 2022 races in proposed CD 6 for Senate, Attorney General, Supreme Court Justice, and Secretary of State, while garnering less than 51% of the vote in many of those races in the CLC 1 plan. And even before the 2022 elections, the Secretary of State and Redistricting Committee Chairs' own expert, Dr. Trey Hood, contended that "[i]t is not obvious, given a number of qualifications, whether the Singleton Plan might elect black candidate of choice in either of these proposed congressional districts."[15]

The Attorney General also asserts that Plaintiffs seek "a guarantee of Democratic victories in at least two districts." The Attorney General does not and could not point to a single statement that the *Milligan* Plaintiffs or their counsel have made even suggesting that their goal in this litigation or the remedy they seek is in any way partisan. Plaintiffs seek to remedy the racial discrimination embodied in Alabama's 2021 Congressional plan—discrimination recognized by both the district court and the U.S. Supreme Court—and declared by them to be unlawful. To remedy that violation, Plaintiffs seek a map that will provide Black voters—not Democrats—an opportunity to elect a candidate of their choosing in a second Congressional district.

In sum, it would be a serious error for the legislature to take solace in the Attorney General's characterization of the record and the law. The courts, including the Supreme Court, have spoken. The legislature must redraw Alabama's Congressional map, and in so doing, it must remedy Alabama's violation of the Voting Rights Act, which has deprived Black voters of the opportunity to elect their candidates of choice in two congressional districts. And, it must do so in compliance with the district ourt's injunction—now reinstated and fully effective. Alabama cannot do so if it insists on perpetuating the vote dilution that currently exists or on engaging in a

---

[13] AG Letter, at 2-3.
[14] See Brief of *Milligan* Appellees, *Allen v. Milligan*, No. 21-1086 (U.S. Supr. Ct. 2022), at 44 ("Defendants assert that this Court should require race-blind Gingles 1 plans because, otherwise, states will be caught between drawing unconstitutional racial gerrymanders or committing § 2 violations.").
[15] Hood Expert Report at 13.

sham exercise that ultimately denies Black voters the opportunities Section 2 requires. If the legislature follows that course, it will forfeit its primary role in the Congressional redistricting process, and the court will be forced to take on the task of ensuring that Alabamians are adequately and equitably represented in Congress regardless of race.

Sincerely,

Deuel Ross
Stuart Naifeh
Brittany Carter
Tanner Lockhead
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
dross@naacpldf.org

LaTisha Gotell Faulks (ASB-1279-I63J)
AMERICAN CIVIL LIBERTIES
 UNION OF ALABAMA
tgfaulks@aclualabama.org

Davin M. Rosborough
Julie Ebenstein
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
drosborough@aclu.org

Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
 FISHER & GOLDFARB, LLC
sjackson@wigginschilds.com

David Dunn
Shelita M. Stewart
Jessica L. Ellsworth
Michael Turrill
HOGAN LOVELLS US LLP
david.dunn@hoganlovells.com

***Attorneys for the Milligan Plaintiffs***

CC: Edmund LaCour, Alabama Solicitor General
  Jim Davis, Alabama Attorney General's Office
  Abha Khanna, Counsel for the *Caster* Plaintiffs

4