# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY SINGLETON, *et al.*,**<br>        Plaintiffs,<br><br>v.<br><br>**WES ALLEN, in his official capacity as Alabama Secretary of State,**<br>        Defendant. | **Case No. 2:21-cv-01291-AMM**<br><br>**THREE-JUDGE COURT** |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

BY THE COURT:

## **ORDER**

This congressional redistricting case is before the court on the *Singleton* Plaintiffs' Motion for an Order Regarding Prevailing Party Status. Doc. 223.[1] The motion is fully briefed. Docs. 227–28. For the reasons explained below, the *Singleton* Plaintiffs are not prevailing parties eligible for attorney fees as it relates to the preliminary injunction proceedings.

## I.     BACKGROUND

*Singleton* is one of three congressional redistricting cases before this court. *Milligan v. Allen*, 2:21-cv-1530-AMM, is also before this three-judge district court,

---

[1] When referencing a document only, it relates to the *Singleton* case. However, because of the interrelated nature of the case, the Court will notate when it cites to either *Milligan* or *Caster* documents.

and *Caster v. Allen*, 2:21-cv-1536-AMM, is before Judge Manasco sitting alone. Doc. 88 at 2. All three sets of Plaintiffs challenged the Alabama Legislature's 2021 congressional redistricting plan ("the 2021 Plan"). Doc. 15; *Milligan* Doc. 1; *Caster* Doc. 3. Those challenges alleged that the 2021 Plan "was racially gerrymandered in violation of the United States Constitution and/or diluted the votes of Black Alabamians in violation of Section Two of the Voting Rights Act of 1965, 52 U.S.C. § 10301 ('Section Two')." Doc. 210 at 2. The *Singleton* Plaintiffs challenged the 2021 Plan solely on constitutional grounds, the *Milligan* plaintiffs challenged the 2021 Plan on constitutional and statutory grounds, and the *Caster* plaintiffs challenged the 2021 Plan solely on statutory grounds. Doc. 88 at 2.

On January 24, 2022, the Court issued a preliminary injunction finding that the *Milligan* and *Caster* plaintiffs were "substantially likely to establish that the [2021] Plan violates Section Two of the Voting Rights Act" and satisfied "the other requirements for preliminary injunctive relief." *Id.* at 4–5; *Milligan* Doc. 107 at 4–5; *Caster* Doc. 101 at 4–5. We preliminarily enjoined the Secretary of State ("the Secretary") "from conducting any congressional elections according to the [2021] Plan." *Milligan* Doc. 107 at 5; *Caster* Doc. 101 at 5. "Because we grant[ed] partial relief on statutory grounds," we "avoid[ed] reaching constitutional questions in advance of the necessity of deciding them." Doc. 88 at 7 (second quotation quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)).

Therefore, we "**RESERVE[D] RULING** on the constitutional issues raised in the *Singleton* and *Milligan* plaintiffs' motions." *Id.* (emphasis in original); *see also id.* at 216 ("[W]e decline to decide the constitutional claims asserted by the *Singleton* and *Milligan* plaintiffs at this time.").

On June 8, 2023, the Supreme Court affirmed the preliminary injunction. *Allen v. Milligan*, 599 U.S. 1, 10 (2023). The Alabama Legislature then passed and the Governor signed into law a new congressional map ("the 2023 Plan"). Doc. 210 at 4–5. "All Plaintiffs timely objected to the 2023 Plan and requested another preliminary injunction." *Id.* at 5. We "conclude[d] that the 2023 Plan d[id] not remedy the likely Section Two violation that we found and the Supreme Court affirmed," and therefore issued another preliminary injunction enjoining the Secretary "from conducting any elections with the 2023 Plan." Doc. 191 at 6. We "again **RESERVE[D] RULING** on the constitutional issues raised by the *Singleton* and the *Milligan* Plaintiffs, including the *Singleton* Plaintiffs' motion for a preliminary injunction." *Id.* at 8 (emphasis in original). The Secretary later "moved the Supreme Court for a stay" of the second preliminary injunction, "and the Supreme Court summarily denied a stay with no noted dissents." Doc. 210 at 12; *see also Milligan* Doc. 281 (Secretary's notice of appeal to the U.S. Supreme Court).

