FILED

2026 May-15  AM 11:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| BOBBY SINGLETON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-01291-AMM |
| | ) | |
| WES ALLEN, in his official | ) | THREE-JUDGE COURT |
| capacity as Alabama Secretary of State, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................... ii

INTRODUCTION ...............................................................................................1

ARGUMENT ......................................................................................................5

      I.      The 2023 Plan Was an Intentional Effort to Dilute Black Alabamians'
            Voting Strength........................................................................................6

      II.    Voting in Alabama is Highly Racially Polarized.................................11

      III.   Act 2026-621 Violates the Alabama Constitution..............................13

CONCLUSION .................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Caster*,
    2026 WL 1282800 (U.S. May 11, 2026) ........................................................1

*Allen v. Milligan*,
    599 U.S. 1 (2023)..............................................................................................9

*AmSouth Bank v. Dees*,
    847 So. 2d 923, 933 (Ala. 2002)....................................................................14

*Bartlett v. Strickland*,
    556 U.S. 1 (2009)............................................................................................10

*Hendrix v. United Healthcare Ins. Co. of the River Valley*,
    327 So. 3d 191 (Ala. 2020).............................................................................14

*League of United Latin Am. Citizens v. Perry*,
    548 U.S. 399 (2006)...........................................................................................9

*Louisiana v. Callais*,
    608 U.S. ___ (2026); 2026 WL 1153054 (U.S. Apr. 29, 2026).......... 1, 2, 4, 6

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)........................................................................................14

*Osmose, Inc. v. Viance, LLC*,
    612 F.3d 1298 (11th Cir. 2010).........................................................................5

*Serra Chevrolet, Inc. v. Hock*,
    891 So. 2d 844 (Ala. 2004).............................................................................14

*Singleton v. Allen*,
    782 F. Supp. 3d 1092 (N.D. Ala. 2025) ................................................. passim

**Statutes**

Ala. Act 2026-621 ...................................................................................... passim

Alabama Constitution of 2022 ...............................................................................13

**Other Authorities**

Angie Maxwell and Todd Shields,
*The Long Southern Strategy: How Chasing White Voters in the South Changed American Politics* (2019) ...............................................................12

Black's Law Dictionary 1158 (5th ed. 1979)........................................................14

https://governor.alabama.gov/newsroom/2026/05/2026-first-special-session-proclamation/ ...............................................................................................4

Press Statement by Secretary Wes Allen (May 12, 2026),
https://www.sos.alabama.gov/sites/default/files/press/SOS%20Allen%20Prepared%20Remarks%20-%205.12.26%20Press%20Conference.pdf; a video of the press conference is available at
https://youtu.be/aeFqu9OrCCc?si=5he6-6jU_DFNVeJz ...............................5

Proclamation by Governor Kay Ivey (May 12, 2026),
https://governor.alabama.gov/newsroom/2026/05/2026-special-primary-election-proclamation/. ...............................................................................4

**INTRODUCTION**

Unless a preliminary injunction is granted, Defendants will have played their "checkmate move" for the 2026 elections. *See Singleton v. Allen*, 782 F. Supp. 3d 1092, 1118 (N.D. Ala. 2025) (three-judge court), (discussing the State's view of remedial proceedings). Not having convinced any court that the Legislature's 2023 Plan has lawful congressional districts, Defendants seek to impose those 2023 Plan districts through last-minute legislative changes to the status quo. The Singleton Plaintiffs seek a preliminary injunction to maintain the status quo: an election under this Court's race-blind remedial plan (the "Special Master's Plan"). *See* Doc. 353 at 5 (this Court explaining "our districting map has been the status quo since we and the Supreme Court declined to stay it in September 2023").