When we issued the second preliminary injunction, the Court also "directed the Special Master to file three proposed plans to remedy the likely Section Two

3

violation we found in the 2023 Plan." Doc. 210 at 14. After examining numerous proposed remedial plans, we determined that the Special Master's "Remedial Plan 3 completely remedies the vote dilution we found while best preserving the State's legislative preferences expressed through the 2023 Plan." *Id.* at 36 (cleaned up). Accordingly, we ordered the Secretary "to administer Alabama's upcoming congressional elections according to the Special Master's Remedial Plan 3." *Id.* at 47.

On October 20, 2023, all parties in this case moved for a scheduling order regarding attorneys' fees to allow the parties time to conduct discussions regarding a possible resolution of the matter with target dates of December 15, 2023 and January 19, 2024 for status reports. Doc. 213. The Court granted the motion. Doc. 214. On November 29, 2023, the *Singleton* Plaintiffs and the Defendants notified this Court that they had reached an impasse as to whether the *Singleton* Plaintiffs were "'prevailing parties' under 42 U.S.C. § 1988 and 52 U.S.C. § 10310, and thus are entitled to attorneys' fees." Doc. 219 at 1. The Court set a briefing schedule and in accordance with that schedule the *Singleton* Plaintiffs moved for an order regarding their prevailing party status, Defendants filed a response and opposition, and the *Singleton* Plaintiffs replied. Docs. 221, 223, 227, 228. The motion is fully briefed and ripe for review.

## II.   LEGAL STANDARDS

"In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e). Similarly, 42 U.S.C. § 1988(b) provides that "the court . . . may allow the prevailing party" in a civil rights action "a reasonable attorney's fee." In the context of a claim under the Voting Rights Act of 1965, courts in the Eleventh Circuit do "not distinguish between these two statutory fee provisions . . . because the standards for awarding fees under the two provisions are generally the same." *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 861 (11th Cir. 1993).

Because eligibility for attorney's fees depends on the litigant's status as a "prevailing party," "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 759–60 (1987); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Plaintiffs may be considered 'prevailing parties' for attorney's fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (cleaned up). "The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506

U.S. 103, 111 (1992) (internal citations omitted). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12; *see also Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) ("Congress clearly contemplated that interim fee awards would be available 'where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues.'" (quoting S. Rep. No. 94-1011, at 5 (1976))).

## III. ANALYSIS

The *Singleton* Plaintiffs contend that they "are prevailing parties" because "[t]hey sought a congressional map with two opportunity districts drawn without regard to race, and they received two opportunity districts drawn without regard to race." Doc. 223 at 14. The *Singleton* Plaintiffs assert that they are "the only Plaintiffs to advocate a remedial plan that created two such crossover districts without the use of racial quotas." *Id.* at 5. When "[t]he Special Master proposed three plans, all of which were drawn without using race," "the *Singleton* Plaintiffs supported Plan 3 . . . and this Court adopted Plan 3." *Id.* at 8 (cleaned up). The *Singleton* Plaintiffs argue that they "obtained from the Court 'the substance of what [they] sought.'" *Id.* at 14 (quoting *Hewitt*, 482 U.S. at 761).

The Defendants contend that "[t]he *Singleton* Plaintiffs are not 'prevailing parties'" because they "have received no relief on the merits of their claims." Doc. 227 at 1–2. According to the Defendants, the *Singleton* Plaintiffs advance a "counter-textual notion that a party 'prevails' on his claim when he approves of the results that other parties obtain when they succeed on the merits of their claims." *Id.* at 10. Because "[t]his Court has not ruled on any of the *Singleton* Plaintiffs' claims . . . they cannot have prevailed on those claims." *Id.* The Defendants also dispute that the *Singleton* Plaintiffs received the remedy that they wanted. *Id.* at 13. The Defendants argue that the *Singleton* Plaintiffs "failed" in having their plan adopted, and only after that failure "express[ed] a preference among plans that ran contrary to their theory of the case." *Id.* at 14.