The Supreme Court vacated this District Court's orders enjoining Alabama's 2023 redistricting plan and remanded for reconsideration in light of the Supreme Court's interpretation of § 2 of the Voting Rights Act in *Louisiana v. Callais*, 608 U.S. ___ (2026); 2026 WL 1153054 (U.S. Apr. 29, 2026). *Allen v. Caster*, 2026 WL 1282800, at *1 (U.S. May 11, 2026). In *Callais*, the Supreme Court recognized that "our decision in *Allen [v. Milligan]* did not reach two pivotal issues we now squarely address." 2026 WL 1153054, at *16. "First, we left open whether 'race-based redistricting' under § 2, even if permissible when the Voting Rights Act was enacted in 1982, could "extend indefinitely into the future, despite significant changes in

relevant conditions." *Id.* "Second, because the State in *Allen [v. Milligan]* did not cite partisan goals in defending its map, we did not address whether § 2 plaintiffs must disentangle race from politics in proving their case." In addition, the Supreme Court in *Callais* recognized that "*Allen [v. Milligan]* did not discuss the Fourteenth Amendment at all." *Id.*

Nothing in *Callais* suggests this Court's findings of fact in *Singleton v. Allen* have been called into question, much less disturbed. As suggested by the dissenting Justices in *Callais*, this Court's findings and conclusions that the Legislature's 2023 plan is intentionally discriminatory provide the strongest grounds for reaffirming this Court's 2025 judgment. And those findings are buttressed by the evidence introduced by the Singleton Plaintiffs in support of their Second Amended Complaint. Doc. 229.

On May 8, 2025, this Court declared that "the 2023 Plan violates both Section Two of the Voting Rights Act and the Fourteenth Amendment to the United States Constitution." *Singleton v. Allen*, 782 F. Supp. 3d at 1117. This Court decided "the *Milligan* Plaintiffs' constitutional claim that the Legislature intentionally discriminated against Black Alabamians when it passed the 2023 Plan . . . because the *Milligan* Plaintiffs request bail-in under Section 3(c) of the Voting Rights Act." *Id.* at 1116. At that time, this Court explained that "[b]ecause the *Singleton* Plaintiffs do not request bail-in, no decision is necessary on the constitutional claims of the

2

*Singleton* Plaintiffs, so we apply the canon of constitutional avoidance and do not decide those claims." *Id*. For the Singleton Plaintiffs' Motion for Preliminary Injunction, however, unless this Court rules in favor of Plaintiffs on the Section 2 claim and Defendants commit not to seek to stay that decision, this Court should decide the Singleton Plaintiffs' constitutional claim.

In fact, *Callais* provides additional support for the Singleton constitutional intent claim. The *Callais* majority defined equal "opportunity" in terms of the application of "whatever opportunity results from the application of the State's combination of permissible criteria."  2026 WL 1153054, at *12. The record here shows the Alabama Legislature repeatedly refused to adopt plans that better comported with its own redistricting guidelines, and this denial of equal "opportunity" to elect candidates Black voters prefer was intended to dilute Black voting strength. Because "the State cannot provide a legitimate reason for rejecting all those maps … the inference of racial motivation is strong." *Id*. at *12.

### BACKGROUND

In 2025, this Court permanently enjoined the Secretary "from conducting any elections according to Alabama's 2023 Plan," which "violates both Section Two of the Voting Rights Act and the Fourteenth Amendment to the United States Constitution." *Singleton*, 782 F. Supp. 3d at 1117. In place of the 2023 Plan, the Court ordered that Alabama congressional elections take place using the Special

Master Plan, "which was prepared race-blind." *Id.* at 1114. Defendants appealed to the Supreme Court, which essentially held the appeals in abeyance while it considered *Louisiana v. Callais*.

The Supreme Court decided *Callais* on April 29, 2026, and two days later, Governor Ivey called for a special session of the Legislature to "consider legislation to provide for a special primary election for electing members of the United States House of Representatives … in districts whose boundary lines are altered by a court issuing a judgment, vacating an injunction, or otherwise ordering or permitting an alteration in the boundaries of such districts."[1] On May 8, 2026, the Legislature passed and the Governor signed Act 2026-621, which provides that if "a federal court, by issuing a judgment or by vacating an injunction, permits the reinstatement of the [2023 Plan], to be used in the 2026 General Election, … the state shall hold a new special primary election for the affected congressional Districts …." Ala. Act 2026-621, § 1(b). On May 11, the Supreme Court vacated and remanded this action, along with *Caster v. Allen* and *Milligan v. Allen*. The next day, Governor Ivey issued a proclamation setting a special primary election on August 11, 2026.[2] Later that day, Secretary Allen gave a press conference and issued a press statement in which he

---

[1] Proclamation by Governor Kay Ivey (May 1, 2026), https://governor.alabama.gov/newsroom/2026/05/2026-first-special-session-proclamation/.
[2] Proclamation by Governor Kay Ivey (May 12, 2026), https://governor.alabama.gov/newsroom/2026/05/2026-special-primary-election-proclamation/.

said that the previously scheduled May 19 election would take place, including congressional primary elections, and "[v]otes cast in [Congressional Districts 1, 2, 6, and 7] on May 19 will be tabulated and made public. However, per Act 2026-612, votes for those races will be void for purposes of determining the party nominee."[3] The Singleton, Caster, and Milligan Plaintiffs all moved for a temporary restraining order to preserve the status quo. This Court ordered any Plaintiff seeking preliminary injunctive relief to do so no later than noon Central Time on Friday, May 15. Doc. 355.

## ARGUMENT

To prevail on a motion for a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood that they will succeed on the merits; (2) the preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury absent an injunction outweighs the injury any injunction may impose on Defendants; and (4) the injunction would not be adverse to the public interest. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010). The decision to grant preliminary injunctive relief is within the broad discretion of the district court. *See United States*

---

[3] Press Statement by Secretary Wes Allen (May 12, 2026), https://www.sos.alabama.gov/sites/default/files/press/SOS%20Allen%20Prepared%20Remarks%20-%205.12.26%20Press%20Conference.pdf; a video of the press conference is available at https://youtu.be/aeFqu9OrCCc?si=5he6-6jU_DFNVeJz.

5

*v. Georgia*, 892 F. Supp. 2d 1367, 1372 (N.D. Ga. 2012) (granting motion for preliminary injunction).

The Singleton Plaintiffs agree with the Caster and Milligan Plaintiffs that, even after *Callais*, all Plaintiffs are entitled to a preliminary injunction because they are likely to show that the 2023 Plan violates Section 2 and violates the Fourteenth Amendment, that irreparable injury will result from voiding an election under a lawful plan and holding a special election under an unlawful plan, that this injury outweighs any conceivable injuries to Defendants, and that the injunction would not be adverse to the public interest. The Singleton Plaintiffs join their arguments in full. Here, the Singleton Plaintiffs discuss evidence that further supports the Court's conclusions that the 2023 Plan cannot be understood "as anything other than an intentional effort to dilute Black Alabamians' voting strength and evade the unambiguous requirements of court orders standing in the way." *Singleton*, 782 F. Supp. 3d at 1116, and that "voting in Alabama, particularly in the districts at issue in these cases, is intensely and extremely racially polarized," *id.* at 1284.

## I.    The 2023 Plan Was an Intentional Effort to Dilute Black Alabamians' Voting Strength.

The analysis of the substantial likelihood that Plaintiffs will succeed on the merits and that the preliminary injunction is necessary to prevent irreparable injury includes Defendants' inability to explain why the Legislature rejected two alternative Congressional maps.

6

This Court's prior opinion extensively discusses the Community of Interest Plan; its drafter, Randy Hinaman, testified that he designed a plan "that took the Court's ruling into account and followed the guidelines, which meant a map that provided an opportunity for African Americans to elect the candidate of their choice in two districts." *Singleton*, 782 F. Supp. 3d at 1150. Although the Community of Interest Plan was introduced before the contrived legislative "findings" were released, it complied with all the supposedly "non-negotiable" principles in those findings: it had minimal population deviation, contiguous and reasonably compact geography, and no more than six splits of county lines; it kept the Black Belt, Gulf Coast, and Wiregrass regions intact, and it did not pair incumbent members of Congress. *See id.* at 1366–72 (legislative findings), 1378 (map of Community of Interest Plan). And it at least arguably had a second opportunity district: "Under that Plan, the Committee's performance analysis showed that Black-preferred candidates would have won two of the four modeled elections." *Id.* at 1149 (internal quotation marks omitted); *see also id.* at 1155 (Representative Pringle testified that he supported the plan because of the performance analysis); *id.* at 1152 (Senator Livingston "testified that the Community of Interest Plan might have provided a fair opportunity for African American voters to elect preferred candidates in District 2") (internal quotation marks omitted). Yet, even though the Community of Interest Plan complied with all these principles and passed the House, it was rejected in favor of

7

a plan that did not include a second opportunity district, due to mysterious "information" from an unknown source. *Id.* at 1152–56.

The Community of Interest Plan was not the only plan with two opportunity districts that the Legislature rejected. Senator Singleton introduced a race-neutral plan (the "Singleton Plan") that kept the Gulf Coast intact:



Defendants admitted that in the 28 statewide contested elections from 2012 to 2022, the Black-preferred candidate received the most votes 22 times in District 6 of the Singleton Plan (which had a Black Voting Age Population of less than 40%), and all 28 times in District 7.[4] Therefore, the Singleton Plan contains two opportunity districts while keeping Mobile and Baldwin Counties together.

---

[4] Secretary Allen admitted this fact in response to a request for admission. Doc. 180-1 at 5–6. Senator Livingston and Representative Pringle made the same admission in separate responses, which were not introduced as exhibits.

Moreover, the Singleton Plan better comports with the Legislature's contrived redistricting criteria than the 2023 Plan does. It has minimal population deviation, it is contiguous, it is at least as compact as the 2023 Plan, it keeps Alabama's four largest counties intact (which the 2023 Plan fails to do), it splits no more than six county lines, and it keeps together communities of interest. Specifically, it keeps the Gulf Coast intact, and it puts 16 of the 18 core Black Belt counties in the same district—the highest number mathematically possible. It also keeps the Wiregrass intact except for two counties that are also core Black Belt counties (Crenshaw and Pike), which are placed in the Black Belt district.[5]

The only way the Singleton Plan falls short of the 2023 Plan is that it does not preserve the cores of existing districts or protect all incumbents, but, as this Court held, Doc. 324 at 342-32, these cannot be non-negotiable principles in the context of remedial redistricting: "[T]his Court has never held that a State's adherence to a previously used districting plan can defeat a § 2 claim. If that were the rule, a State could immunize from challenge a new racially discriminatory redistricting plan simply by claiming that it resembled an old racially discriminatory plan." *Allen v. Milligan*, 599 U.S. 1, 22 (2023) ; *see League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 441 (2006) ("[T]he problem here is entirely of the State's own making.

---

[5] For further description of the Singleton Plan and its performance on various metrics, see *In re Redistricting 2023*, No. 23-mc-1181 (N.D. Ala.), Doc. 5 at 6–19.

The State chose to break apart a Latino opportunity district to protect the incumbent congressman from the growing dissatisfaction of the cohesive and politically active Latino community in the district.").

Although the Singleton Plan performed as well as or better than the 2023 Plan on every legitimate districting principle the Legislature identified, including keeping the Gulf Coast together, the Legislature rejected it. Given the rejection of the Community of Interest Plan and the Singleton Plan, both of which complied with the legislative findings (contrived though they were), it is clear that the real non-negotiable principle at the 2023 special session was that a plan could not provide Black voters the opportunity to elect the candidate of their choice in a second district—even if that district was not majority-Black. The Legislature faithfully applied that principle, thereby intentionally discriminating against Black Alabamians. *Bartlett v. Strickland*, 556 U.S. 1, 24 (2009) ("And if there were a showing that a State intentionally drew district lines in order to destroy otherwise effective crossover districts, that would raise serious questions under both the Fourteenth and Fifteenth Amendments.").

The testimony of the Singleton Plaintiffs' expert historians, Dr. R. Volney Riser and Dr. Kari Frederickson, explained how the Legislature's hostility to whole-county crossover districts continued Alabama's enduring policy of maintaining

10

white solidarity and discouraging biracial coalitions. *See* Singleton Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Doc. 320 at 35-53.

## II.     Voting in Alabama Is Highly Racially Polarized.

The analysis of the substantial likelihood that Plaintiffs will succeed on the merits and that the preliminary injunction is necessary to prevent irreparable injury includes Defendants' not being able to rely on a politics-not-race defense. As the Supreme Court recognized in *Callais*, "the State in *Allen [v. Milligan]* did not cite partisan goals in defending its map." Therefore, according to the Supreme Court, disentangling race from politics is not an issue in these Alabama actions.

To the extent this Court still must "disentangle race from politics," *Callais*, 2026 WL 1153054 at *13(internal quotation marks omitted), it has already done so, citing not only Plaintiffs' experts, but also *Defendants'* experts. *Singleton*, 782 F. Supp. 3d at 1280–93. As additional support, the Singleton Plaintiffs point to the testimony of their experts, whom the Court already determined to be credible. *Id.* at 1289.

Dr. R. Volney Riser is a Professor of History at the University of West Alabama, who was qualified as an expert in the history of the role of race and politics and law in the South and Alabama, with no objection. *Id.* at 1230–31. As the Court noted, Dr. Riser testified about White resistance (both Democratic and Republican) to Black voting in the late nineteenth century. *Id.* at 1231. Dr. Riser also explained

11

how Alabama's 1901 Constitution, which was designed to disenfranchise Black citizens, was ratified by fraud. Doc. 320 (Singleton Plaintiffs' Proposed Findings of Fact and Conclusions of Law) at 38. He described how the cumulative poll tax eliminated the incentive to form effective biracial coalitions, and how the Democratic Party established the all-White Democratic primary to unify the White vote in the general election. *Id.* at 39. This testimony further supports the Court's conclusions that Alabama exhibits very high levels of racially polarized voting.

Dr. Kari Frederickson is a Professor of History at the University of Alabama, who was qualified as an expert in American history with a focus on the role of race in the South and Alabama in the 20th century, with no objection. *Singleton*, 782 F. Supp. 3d at 1231. This Court cited her testimony that since 1865 "there has never been a time in history when partisanship rather than race drove racially polarized voting in Alabama." *Id.* at 1232. More specifically, she described how appeals to racism caused White voters to move from the Democratic Party to the Republican Party in the 1980s and 1990s, Doc. No. 320 at 49–52, how abortion did not become a political issue for White evangelicals until their schools were denied tax exempt status for excluding Black students, *id.* at 52, and how the Republicans' pursuit of White southern voters left Alabama politics "'polarized and uncompetitive,'" *id.* at 53 (quoting Angie Maxwell and Todd Shields, *The Long Southern Strategy: How Chasing White Voters in the South Changed American Politics* (2019)). This

12

testimony further supports the Court's conclusions that Alabama exhibits very high levels of racially polarized voting.

### III.    Act 2026-621 Violates the Alabama Constitution.

In addition to other equitable reasons to have a preliminary injunction here, entering the injunction should not impose any additional injury on Defendants, and an injunction should not be adverse to the public interest. That is because the legislation allegedly authorizing Alabama to use the 2023 map in the 2026 general election violates the Alabama Constitution, as other litigation is expected to establish.

On May 8, 2026, the Legislature passed House Bill 1, which Governor Ivey signed the same day, and is now Ala. Act 2026-621. Act 2026-621 titled "Elections; special primary election for redistricting certain Congressional districts authorized in certain circumstances," would void the results of the May 19 primaries and have a special primary for Congressional Districts 1, 2, 6 and 7 on August 11, 2026. Act 2026-621, however, violates Section 111.08 of the Alabama Constitution of 2022.

Section 111.08 provides, "the implementation date for any bill enacted by the Legislature in a calendar year in which a general election is to be held and relating to the conduct of the general election shall be at least six months before the general election." On its face, Act 2026-621 violates the six-month requirement because it

13

was passed on May 8, 2026, which is without dispute less than six months before Alabama's November 3, 2026 general election.

Perhaps Defendants intend to argue that § 111.08 does not apply to Act 2026-621 because Act 2026-621 does not relate to the conduct of the general election. But the United States Supreme Court has determined that the phrase "relating to" is broad sweeping, stating that it means, "'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Alabama courts have similarly interpreted "relating to" broadly. *See Serra Chevrolet, Inc. v. Hock*, 891 So. 2d 844, 847 (Ala. 2004) (for arbitration provisions, the phrase "relating to the contract" been given a "broad construction"); *AmSouth Bank v. Dees*, 847 So. 2d 923, 933 (Ala. 2002) (for arbitration provisions, relating to includes matters "independent of, or collateral to the contract"); *Hendrix v. United Healthcare Ins. Co. of the River Valley*, 327 So. 3d 191, 198 (Ala. 2020) (holding that a state law relates to an employee benefit plan if it has a connection to the plan even if the effect is only indirect).

Act 2026-621 voids the May 19 primary results for nominees for the general election and provides new primaries to generate probably different nominees for the general election. Act 2026-621 also changes the congressional district map for Districts 1, 2, 6 and 7 to be used in the 2026 general election, thereby changing who

14

votes for which candidates in the general election. The text of Act 2026-621 itself acknowledges the effect it will have on the general election: Section 1(b) provides that the special primary will be held only if a federal court "permits the reinstatement of the [2023 Plan] to be used *in the 2026 General Election.*" (Emphasis added.) Because Act 2026-621 would change Districts 1, 2, 6 and 7's general election boundaries, candidates, and voters, Act 2026-621 relates to the conduct of the general election and thus violates the Alabama Constitution.

To be clear, the Singleton Plaintiffs are not asking this Court to enjoin the enforcement of Act 2026-621 on the grounds that it violates the Alabama Constitution. Instead, they are requesting that the Court note the act's likely unconstitutionality when it balances the potential injuries and the public interest. The likelihood that Act 2026-621 violates the Alabama Constitution means Defendants have little risk of injury, and an injunction would not be adverse to the public interest.

## CONCLUSION

For the reasons stated by the Caster and Milligan Plaintiffs, supplemented with the evidence and arguments above, Plaintiffs are entitled to a preliminary injunction maintaining the status quo: a May 19 primary election and general election conducted under the Court's race-blind remedial plan.

Dated: May 15, 2026                    Respectfully submitted,

                                       */s/ U.W. Clemon*
                                       U.W. Clemon

15

U.W. Clemon, LLC
Renasant Bank Building
2001 Park Place North, Tenth Floor
Birmingham, AL 35203
Tel.: (205) 506-4524
Fax: (205) 538-5500
Email: uwclemon1@gmail.com

*/s/ James Uriah Blacksher*
James Uriah Blacksher
825 Linwood Road
Birmingham, AL 35222
Tel: (205) 612-3752
Fax: (866) 845-4395
Email: jublacksher@gmail.com

Joe R. Whatley, Jr.
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com

*/s/ Henry C. Quillen*
Henry C. Quillen
(admitted *pro hac vice)*
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH  03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

Myron Cordell Penn
PENN & SEABORN, LLC
1971 Berry Chase Place
Montgomery, AL 36117
Tel: (334) 219-9771

16

Email: myronpenn28@hotmail.com

Diandra "Fu" Debrosse Zimmermann
Eli Hare
DICELLO LEVITT LLP
505 20th Street North, Suite 1500
Birmingham, AL 35203
Tel.: (205) 855.5700
Email: fu@dicellolevitt.com
        ehare@dicellolevitt.com

*/s/ J.S. "Chris" Christie*
J.S. "Chris" Christie (ASB-3162-H07J)
Dentons Sirote PC
2311 Highland Avenue South
Birmingham, AL 35205
Tel: (205) 930-5100
Fax: (205) 930-5101
chris.christie@dentons.com

**Counsel for Singleton Plaintiffs**

17