The *Singleton* Plaintiffs reply that their "constitutional claim . . . was closely tied to the ultimate remedy." Doc. 228 at 10. According to the *Singleton* Plaintiffs, "[t]he merits of [the constitutional] claim were that the Constitution demands race-neutral opportunity districts, the *Singleton* Plaintiffs were the only parties who asked the Special Master to draw race-neutral opportunity districts, and this Court ultimately adopted race-neutral opportunity districts." *Id.* And the *Singleton* Plaintiffs contend that their "support for the Special Master's plan is consistent with their theory of the case from the beginning." *Id.* at 12.

7

We think it is undeniable that the *Singleton* Plaintiffs have not "obtain[ed] an enforceable judgment against the defendant from whom fees are sought," *Farrar*, 506 U.S. at 111, nor have they "receive[d] at least some relief on the merits of [their] claim, *Hewitt*, 482 U.S. at 760. The *Singleton* Plaintiffs received no relief because the Court expressly reserved ruling on the merits of the *Singleton* Plaintiffs' constitutional claims and their requests for preliminary injunctive relief. Doc. 88 at 7, 216–17. Common sense and "[r]espect for ordinary language" dictate that a party cannot prevail on a claim if the court has not ruled on it. *Hewitt*, 482 U.S. at 760. At the time, the *Singleton* Plaintiffs made the choice to pursue a constitutional challenge only and did not assert a statutory challenge under the Voting Rights Act even after the Court's opinion on the 2021 Plan was affirmed by the United States Supreme Court.[2] The practical reality that the *Singleton* Plaintiffs participated in the remedial proceedings and are pleased with the result does not mean that they prevailed on their claims under applicable federal law. The *Singleton* Plaintiffs do not identify any controlling precedent that suggests, let alone holds, otherwise.

The *Singleton* Plaintiffs resist this conclusion arguing that "[a] party's ideal plan need not be the one adopted, as long as that party supported the adopted plan," citing for support to *Dillard v. City of Greensboro*, 213 F.3d 1347 (11th Cir. 2000)

---

[2] The *Singleton* Plaintiffs have now amended their complaint to include a Voting Rights Act claim. *See* Doc. 229.

8

and *Hastert v. Illinois State Board of Election Commissioners*, 28 F.3d 1430 (7th Cir. 1993). Doc. 223 at 15. But—fatal to the *Singleton* Plaintiffs' argument—in both *Dillard* and *Hastert*, the plaintiffs actually pleaded a claim resolved by the court. *See Dillard*, 213 F.3d at 1354; *Hastert*, 28 F.3d at 1440–41. Here, as we have already observed, we have not ruled on the *Singleton* Plaintiffs' constitutional claims at all—not in our first preliminary injunction order, Doc. 88 at 214–17, nor in the second one, Doc. 191 at 194. The *Singleton* Plaintiffs cannot be transformed into prevailing parties under these authorities.

Finally, the *Singleton* Plaintiffs claim that the Supreme Court's denial of a stay of this Court's order enjoining the 2023 congressional plan is "victory" enough to characterize them as "prevailing parties." Doc. 223 at 15. In other words, they suggest that because they opposed the Secretary of State's attempt to secure a stay, they are now prevailing parties. We disagree. The *Singleton* Plaintiffs have identified no case law in support of this argument, and we have found none. The denial of a stay does not constitute "at least some relief on the merits of [their] claim," *Farrar*, 506 U.S. at 111, because it does not bear at all on the merits of the *Singleton* Plaintiffs' constitutional claims, which have never been addressed by this Court.

Accordingly, because the Court reserved ruling on the *Singleton* Plaintiffs' claims, the *Singleton* Plaintiffs are not prevailing parties for the preliminary injunction proceedings.

9

## IV. CONCLUSION

The *Singleton* Plaintiffs are not prevailing parties eligible for attorney fees for the preliminary injunction proceedings for either the 2021 Plan or 2023 Plan. Participation in the remedial proceedings does not affect the prevailing party status.

**DONE** and **ORDERED** this 3rd day of May, 2024.

_____
**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

_____
**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE